Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.)

C

Seed v. Hudson
D.N.Mariana Islands,1994.
Only the Westlaw citation is currently available.
District Court for the Northern Mariana Islands.
Terrance Ross **SEED**, and Randall **Seed**, Plaintiffs,
v.
Henry HUDSON, personally and in his capacity as Director, United States Marshals Service, Jose R. Mariano, personally and in his capacity as United States Marshal for the Northern Mariana Islands, Joaquin L.G. Salas, personally and in his capacity as Deputy United States Marshal, and Gregorio Camacho, personally and in his capacity as Director, Department of Public Safety for the Commonwealth of the Northern Mariana Islands, Defendants.
No. CIV. A. 93-0008.

May 11, 1994.

G. Anthony Long, Saipan, MP, for plaintiffs.
Douglas H. Strand, Asst. Atty. Gen., Saipan, MP, for defendants.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

MUNSON, Judge.

*1 This matter comes before the Court on cross motions for summary judgment by Plaintiffs and by Defendant Gregorio Camacho.[FN1] For the reasons that follow, Defendant Camacho's motion for summary judgment on the issues of the statute of limitations and qualified immunity is DENIED. Plaintiffs' motion for summary judgment on the issue of qualified immunity is GRANTED. Plaintiffs' motion for summary judgment on the merits is GRANTED IN PART and DENIED IN PART.

Plaintiffs were federal pretrial detainees incarcerated at the Saipan Detention Center, which is operated by the government of the Commonwealth of the Northern Mariana Islands ("CNMI"). The United States Marshals Service contracts with the CNMI to house its federal prisoners in the CNMI's detention facilities. Plaintiffs brought suit under 42 U.S.C. § 1983 alleging that the conditions under which they were held at the detention center violated their constitutional rights. Plaintiff Terrance **Seed's** incarceration at the Saipan Detention Center began on April 29, 1991. Plaintiff Randall **Seed**, Terrance's brother, was incarcerated at the Saipan Detention Center on May 10, 1991. On May 13, 1991, Randall was transferred to a facility on Guam, and he was released from pretrial detention on May 20, 1991. After a hearing on May 24, 1991, this Court ruled that certain conditions at the jail violated Terrance's constitutional rights and ordered that he be released on bond. He was so released later that day.

*Defendant Camacho's Motion for Summary Judgment*

Camacho offers two grounds for summary judgment. First, he contends that Plaintiff Randall **Seed's** claims are barred by the two year statute of limitations applicable to his § 1983 claim. 7 Commonwealth Code § 2503(d); *see Wilson v. Garcia,* 471 U.S. 261, 276-280, 105 S.Ct. 1938, 1947-49 (1985) (holding that claims brought under 42 U.S.C. § 1983 are subject to the local statute of limitations applicable to personal injury actions). Title 7 Commonwealth Code § 2508 provides that if the defendant is outside of the CNMI when the cause of action accrues, the statute of limitations is tolled until the defendant returns to the CNMI. Camacho claims via affidavit that he was within the CNMI on May 21, 1991, the date Randall's cause of action accrued. Plaintiffs point to the December 20, 1993 declaration of Captain Jose San Nicholas, one of Camacho's subordinates, wherein he stated that Camacho was not within the CNMI on that date. Because the record contains conflicting evidence on that question, there exists a genuine issue of material fact precluding the entry of summary judgment on the issue of the statute of limitations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Case 1:07-cv-00021    Document 7-2    Filed 09/10/2007    Page 2 of 7    Page 2
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.)

As his second ground, Camacho argues that he is entitled to qualified immunity from this suit. The Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727 (1982), established a two-part test to determine whether a public official is entitled to qualified immunity. First, the court must look to the applicable law and determine whether the public official's actions violated a constitutional right that was clearly established at the time the actions occurred. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The Court has determined that, for the purposes of Defendant's motion for summary judgment, this first prong has been met. Second, if the first part is met, the public official must show that, due to extraordinary circumstances, he did not know, nor reasonably should have known, of the relevant legal standards. *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739. In other words, "[u]nder th[e clearly established] law, could a reasonable officer have believed his conduct was lawful?" *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993).

