O'CONNOR BERMAN DOTTS & BANES
Second Floor, Nauru Building
1 Nauru Loop
Susupe, Saipan, CNMI
Mail: PO Box 50-1969 Saipan MP 96950
Phone: 234-5684
Fax: 234-5683
E-mail: attorneys@saipan.com

Attorneys for Plaintiff

IN THE DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| AE JA ELLIOT PARK,<br><br>  Plaintiff,<br><br>  vs.<br><br>JARROD MANGLOÑA, et al.,<br><br>  Defendants. | Civ. No. 07-0021<br><br>OPPOSITION<br>TO MOTION TO DISMISS |

### Introduction

Plaintiff Ae Ja Elliot Park has asserted various claims in this matter against the CNMI Department of Public Safety and several of its officers (hereinafter collectively "the Government"), arising out of their failure to investigate the circumstances of the auto accident in which she was struck and injured by a drunk driver, Norbert Babauta. The Government has now moved to dismiss.

Although the motion to dismiss is directed to all of Ms. Park's claims, it really makes only two fundamental arguments – 1) that Ms. Park does not state a claim for denial of equal protection of the laws, and 2) that she does not state a claim for denial of due process. These arguments apply directly only to Ms. Park's first and second causes of action, respectively. See First Amended Complaint, filed in this matter July 17, 2007, at ¶¶ 55-63 (civil rights claim under 42 U.S.C. § 1983). The Government, however, then uses Ms. Park's supposed failure to state an equal protection or due process claim as the sole basis (with one exception, as noted below) for arguing to dismiss her

remaining nine causes of action.[1]

The motion should be denied in its entirety, because the two premises upon which it rests are faulty. For the reasons set forth herein, Ms. Park does state a viable civil rights claim for both denial of equal protection and denial of due process.

### Ms. Park States a Claim For Denial of Equal Protection

Ms. Park's claim for denial of equal protection is based on her allegation that, after responding to the accident in which she was injured:

> Defendants chose not to perform any sobriety tests or otherwise properly investigate Babauta's intoxication because of Babauta's national and/or ethnic origin [NMI descent] and the national and/or ethnic origin of Mrs. Elliot Park [Korean].

First Amended Complaint at ¶ 37. Notwithstanding the Government's arguments to the contrary, such a claim is cognizable under controlling law, which provides that: "There is a constitutional right . . . to have police services administered in a nondiscriminatory manner -- a right that is violated when a state actor denies such protection to disfavored persons." Estate of Macias v. Ihde, 219 F.3d 1018, 1028 (9th Cir. 2000) (reversing district court's dismissal of § 1983 civil rights action by heirs of murder victim, who alleged that the local police authorities had "violated [the victim's] right to equal protection by providing inadequate police protection based on her status as a woman, a victim of domestic violence, and a Latina"). See also, e.g., Navarro v. Block, 72 F.3d 712, 715-17 (9th Cir. 1996) (recognizing § 1983 claim based on discriminatory denial of police services); Balistreri v.

---

[1] For example, her third cause of action, for violation of due process and equal protection under the CNMI Constitution, is attacked on the ground that the local constitutional rights parallel the federal ones. See Government's Motion at 4 fn.9 and 7 fn.23. Her fourth and fifth causes of action, for conspiracy to violate civil rights, are likewise attacked on the ground that "there is no underlying violation of equal protection and due process." Id. at 14. The sole argument made in favor of qualified immunity is that Ms. Park has supposedly failed to plead either a due process or equal protection violation, id. at 16, while her supplemental claims under CNMI law are sought to be dismissed based on the supposed lack of a viable federal claim. Id. at 16-17.

Pacific Police Department, 901 F.2d 969, 701 (9th Cir. 1990) (recognizing viability of claim that "police failure to respond to complaints lodged by women in domestic violence cases may violate equal protection," reversing denial of motion to amend § 1983 complaint to state such a claim); Hayden v. Grayson, 134 F.2d 449, 452 (1st Cir. 1998) ("[A]lthough there is no constitutional right to police protection, State executive and law enforcement officials may not selectively deny protective services to certain disfavored minorities.") (quoting DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 197 n.3 (1989)); Walker v. Shepard, 107 F.Supp.2d 183, 186 (N.D.N.Y. 2000) ("In the context of law enforcement investigations, courts have recognized section 1983 equal protection claims based upon discriminatory failures by public officials to conduct proper investigations.") (internal punctuation omitted) (quoting Daniels v. City of Binghamton, 1998 WL 357336 at *5 (N.D.N.Y. 1998)); Daniels, supra, 1998 WL 357336 at *5 ("Although there is no constitutional right to an investigation *per se*, public officials, including law enforcement, may not selectively deny protective services to certain disfavored minorities without violating the Equal Protection Clause. As such, it would not be permissible for the County District Attorney to investigate allegations of misconduct brought by white individuals while not investigating similar allegations brought by black individuals solely because of the race of the complainant.") (citations and internal punctuation omitted).