*2 Camacho argues that his conduct was reasonable because his only insight into the relevant standard was a collection of statements and letters from U.S. Marshal Service personnel to the effect that the Saipan jail met all applicable federal standards. This argument misses the mark. The inquiry is not simply whether the conduct was reasonable; rather, the question is whether a reasonable officer, with full knowledge of the relevant legal standard, could believe that his conduct comported with that standard. Camacho contends that his only knowledge of the relevant standard was gleaned from the Marshal Service, and that it was reasonable for him to believe that that was the correct standard. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40 (1987) (holding that qualified immunity should apply to officers who "reasonably but mistakenly conclude" that their conduct was constitutional).

The Ninth Circuit, however, recently held in *Hallstrom v. City of Garden City,* 991 F.2d 1473, 1483 (9th Cir.), *cert. denied, Killeen v. Hallstrom,* 114 S.Ct. 549 (1993), that a law enforcement officer may not rely solely on the opinions of local judicial officers as the basis for his belief as to the relevant legal standard. In *Hallstrom,* the defendants claimed qualified immunity on the basis of two unpublished orders from the same federal district court in which the court granted summary judgment against other plaintiffs asserting similar constitutional claims as the *Hallstrom* plaintiffs. *Hallstrom,* 991 F.2d at 1483. The Ninth Circuit reversed the district court's determination that the defendants had qualified immunity because the district court did not analyze the defendants' actions in light of clearly established Ninth Circuit and Supreme Court law. *Id.* The Ninth Circuit stated:

While at one level it may seem harsh not to allow law enforcement officers to rely on local judicial officers' opinions, the Supreme Court requires what is essentially an artificial test, one that specifically looks to objective, not subjective, reasonableness. A judicial officer's misjudgment will not obviate or excuse another official's obligation to act with *objective* reasonableness. Under the objective test, an official is charged with knowledge of controlling Supreme Court and Ninth Circuit precedent.

*Id.* (citations omitted).

In this case, Camacho claims to have relied not on the opinions of local judicial officers, but rather on the opinions of United States Marshals Service personnel. As the *Hallstrom* case points out, however, Camacho's subjective beliefs as to the clearly established law are not material to the determination of qualified immunity. Under the objective test for qualified immunity, Camacho "is charged with the knowledge of controlling Supreme Court and Ninth Circuit precedent" as to the clearly established law with respect to pretrial detention conditions. *Id.*

*Pretrial Detainees and the Clearly Established Law*

*3 The Supreme Court in *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1871-72 (1979), ruled that a government can, in accordance with due process, incarcerate an individual charged with a criminal offense prior to conviction so long as the conditions of pretrial detention do not amount to punishment

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the pretrial detainee. The confinement conditions of pretrial detainees is thus analyzed under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment's prohibition of cruel and unusual punishment that is applied to convicted prisoners. *Id.* "[W]hile the eighth amendment proscribes cruel and unusual punishment for convicted inmates, the due process clause of the fourteenth amendment proscribes any punishment of pretrial detainees." *Redman v. County of San Diego,* 942 F.2d 1435, 1440 n. 7 (9th Cir.1991), *cert. denied,* 112 S.Ct. 972 (1992).

On the other hand, prison conditions which would constitute cruel and unusual punishment under the Eighth Amendment would, by definition, constitute impermissible punishment under the Fourteenth Amendment. For example, it is clearly established that prison conditions that result in "serious deprivation of basic human needs" or that "deprive inmates of the minimal civilized measure of life's necessities" constitute cruel and unusual punishment. *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981) (citing *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565 (1978); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285 (1976)). The Ninth Circuit further instructs that:

In analyzing a challenge to prison conditions under the Eighth Amendment, a court should examine each challenged condition of confinement, such as adequacy of the quarters, food, medical care, etc., and determine whether that condition is compatible with "the evolving standards of decency that mark the progress of a maturing society."

*Wright v. Rushen,* 642 F.2d 1129, 1133 (9th Cir.1981) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598 (1958)).