In light of this precedent, the Government's motion to dismiss Ms. Park's equal protection claim, and any of her other claims that depend on the viability of the equal protection claim, should be denied.

### Ms. Park States a Claim For Denial of Due Process

The existence of a claim for denial of due process requires that existing law have created either a liberty or a property interest to which Ms. Park was entitled, but which was denied to her. "Stated simply, 'a State creates a protected liberty interest by placing substantive limitations on

3

official discretion.'" Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 462 (1989) (quoting Olim v. Wakinekona, 461 U.S. 238, 249 (1983)). A property interest is created by state law which establishes a benefit to which a person has "a legitimate claim of entitlement." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972) (citing Goldberg v. Kelly, 397 U.S. 254 (1970)).

Both a liberty and property interest are created in this case by the CNMI Victims Bill of Rights, which provides that:

> Officers and employees of the Office of the Attorney General and other departments and agencies of the Commonwealth of the Northern Mariana Islands engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that victims of crime are accorded the rights described in subsection (b) of this section.

6 CMC § 9104(a). Subsection (b) then goes on to enumerate certain rights, among which are:

> (1) The right to be treated with fairness and with respect for the victim's dignity ...
>
> (2) The right to be reasonably protected from the accused offender.
>
> . . .
>
> (6) The right to restitution.
>
> (7) The right to information about the . . . release of the offender.

6 CMC § 9104(b). The Victims Bill of Rights creates a benefit to which Ms. Park was entitled in this case – namely, the best efforts of the DPS officers to accord her the enumerated rights. In doing so, it also places substantive limitations on the officers' official discretion. It therefore creates both a liberty and property interest in Ms. Park, the deprivation of which implicates due process.[2]

---

[2] No cause of action is directly available to the victim for breach of the Victims Bill of Rights. *See* 6 CMC § 9104(c) ("This section does not create a cause of action . . . in favor of a person arising out of the failure to accord a victim the rights enumerated in subsection (b) of this section."). The unavailability of a direct state law claim, however, does not preclude the assertion of a federal claim under section 1983, or a CNMI constitutional claim. *See, e.g.*, Board of Education v. Loudermill, 470 U.S. 532, 538-41 (1985) (holding that state legislation conferring a substantive right does not limit the procedure for enforcing that right; and that a due process claim is therefore available for

Dix v. County of Shasta, 963 F.2d 1296 (9th Cir. 1992), is instructive. Dix, the victim of a shooting, brought a civil rights action against county and state officials who had, without his knowledge, negotiated a reduced jail sentence for the man who had shot him. He argued "that California's Victims' Bill of Rights grants crime victims an interest palpable enough to be enforced by federal courts as a matter of due process." Id. at 1299. The court ultimately ruled against Dix, but not by holding that such a claim is untenable as a general matter. Instead, the court found that the *particular terms* of the California law that Dix invoked did not create a liberty or property interest in him. The court acknowledged: "It is, of course, well established that state law can create liberty interests triggering federally enforceable due process rights," id., but held that the particular provisions relied on by Dix did not do so, because four of them "have nothing whatsoever to do with crime victims," id., a fifth only "gives crime victims procedural rights," not substantive ones, id. at 1300, and the sixth, while it requires a sentencing judge to "consider" the statements of victims, "requires no particular result." Id. The court also found no property interest was created, writing:

> Nothing in [the California Victims' Bill of Rights] requires that the state give victims money or aid; the law thus fails to create the "entitlement" necessary to constitute a property interest under the Due Process Clause.

Id. at 1301. It is evident from the passages of it that were quoted by the court, however, that the California Victims Bill of Rights is a very different animal from the CNMI law of the same name. The CNMI Bill *is* directly concerned with crime victims, and it requires not just that victims be considered, but that specific and substantive efforts be made on their behalf. Unlike the California Bill, it therefore *does* create a protected liberty interest. The property interest is even clearer. Unlike the California Bill, the CNMI Bill explicitly and affirmatively "requires that the state give the victim . . . aid." Under the approach of Dix, therefore, Ms. Park states a claim for due process violation.