The conditions of which Plaintiffs complain include: (1) denial of a mattress, blanket and pillow; (2) denial of ability to wash clothes; (3) denial of exercise; (4) inadequate lighting; (5) inadequate plumbing; (6) denial of ability to brush teeth; (7) inadequate cell space; and (8) confinement in an area with a convict serving a prison sentence. As discussed below, Camacho does not dispute that Plaintiffs were subjected to each of these conditions. An abundance of Ninth Circuit case law holds that the existence of any one of the first seven of those conditions violates both the Eighth and the Fourteenth Amendments. *See, e.g., Thompson v. City of Los Angeles,* 885 F.2d 1439, 1448 (9th Cir.1989) (denial of mattress, blanket, and pillow); *Spain v. Procunier,* 600 F.2d 189, 199-200 (9th Cir.1979) (denial of outdoor exercise); *Martino v. Carey,* 563 F.Supp. 984 (D.Ore.1983) (inadequate shelter, inadequate plumbing, lack of blankets, sheets, and mattresses, denial of exercise); *Rutherford v. Pitchess,* 457 F.Supp. 104 (C.D.Cal.1978) (inadequate cell space, denial of exercise, inadequate lighting, inability to wash clothes); *Dillard v. Pitchess,* 399 F.Supp. 1225 (C.D.Cal.1975) (inability to rest comfortably before trial dates, unclean living conditions, inadequate showering facilities); *accord Johnson-El v. Schoemehl,* 878 F.2d 1043, 1054-55 (8th Cir.1989) (unsanitary conditions, inadequate lighting held to be violations of pretrial detainee's clearly established rights); *see generally* Note, *Constitutional Limits on the Conditions of Pretrial Detention,* 79 Yale L.J. 941 (1970).

*4 Plainly, the law regarding the constitutionality of pretrial detention facilities was clearly established in May 1991. Camacho must show "extraordinary circumstances"[FN2] why he should not be charged with the knowledge that inhumane and indecent prison conditions violate both the Eighth and Fourteenth Amendments in order to show that he "reasonably but mistakenly conclude[d]"[FN3] that the pretrial detention conditions at the Saipan jail were constitutional. He has not made such a showing, and consequently, he is not entitled to qualified immunity. Accordingly, his motion for summary judgment on that ground is denied.

*Plaintiffs' Motion for Summary Judgment*
Plaintiffs have cross moved for summary judgment on the issue of qualified immunity and on the merits of their claims.

In *Act Up!/Portland v. Bagley,* 988 F.2d 868 (9th

Case 1:07-cv-00021   Document 7-2   Filed 09/10/2007   Page 4 of 7

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.)

Cir.1993), the United States Court of Appeals for the Ninth Circuit addressed the district court's duty when presented with a motion for summary judgment on the issue of qualified immunity. In that case, the court held, contrary to standing Ninth Circuit precedent, that whether a reasonable officer could have believed that his actions were justified under the law is a question of law to be determined by the trial court. The court stated that that question "should be determined by the district court at the earliest possible point in the litigation. Where the underlying facts are undisputed, a district court must determine the issue on a motion for summary judgment." *Act Up!*, 988 F.2d at 873.

As discussed more fully below, the underlying facts regarding the conditions at the jail are undisputed. Also, there is no dispute as to what information Camacho possessed about the jail conditions at the time of Plaintiffs' incarceration. Camacho claims that he believed that the jail met federal standards and therefore met constitutional requirements. Camacho Affidavit of Mar. 21, 1994, at 3, 4. However, his "subjective beliefs" on the subject are "irrelevant." *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040. The Court must determine, "in light of clearly established law and the information [Camacho] possessed," *id.,* whether a reasonable officer in Camacho's position could have believed that the jail conditions were constitutional. In my opinion, no reasonable officer presented with the law and the facts could have believed that the conditions to which Plaintiffs, as pretrial detainees, were subjected were constitutional. Accordingly, Camacho is not entitled to qualified immunity from this suit, and Plaintiffs' motion for summary judgment on that issue is granted.

Turning now to Plaintiffs' motion for summary judgment on the merits, Plaintiffs list eight specific conditions at the jail which they contend were unconstitutional. Plaintiffs complain of: (1) denial of a mattress, blanket and pillow; (2) denial of ability to wash clothes; (3) denial of exercise; (4) inadequate lighting; (5) inadequate plumbing; (6) denial of ability to brush teeth; (7) inadequate cell space; and (8) confinement in an area with a convict serving a prison sentence. As evidence that those conditions existed, Plaintiffs offer the transcript of the May 24, 1991 hearing before this Court, including the testimony of Plaintiff Terrance Seed, United States Marshal Phillip Krell, and Captain Jose San Nicholas of the CNMI Department of Public Safety. Plaintiffs also offer the declarations of Defendant Camacho and Vicente T. Seman, Chief of the CNMI Division of Corrections, as well as this Court's Order of May 24, 1991, releasing Terrance Seed. Defendant has presented no evidence contradicting Plaintiffs allegations as to the conditions at the jail. The Court, however, notes that with respect to condition (6), the testimony of Captain San Nicholas at the May 24, 1991 hearing contradicts Plaintiffs' assertions that they were not allowed to brush their teeth daily. Thus, there exists a genuine issue with respect to that claimed condition. Plaintiffs' evidence with respect to the other seven conditions alleged by Plaintiffs remains uncontroverted.