The Government relies heavily on Town of Castle Rock v. Gonzales, 545 U.S. 748 (2005),

---

deprivation of the right even where the state law creating the right does not provide an adequate remedy for its deprivation).

5

a controversial recent case in which the court found that a mother stated no due process claim against police officers who failed to enforce a restraining order against her husband, while he was in the process of kidnaping and murdering their three children. *See generally* Government's Motion at 8 *ff.* However, there are significant differences between that case and this one that mandate a different outcome here. For one, the Castle Rock court found it significant that the plaintiff could not clearly articulate the nature of her own claimed entitlement, opining that "[s]uch indeterminacy is not the hallmark of a duty that is mandatory." *See* 545 U.S. at 763. Here – and despite the Government's attempts to make it appear otherwise – what Plaintiff believes she was entitled to is clear: a proper investigation of the accident.[3] For another, the Supreme Court in Castle Rock noted that the Colorado statute at issue was designed to serve public rather than private ends, and thus would not confer any entitlement to enforcement on the plaintiff as a private individual. *See* id. at 765 ("The serving of public rather than private ends is the normal course of the criminal law[.]") (*citing* 4 W. Blackstone, Commentaries on the Laws of England 5 (1769)). Here, however, the Victims Bill of Rights was enacted specifically to serve the interests of private individuals who were the victims of crime. Indeed, its enactment can clearly be seen as a reaction against the classic Blackstonian concept of crime as a wrong only against society, and an effort to recognize it as a wrong against the individual victim as well. *See* CNMI PL 10-81 (Victims' Rights Act) at § 2 ("The Legislature finds and declares that an effective criminal justice system requires the protection and assistance of innocent victims of criminal acts *in order to preserve their individual dignity*.") (reprinted as note to 6 CMC § 9101) (emphasis added). *See generally* Annotation: *Validity, Construction, and*

---

[3] The Government repeatedly, but erroneously, claims that Ms. Park is claiming an entitlement to Babauta's arrest and/or prosecution and/or conviction. *See, e.g.*, Motion at 3, 4, 8, 9, 11, 12, 16. This is a classic "straw man" argument, set up for the sole purpose of affording the Government the opportunity to repeatedly make the point – rhetorically impressive, but irrelevant to this case – that a person has no entitlement to the arrest, prosecution or conviction of another person. The Complaint makes it quite clear that the alleged failure to "take action" means the officers' failure "to perform any sobriety tests or otherwise properly investigate Babauta's intoxication." First Amended Complaint at ¶ 37.

*Application of State Constitutional or Statutory Victims' Bill of Rights*, 91 A.L.R.5th 343 ("State 'victims' rights' constitutional and statutory provisions are based on the belief that the criminal justice system is overly offender-focused and alienates the victims of crimes.").

Most importantly, the Supreme Court's holding in <u>Castle Rock</u> rested primarily on its conclusion that the Colorado laws at issue had not imposed a truly mandatory duty on the police. *See* 545 U.S. at 760 ("We do not believe that these provisions of Colorado law truly made enforcement of restraining orders *mandatory*.") (emphasis in original). The opposite conclusion must prevail with respect to the CNMI Victims Bill of Rights. The Bill explicitly states that investigators "*shall* make their best efforts," and, whatever ambiguities may exist in Colorado law, the term "shall" in the CNMI unequivocally carries a mandatory intent. *See, e.g.*, <u>Northern Marianas College v. Civil Service Commission</u>, 2007 MP 8 at ¶ 9 ("The word 'shall' is unambiguous and means 'must.'"); <u>Francis v. Welly</u>, 1999 MP 26 at ¶ 9, 6 N.M.I. 64, 66 (1999) ("Use of the word 'shall' is mandatory and has the effect of creating a duty, absent any legislative intent to the contrary."); <u>Bank of Hawaii v. Teregeyo</u>, 3 C.R. 876, 881 (Super. Ct. 1989) ("Use of the word 'shall' connotes a mandatory intent.'"). If the Legislature had intended to afford discretion to the officers, it would have used the term "may," or perhaps "should." *See, e.g.*, <u>Commonwealth v. Taisacan</u>, 1999 MP 8 at ¶ 23, 5 N.M.I. 236, 237 (1999) (holding that the trial court had discretion in sentencing the defendant, because the relevant statute "does not use mandatory words such as 'shall,' 'will,' or 'must,' but instead uses the discretionary word of '*may*.'") (emphasis in original); <u>Northern Marianas College</u>, supra, 2007 MP 8 at ¶ 9 ("The term 'may,' which connotes a permissive rather than a mandatory provision, is not used, nor is the term 'should.'") (citations omitted). If this were not enough by itself, the CNMI Supreme Court has held that the mandatory character of "shall" is "*particularly so when the statute is addressed to public officials*," <u>Aquino v. Tinian Cockfighting Board</u>, 2 N.M.I. 284, 292-93 (1992) (emphasis added), as of course the statute is in this case.