*5 Next, the constitutionality of each of those conditions must be examined separately. *Wright,* 642 F.2d at 1133. I find that the first five challenged conditions each constitute a deprivation of a basic human need in contravention of the Fourteenth Amendment. *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1448 (9th Cir.1989) (pretrial detainee's "uncontroverted allegation that he was provided with neither a bed nor even a mattress unquestionably constitutes a cognizable Fourteenth Amendment claim."); *Rutherford v. Pitchess,* 457 F.Supp. 104, 117 (C.D.Cal.1978) ("An inmate must be permitted at least twice per week to receive clean outergarments, undergarments, socks and a towel in exchange for those that he had been using."); *Spain v. Procunier,* 600 F.2d 189, 199-200 (9th Cir.1979) (holding that denial of outdoor exercise constitutes cruel and unusual punishment); *Martino v. Carey,* 563 F.Supp. 984, 1000 (D.Ore.1983) (finding denial of adequate lighting in jail constituted Eighth Amendment violation); *Martino,* 563 F.Supp. at 999 ("The provision of adequate means of hygiene, and the sanitary disposal of bodily wastes so that the wastes do not contaminate the cells, are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.)

Case 1:07-cv-00021   Document 7-2   Filed 09/10/2007   Page 5 of 7

constitutionally required.").

As to cell size, Plaintiffs contend that they were each confined in a cell measuring six feet by seven or eight feet, i.e., somewhere between 42 and 48 square feet. In *Bell*, the Supreme Court held that double-bunking of pretrial detainees in rooms containing approximately 75 square feet of floor space, or 37.5 feet per detainee, did not amount to punishment under the Fourteenth Amendment. *Bell*, 441 U.S. at 543, 99 S.Ct. at 1876. Consequently, it cannot be said as a matter of law that the cell size in this case is violative of the Constitution.

With respect to Plaintiffs' claim that they were housed in an area with a convicted person serving a prison sentence, Plaintiffs have cited no authority to the Court for the proposition that such a practice is unconstitutional. My own research on the point uncovered two cases reaching opposite results. In *Morales Feliciano v. Hernandez Colon*, 697 F.Supp. 37, 45-46 (D.P.R.1988), the court found that the conditions in the jail were so intolerable that commingling pretrial detainees with convicted inmates constituted punishment of the detainees in violation of the Fifth and Fourteenth Amendments. Moreover, the court found that because the pretrial detainees were not members of any of the organized prison "gangs" in that jail, their lot was worse than that of the convicts.

In this case, Plaintiffs allege that a convicted rapist serving a 70-year sentence was housed in the same facility as they were. Plaintiffs, however, do not allege any specific injury as a result of that arrangement. For that reason, I find that this case is more like *Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir.), *cert. denied*, 488 U.S. 863, 109 S.Ct. 162 (1988), where the court found that it was not unconstitutional to lodge pretrial detainees with convicted inmates, especially in light of the fact that the plaintiff did not allege that he had been injured as a result of his cell placement. I find that confining Plaintiffs in an area with a convict serving a prison sentence did not violate Plaintiffs' constitutional rights, and it would serve no useful purpose to litigate that particular claim.

*6 Finally, I must determine whether Plaintiffs are entitled to summary judgment on their § 1983 claim against Camacho in his personal capacity. Section 1983 requires that the claimant prove: (1) that a person acting under the color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir.1988). That Camacho is a person who was acting under the color of state law is undisputed. The issue is whether his conduct led to the alleged constitutional deprivations of which Plaintiffs complain.