If the court, in light of the foregoing, remains in any doubt that the CNMI Victims Bill of Rights creates a mandatory duty, Plaintiff (again unlike the Plaintiff in Castle Rock, see 545 U.S. at 758 fn.5) requests that it certify that question to the CNMI Supreme Court. Otherwise, the motion to dismiss the due process claim, and all other claims depending upon it, should be denied.

### Ms. Park States a Claim For Conspiracy

As noted in the Introduction, the Government's arguments for dismissal of Ms. Park's third through eleventh causes of action rely primarily on the premise that she has not stated a claim as to either her first (equal protection) or her second (due process), which, as demonstrated immediately above, she has. The sole exception is the Government's argument for dismissal of Ms. Park's claims for conspiracy (fourth and fifth causes of action). Here, too, the principal argument advanced by the Government is that "[t]he absence of a section 1983 deprivation of rights precludes a section 1895 conspiracy claim predicated on the same allegations," Government's Motion at 14, but the Government also raises the additional argument that the allegations of conspiracy are insufficiently specific under the "heightened pleading" standard for civil rights conspiracy claims under 42 U.S.C. § 1985. Id. at 14-15.

The Government does not mention, however, that the continued vitality of this "heightened pleading" standard has recently been called into doubt. In Jones v. Tozzi, 2006 WL 2472752 at *13 (E.D. Cal. 2006), the court pointed out that any heightened pleading standard for civil rights conspiracy claims was difficult if not impossible to reconcile with Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002) (per Schroeder, C.J.), which held that "heightened pleading of improper motive in constitutional tort cases" is not required, and overruled prior cases holding the contrary. The Jones court concluded that, if the "heightened pleading" standard still exists at all, it "should be applied liberally." 2006 WL 2472752 at *13. Even in its original formulation, moreover, the "heightened pleading" standard for conspiracy is "not intended to be

difficult to meet." Harris v. Roderick, 126 F.3d 1189, 1195 (9th Cir. 1997). This is so because:

> it serves the limited purpose of allowing the district court to dismiss 'insubstantial' suits prior to discovery and allowing the defendant to prepare an appropriate response, and where appropriate, a motion for summary judgment based on qualified immunity.

Id. (quoting Branch v. Tunnell, 937 F.2d 1382, 1386 (9th Cir. 1991)). The "heightened pleading" standard can be met by allegations of "either direct of circumstantial evidence" of unlawful intent. Id.

It is met in this case by the allegation of circumstantial evidence that all three of the named officers on the scene, as well as officer Doe 1, had the opportunity to observe first hand and at close range the obviously intoxicated condition of Babauta; but that, despite this, none of them took any of the ordinary steps to gather further evidence of his intoxication. See First Amended Complaint at ¶¶ 21-25, 29-31. It is further supported by the allegation and that other Doe officers, who were supposed to be investigating the original failure to cite Babauta, subsequently attempted to intimidate and harass Dr. Austin into recanting his statement that Babauta was drunk. Id. at ¶¶ 47-48. A conspiracy is by its nature secretive, and Ms. Park cannot reasonably be expected to know, at this point, exactly who said what to whom in forming the conspiracy. The circumstantial evidence available to her, however, fairly points to the conclusion that a conspiracy to let Babauta off the hook did in fact exist. If the Court disagrees, Ms. Park requests leave to amend her complaint so as to allege the conspiracy with greater particularity. See, e.g., Olsen v. Idaho State Board of Medicine, 363 F.3d 916, 930 (9th Cir. 2004) ("Generally, a district court should allow a plaintiff to amend the pleadings when a § 1985 claim is insufficiently pled.").

## Conclusion

Because Ms. Park has stated viable claims for violation of civil rights by denial of equal protection of the laws and due process of law, and has also met the applicable standard for pleading a conspiracy to violate her civil rights, the Government's motion to dismiss the complaint in this

9

matter should be denied in its entirety.

O'CONNOR BERMAN DOTTS & BANES
Attorneys for Plaintiff

By: _____
           Joseph E. Horey

*3268-01-071008-PL-M to dismiss-OPP.wpd*