As discussed above, pretrial confinement conditions are analyzed under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment's cruel and unusual punishment standard which is used for convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871-72 (1979). That is not to say, however, that "every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Bell*, 441 U.S. at 537, 99 S.Ct. at 1873. "[W]e must be cognizant of both the deference accorded to prison officials in their difficult task of managing the security needs of the prison, and the right of the pretrial detainee, once subjected to the normal limitations and conditions that attach to their confinement, to be free from punishment." *Redman*, 942 F.2d at 1441.

Prison officials are faced with similar competing interests when dealing with both pretrial detainees and convicted prisoners. In recognition of that fact, the Ninth Circuit has held that the court should use the same standard to determine violations of the Fourteenth Amendment's proscription of punishment of pretrial detainees as it does to determine violations of the Eighth Amendment. *Redman*, 942 F.2d at 1442. The *Redman* court stated that:

The requirement of conduct that amounts to "deliberate indifference" provides an appropriate balance of the pretrial detainees' right not to be punished with the deference given to prison

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Case 1:07-cv-00021 Document 7-2 Filed 09/10/2007 Page 6 of 7 Page 6
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.)

officials who manage prisons. This standard also comports with the purpose of the due process clause: to protect against deliberate, but arbitrary, choices by government.

We therefore hold that deliberate indifference is the level of culpability that pretrial detainees must establish for a violation of their personal security interests under the fourteenth amendment. We also hold that conduct that is so wanton or reckless with respect to the "unjustified infliction of harm as is tantamount to a knowing willingness that it occur" will also suffice to establish liability because it is conduct equivalent to a deliberate choice. This may be termed "reckless indifference."

*Redman,* 942 F.2d at 1443 (citations and footnotes omitted).

Thus, in order to prevail on this motion, Plaintiffs must show that the uncontroverted facts establish: (1) that Camacho, "in acting or failing to act, was deliberately indifferent to the mandates of the [Fourteenth Amendment] and (2) that [his] indifference was the actual and proximate cause of the deprivation of" Plaintiffs' Fourteenth Amendment rights to be free from any punishment. *Leer,* 844 F.2d at 634.

*7 As to the first step, the Supreme Court held in *Wilson v. Seiter,* 111 S.Ct. 2321, 2324 (1991), that the court must inquire into the state of mind of the defendant government official to determine whether or not he was deliberately indifferent to a convicted prisoner's Eighth Amendment rights. The Ninth Circuit in *Redman* expressly left open the question of whether that same inquiry is required to determine whether an official was deliberately indifferent to the Fourteenth Amendment rights of a pretrial detainee. *Redman,* 942 F.2d at 1443.

I need not decide that question for the purposes of the instant motion, however, because Plaintiff has not produced any evidence sufficient to meet the second step of the analysis. In other words, Plaintiffs have not proven that Camacho's deliberate indifference, if any, was the actual and proximate cause of their alleged constitutional deprivation. Plaintiffs have simply alleged that the conditions existed and that Camacho knew they existed. A genuine issue of material fact exists as to the causal connection between the complained of conditions at the jail and any act or omission by Camacho performed under the color of state law. Accordingly, summary judgment is not appropriate on that issue.

CONCLUSION

For the foregoing reasons, Defendant Camacho's motion for summary judgment on the issues of the statute of limitations and qualified immunity is DENIED. Plaintiffs' motion for summary judgment on the issue of Camacho's qualified immunity is GRANTED. Plaintiffs' motion for summary judgment on the merits is GRANTED IN PART as to the existence and unconstitutionality of the following conditions of their confinement: (1) denial of a mattress, blanket and pillow; (2) denial of ability to wash clothes; (3) denial of exercise; (4) inadequate lighting; and (5) inadequate plumbing. Plaintiffs' motion for summary judgment as to Defendant Camacho's liability to them under 42 U.S.C. § 1983 is DENIED.

IT IS SO ORDERED.

> FN1. In an Order dated February 10, 1994, I dismissed the claims against all defendants in their official capacities and against Defendants Hudson and Mariano in their personal capacities. In that Order, I also granted Defendant Salas' motion for summary judgment. Thus, the only remaining defendant is Camacho in his personal capacity.
>
> FN2. *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739.
>
> FN3. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3030.

D.N.Mariana Islands,1994.
Seed v. Hudson
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00021   Document 7-2   Filed 09/10/2007   Page 7 of 7

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)
**(Cite as: Not Reported in F.Supp.)**

Page 7

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.