Braddock J. Huesman
T#00047
Assistant Attorney General
Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
Caller Box 10007, Capital Hill
Saipan, MP  96950-8907
Telephone:      (670) 664-2341
Fax:              (670) 664-2349

Attorney for Defendants Department of Public Safety,
Jarrod Manglona, Michael Langdon, and Anthony
Macaranas.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| AE JA ELLIOT PARK,<br><br>Plaintiff,<br><br>vs.<br><br>JARROD MANGLONA, MICHAEL LANGDON, ANTHONY MACARANAS, DEPARTMENT OF PUBLIC SAFETY and JUAN DOES 1-4, NORBERT DUENAS BABUTA,<br><br>Defendants. | CIVIL ACTION NO. 07-0021<br><br>**DEFENDANTS' REPLY TO PLAITIFF'S OPPOSITION TO THE MOTION TO DISMISS**<br><br>Date:          Nov. 15, 2007<br>Time:          9: 00 a.m.<br>Judge:        Hon. Alex R. Munson |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ARGUMENT**

**I.      Equal Protection is Not a Substantive Right.**

Ms. Park claims that "Defendant's actions caused the Plaintiff to be deprived of her equal protection under the law."  In response to this, the DPS Defendants pointed out, correctly, that an individual may not bring a "substantive" equal protection claim.[1]  Realizing this mistake, she now attempts to rehabilitate her claim by pointing out that, buried in paragraph 37 of her complaint, she claimed: "Defendants chose not to perform any sobriety test or otherwise properly investigate Babauta's intoxication because of Babauta's national and/or ethnic origin and the national and/or ethnic origin of Mrs. Elliot Park."  Out of this conclusory allegation, Ms. Park has adjusted her original "substantive" equal protection claim to a claim for equal access to police protection.

Putting aside, for the moment, that this statement is completely conclusory and thus cannot defeat a motion to dismiss,[2] there are several problems with Ms. Park's equal protection claim.  To begin with, Ms. Park failed to plead that she was similarly situated to a person who was not discriminated against.    Additionally, she failed to plead nonconclusory facts that indicate she was discriminated against on the basis of her race.  Even if she had, however, her case should still be dismissed because, as demonstrated below, Ms. Park's new theory is equally as baseless as her original "substantive" due process claim.

**A.  Ms. Park has only alleged conclusory facts and failed to plead she was similarly situated**

Ms. Park has utterly failed to plead nonconclusory facts that support a race based motive, and her new theory does nothing to rectify this problem.  In order to prevail on an equal protection claim, a plaintiff must show that she was selected "'on the basis of an impermissible

---

[1]   *Harris v. McRae,* 448 U.S. 297, 322 (1980) (Equal protection under the Fifth Amendment guarantees no substantive rights or liberties.).

[2]   *See Schmier v. U.S. Court of Appeals for the Ninth Circuit,* 279 F.3d 817, 820 (9th Cir. 2002) ("conclusory allegations of law and unwarranted inferences" will not defeat an otherwise proper motion to dismiss) (internal citation and quotation marks omitted).

ground such as race, religion or exercise of . . . constitutional rights.'"[3]  There is no similar situation alleged, however, in Ms. Park's complaint.  For example, a similar situation might have consisted of a second accident in Ms. Park's complaint which included: 1. a victim; 2. the victim was of NMI descent; and 3. that that the victim of NMI descent received the benefit of a police protection.[4]  Here, however, there is no other victim to compare whether the treatment received by Ms. Park was equal.  This is fatal to her claim.[5]

Moreover, and more problematical, Ms. Park has failed to plead facts supporting the inference that the decision not to investigate the accident was based on race.  She has also failed to allege any facts that support the claim that the DPS Defendants acted with racial animus towards her.[6]  As a matter of law, Ms. Park's complaint utterly fails to allege a cause of action for violation of her right to "nondiscriminatory police protection services."  Even if she had alleged her complaint correctly, however, she is not entitled to bring a claim for nondiscriminatory police protection services.

B. **Police protection cases do not apply to Ms. Park's claim.**

Ms. Park cites three Ninth Circuit police protection domestic abuse cases, *Estate of Macias v. Ihde*,[7] *Navarro v. Block*,[8] and *Balisteri v. Pacific Police Dept.*,[9] for the proposition that "[t]here is a constitutional right . . . to have police services administered in a nondiscriminatory

---

[3]  *United States v. Kidder*, 896 F.2d 1328, 1336 (9th Cir. 1989) (quoting *United States v. Moody*, 778 F.2d 1380, 1386 (9th Cir. 1985) *amended on other ground*, 791 F.2d 707 (9th Cir. 1986).

[4]  First Amended Complaint, ¶ 43.

[5]  *See Ventura Mobile Home Communities Owners Ass'n v. City of San Buena Ventura*, 371 F.3d 1046, 1055 (9th Cir.2004); *Lee v. City of Los Angeles,* 250 F.3d 668, 687 (9th Cir.2001); *see also City of Cleburne v. Cleburne Living Cntr.,* 473 U.S. 432, 439 (1985).

[6]  *See Schmier v. U.S. Court of Appeals for the Ninth Circuit,* 279 F.3d 817, 820 (9th Cir. 2002) ("conclusory allegations of law and unwarranted inferences" will not defeat an otherwise proper motion to dismiss)(internal citation and quotation marks omitted); *see also Haber v. Brown,* 774 F.Supp. 877, 879 (S.D.N.Y.1991); *Educadores Puertorriquenos En Accion v. Rey Hernandez,* 367 F.3d 61, 68 (1st Cir.2004).

[7]  219 F.3d 1018, 1028 (9th Cir. 2000).

[8]  72 F.3d 712, 715-17 (9th Cir. 1996).

[9]  901 F.2d 696, 701 (9th Cir. 1990).

manner – a right that is violated when a state actor denies such protection to disfavored persons."[10]  All of the cases to which Ms. Park cites involve police protection.  Two of the cases, *Balisteri* and *Navarro,* specifically deal with the police treating domestic abuse cases differently then other crimes, thus discriminating against women.  The First Circuit cases are based on the police denying protection services to disfavored minorities.[11]  Quite simply these race or sex based violence cases do not apply to Ms. Park's traffic case.  This is made most clear by a case cited in the Motion to Dismiss, *DeSahney v. Winnebago County Dept. of Social. Serv's.*[12]

As noted in the Motion to Dismiss, *DeShaney* held that the purpose of the constitution "was to protect the people from the State, not to ensure that the State protected them from each other[.]"  Although *DeShaney* deals with due process, in footnote 3 the Supreme Court recognized that "[t]he State may not, of course, selectively deny its **protective services** to certain disfavored minorities without violating the Equal Protection Clause."[13]  The concept of equal application of police protection services provides the backbone for the cases cited by Ms. Park, and thus they do not apply.  This is apparent when one notices that case law is legion with instances where police officers let drunk individuals "off the hook."[14]  Letting drunk drivers "off the hook" or failing to investigate or arrest drunk drivers, however, does not result in liability.[15]

---

[10]  *Estate of Macias,* 219 F.3d at 1028 (emphasis added).

[11]  *Walker v. Sheppard,* 107 F.Supp.2d 183 (N.D.N.Y. 2000)

[12]  489 U.S. 189 (1989)

[13]  *See Walker v. Shepard,* 107 F.Supp.2d at 183.

[14]  *See* OPPOSITION TO MOTION TO DISMISS, p. 9.

[15]  Although CNMI courts have not ruled on the issue, the weight of US authority is that neither a law enforcement officer nor a governmental entity is liable to an individual injured by a drunk driver whom the government failed to restrain or arrest.  The DPS Defendants note, however, that these cases are not quite analogous with Ms. Park's case-- the plaintiffs in these cases had the opportunity to argue causation and still lost.  *See, e.g., Lehto v. City of Oxnard* 171 Cal.App.3d 285, 289-291, 217 Cal.Rptr. 450 (1985); *Leake v. Cain,* 720 P.2d 152 (Colo.1986); *Shore v. Town of Stonington,* 187 Conn. 147, 444 A.2d 1379 (1982); *Everton v. Willard,* 468 So.2d 936 (Fla.1985); *Luber v. City of Highland,* 151 Ill.App.3d 758, 104 Ill.Dec. 583, 502 N.E.2d 1243 (1986); *Fusilier v. Russell,* 345 So.2d 543 (La.Ct.App.), *cert. denied,* 347 So.2d 261 (La.1977); *Schutte v. Sitton,* 729 S.W.2d 208 (Mo.Ct.App.1987); *Lindquist v. Moran,* 203 Mont. 268, 662 P.2d 281 (1983); *Crosby v. Town of Bethlehem,* 90 A.D.2d 134, 457 N.Y.S.2d 618 (1982); *Barratt v. Burlingham,* 492 A.2d 1219 (R.I.1985); *Bailey v.*

Ms. Park's cause of action does not involve police protection. It is a traffic case and she utterly fails to provide this court with *one* example where the failure to investigate a traffic violation constituted a constitutional tort or even a negligence action. When one examines the few cases on point, this is an understandable oversight.

For example, in *Barnes v. Black,*[16] Black caused a serious traffic accident when he collided into the passenger side of another vehicle in which plaintiff was a passenger. Later, defendants Hamilton and Greagor, police officers, responded to the accident. Although they drafted a traffic report form, defendants did not, just as Ms. Park alleges in her suit, *investigate the accident scene completely, interview the plaintiff, or ticket Black*. Plaintiff, much like Ms. Park, brought an equal protection suit against the police officers. In examining the equal protection claim, the court held that:

> Even if [the Court] were to assume that petitioner had alleged that he was treated differently in some way, it is unclear that petitioner sustained an actual injury as a result of the alleged shortcomings of respondents Hamilton and Greagor. A party must have sustained some sort of injury as a result of the alleged wrongdoing to have standing to bring a claim. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). From petitioner's alleged facts, it appears that respondent Black has been held at fault for the accident. It is not clear what additional advantage petitioner would have gained had respondents Hamilton and Greagor conducted a more thorough investigation or ticketed respondent Black. Petitioner's complaint does not make out a claim under the equal protection clause or indicate that he would have standing to bring such a claim. Therefore, he will be denied leave to proceed on this claim.[17]

In *Cravens v. City of La Marque, Tex.,*[18] plaintiffs brought suit because a police officer failed to take Abner Cravens into custody for driving while intoxicated even though the officer,

---

*Forks,* 38 Wash.App. 656, 688 P.2d 526 (1984).

[16] 2004 WL 257105 (W.D. Wis.).

[17] 2004 WL 257105 at 2

[18] 2006 WL 492805 (S.D. Tex.)

LA/576564v1

just like the DPS Defendants, allegedly had probable cause to do so. Plaintiffs' claims, just like Ms. Park's,[19] rested on the assertion that "[b]ut for [Cravens's] status as an African-American, Officer Ontiveros would have properly arrested [him] in order to protect him." The court found that this claim was unsupported and conclusory.[20]  The court went on to find that there were no facts in the complaint to support an equal protection violation and that there are no facts supporting an inference that the decision not to arrest Cravens was based on race.[21]  Further, the court found that there were no facts showing or even alleging that similarly situated individuals of other groups outside Cravens's class were arrested under the same circumstances.[22]  Finally, the court noted that plaintiffs should not use an equal protection argument to circumvent the *DeShaney* principal that the Constitution doesn't guarantee protection from private actors.[23]

    *Barnes* and *Cravens* are nearly identical to Ms. Park's cause of action.  Even if Ms. Park had correctly plead her action, and she didn't, it is clear that her equal protection claims, like those in *Barnes* and *Cravens,* should be dismissed.

## II.     Supreme Court and Ninth Circuit cases bar Ms. Park's Due Process Claims.

    A claim of a procedural due process violation must be based on a "legitimate claim of entitlement" to a benefit.[24]  When a State has not explicitly created a "personal entitlement" to some benefit, there is no property interest and thus no procedural due process violation.[25]  The legal question, then, is whether Ms. Park had a recognized property interest in, that is, legal entitlement to, or personal interest in, an outcome guaranteed in the Victim's Bill of Rights.

---

[19]  *See* Plaintiff's FIRST AMENDED PETITION, ¶ 37.

[20]  *Barnes,* WL 492805 at 8.

[21]  *Id.*

[22]  *Id.*

[23]  *Id.*

[24]  *See Bd. of Regents v. Roth*, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

[25]  *See Town of Castle Rock, Colorado v. Gonzales,* 545 U.S. 748 (2005).

LA/576564v1

When one examines *Castle Rock* and *Dix,* the clear answer to this question is "no," because there is no guaranteed outcome.

Despite Ms. Park's attempt to invite this Court to ignore, controversial or not, valid Supreme Court precedent, *Castle Rock v. Gonzales* bars Ms. Park's claims.  In *Castle Rock v. Gonzales,*[26] Ms. Gonzales filed a section 1983 action after her estranged husband abducted and murdered their three children.  Ms. Gonzales possessed a restraining order that included a preprinted "NOTICE TO LAW ENFORCEMENT OFFICIALS," which ordered the officials in part to "use every reasonable means to enforce this restraining order."  The Court held that Gonzales did not have a legitimate property interest in the enforcement, and therefore the Town did not violate the Due Process Clause when police officers failed to enforce the order.  Despite the forceful language of the notice to law enforcement officials, the Court reasoned that the state of Colorado had not created a clear mandate of police action, noting that it is "***common sense that all police officers must use some discretion in deciding when and where to enforce city ordinances***."[27]  Consequently, Gonzales had no constitutionally protected property interest in the enforcement of the restraining order, and the Town did not violate her procedural due process rights.

In spite of the clear holding in *Castle Rock* that prohibits claims exactly like Ms. Park's, Ms. Park argues that a Ninth Circuit case predating *Castle Rock* and denying relief for the plaintiff somehow provides the basis for a due process claim.  Ms. Park claims that the CNMI Victim's Bill of Rights creates a liberty and property interest protected by the Due Process Clause of the Fourteenth Amendment.  A protected liberty interest may be created by state law, but only in

---

[26]  545 U.S. 748 (2005).

[27]  *Id.* at 761 (emphasis added)(internal quotation marks and citation omitted).

limited circumstances.[28] In order to create a liberty interest protected by due process, the state law must contain: (1) "substantive predicates" governing official decision making, and (2) "explicitly mandatory language" specifying the outcome that must be reached if the substantive predicates have been met.[29]  As the *Dix* case notes, in order to contain the requisite "substantive predicates," the state law at issue "must provide more than merely procedure; it must protect some substantive end."[30]  Indeed, courts have drawn a careful distinction between procedural protections created by state law and the substantive liberty interests those procedures are meant to protect.[31]  For example, the *Dix* court stated that:

> On the other hand, a prison regulation providing that an inmate "must be allowed to receive visitors" if he exhibits good behavior gives inmates a liberty interest in receiving visitors. Such a law contains a substantive predicate-good behavior-and if the substantive predicate is met, the prison *must* admit the inmate's visitors.[32]

The language used by the Ninth Circuit indicates that the statute must contain a mandatory outcome--a substantive end--not just mandatory language.

The CNMI Victim's Bill of Rights, however, contains no "explicitly mandatory language" specifying ***the outcome that must be reached***.  Rather, there is only mandatory language that applies to the officers "best efforts."  As there is no mandatory language concerning an outcome, Ms. Park has no claim.[33]  For example, nothing in the Bill of Rights specifies that Ms. Park shall receive restitution.  The rights contained in the Victim's Bill of Rights are a procedural right to participate in the process, not a substantive guarantee of restitution or even substantive

---

[28]    *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460-63, (1989); *Dix v. County of Shasta,* 963 F.2d 1296 (9th Cir.1992).

[29]    *Thompson,* 490 U.S. at 462-63, 109 S.Ct. at 1910; *Dix,* 963 F.2d at 1299.

[30]    *Dix,* 963 F.2d at 1299.

[31]    *Moran v. Godinez,* 40 F.3d 1567, 1574 (9th Cir.1994); *Smith v. Sumner,* 994 F.2d 1401, 1406 (9th Cir.1993).

[32]    *Id.* (internal citation omitted).

[33]    *Id.*

participation. This becomes clear when one examines how courts have dealt with a similar Bill of Rights.

For example, in *Jackson v. Henderson, et al.*,[34] plaintiffs brought suit because, much like Ms. Park, they were upset that the defendants did not follow the Tennessee Victim's Bill of Rights. Specifically, the family was not informed, as required by the statute, that the matter had been previously adjudicated. Plaintiffs brought suit because "they deprive[d] us of our constitutional rights and settled the matter without notifying us." In dismissing the case, the court analyzed *Dix* and found that:

> Likewise in this case, while the Tennessee Victims' Bill of Rights provides a procedure for crime victims to participate in prosecution of the accused, this does not mean that the Bill of Rights provides a right to that participation which is protected under the federal constitution. ***This is most notably so given that the statute itself provides no cause of action for its violation***.[35]

Compounding this problem for Ms. Park is the fact that the NMI statute, like the Tennessee statute, explicitly states "[t]his section does not create a cause of action . . . in favor of a person arising out of the failure to accord a victim the rights enumerated in subsection (b) of this section." This is a clear indication that the Victims' Bill of Rights statute does not create any rights whatsoever. Ms. Park attempts to circumvent this problem by citing *Board of Ed. v. Loudermill*.[36] The problem with this argument, as demonstrated by *DeShaney, City of Castle Rock, Dix,* and *Jackson*, is that the CNMI Victim's Bill of Rights does not confer a substantive right[37] because Ms. Park cannot point to a mandatory outcome or show that she has a "legitimate

---

[34] 2006 WL 2559713 (M.D. Tenn).

[35] *Jackson*, WL 2559713, at 2 -3 (emphasis added).

[36] 470 U.S. 532, 538-41 (1985) ("state legislation conferring a substantive right does not limit the procedure for enforcing that right; and that a due process claim is therefore available for deprivation of the right even where the state law creating the right does not provide an adequate remedy for its deprivation.").

[37] *Dix,* 963 F.2d at 1299.

1   claim of entitlement" to a benefit.[38]  Because of these facts, Ms. Park has failed to state a due

2   process cause of action and it should be dismissed.

3       **III.    Ms. Park does not have standing.**

4           As discussed in the Motion to Dismiss, Ms. Park's suit should be dismissed because she

5   has not suffered "an invasion of a concrete and particularized legally protected interest."[39]

6       **IV.    Without an Underlying §1983 Violation, there can be no conspiracy.**

7           Ms. Park has not demonstrated that she was entitled to police protection or that she

8   was denied any due process right.  The absence of a section 1983 deprivation of rights

9   precludes a section 1985 conspiracy claim predicated on the same allegations.[40]  Moreover,

10  all Ms. Park has alleged are conclusory claims, which do not satisfy any pleading

11  requirement let alone the heightened standard she must meet.[41]

12

13          To get around this fact, Ms Park notes that the DPS Defendants "[did] not mention"

14  that *Olsen v. Idaho State Bd. of Medicine,*[42] was called into doubt by a ***district court case***,

15  *Jones v. Tozzi.*[43]  The DPS Defendants concede that a district court case called controlling

16  Ninth Circuit law into question.  The DPS Defendants also concede that the court in *Tozzi*

17  applied a heightened pleading standard.[44]   The DPS Defendants concede that a heightened

18  pleading standard still applies in cases where the plaintiff has alleged a condition of the

19  mind.[45]  The DPS Defendants, however, emphasize that a West published district court

20

21

_____

22      [38]   *See Bd. of Regents v. Roth*, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

23      [39]   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Barnes v. Black*, 2004 WL 257105; *see generally* DEFENDANTS' MOTION TO DISMISS, pp. 11-13.

24      [40]   *Cassettari v. Nevada County, Cal.,* 824 F.2d 735, 739 (9th Cir.1987) (citations omitted).

25      [41]   *Olsen v. Idaho State Bd. of Medicine,* 363 F.3d 916, 929 (9th Cir.2004).

        [42]   363 F.3d 916, 929 (9th Cir.2004).

26      [43]   2006 WL 2472752 (E.D.Cal.).

        [44]   *Id.*

27      [45]   *See* FED.R.CIV.PRO. 9(b); *see also Oliverria v. Gates*, 2003 WL 251937 (C.D. Cal.) ("This paragraph amounts to nothing more than a bare allegation of conspiracy, and mere allegations of Defendants Sclater and Cuiel's participation does not satisfy Rule 9(b)'s heightened pleading requirement.).

28

1   opinion has no effect on the controlling Ninth Circuit opinion.

2   **V.      The DPS Defendants are entitled to Qualified Immunity.**

3          The Supreme Court directs courts to apply a two-step process whenever they

4   analyze an entitlement to qualified immunity. First, they are to evaluate whether the officer's

5   conduct violated a constitutional right. Next, they look to whether the constitutional right

6   was clearly established.[46]  Because Ms. Park has failed to show she was denied a

7   constitutional right, the second step need not be reached.[47]  In this case, however, even if

8   Ms. Park could demonstrate a constitutional right was violated, she has not directed this

9   Court to any case that is similar to hers.  Indeed, the only cases on point are squarely against

10  her.  For these reasons, there is no possibility that any constitutional right she claims was

11  "clearly established"[48] at the time of the incident.  Thus, DPS Defendants are entitled to

12  qualified immunity.

13  **VI.     28 U.S.C. 1347(c) Allows Dismissal of Plaintiff's Remaining State Claims.**

14         Ms. Park's state law claims should be dismissed outright as they are alleged

15  constitutional violations, which fail to state a claim, negligence actions which are barred by

16  the public duty doctrine,[49] or outright bad faith claims such as negligent infliction of

17  emotional distress which requires a touching, and there is none alleged.[50]

18                                **CONCLUSION**

19         WHEREFORE, based upon the foregoing, this honorable Court should grant, in whole or

20  in part, DPS Defendants' Motion to Dismiss and that all costs be taxed to Ms. Park.

---

[46]   *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

[47]   *Id.* at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

[48]   *See* Note 15, *supra.*

[49]   *See generally, Ezell v. Cockrell,* 902 S.W.2d 394 (Tenn. 1995).

[50]   *Lee Bok Yuri v. Yoon Young Byung, et. al.,* NMI Sup. Ct. Civ. No. 00-0085 (quoting Restatement (Second) of Torts § 313, cmt. a. (1965)

1

2                                                                   Respectfully submitted
                                                                    Monday, November 05, 2007
3                                                                   OFFICE OF THE ATTORNEY GENERAL

4

5                                                                   _____/S/_____

6                                                                   Braddock Huesman, T#00047

7
                                       CERTIFICATE OF SERVICE
8

9          I certify that a copy of Defendants' Reply to Plaintiff's Opposition to Defendants' Motion
   to Dismiss was served on George Hasselback, who is the attorney in charge for plaintiff, Ms.
10  Park, and whose address is PO Box 501969, Saipan, MP  96950, (670) 234-5684, by electronic
   filing on November 5, 2007.
11

12

13                                     __/s/_____

14                                     **Braddock J. Huesman**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)

**(Cite as: Not Reported in F.Supp.2d)**

# Barnes v.  Black

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
(Cite as: Not Reported in F.Supp.2d)

Barnes v. Black
W.D.Wis.,2004.
Only the Westlaw citation is currently available.
United States District Court,W.D. Wisconsin.
Dennis Earl BARNES, Petitioner,
v.
William J. BLACK, Metropolitan Property &
Casualty Insurance, Livingston County Sheriff's
Deputy Hamilton and Livingston County Sheriff's
Deputy Greagor, Respondents.
No. 03-C-703-C.

Feb. 3, 2004.

Dennis Earl Barnes, pro se.

ORDER

CRABB, J.

**\*1** This is a proposed civil action for monetary relief, brought under 42 U.S.C. § 1983. Petitioner, who is presently confined at the Fox Lake Correctional Institution in Fox Lake, Wisconsin, asks for leave to proceed under the *informapauperis* statute, 28 U.S.C. § 1915. From the financial affidavit petitioner has given the court, I conclude that petitioner is unable to prepay the full fees and costs of starting this lawsuit. Petitioner has paid the initial partial payment required under § 1915(b)(1).

In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, if the litigant is a prisoner, the 1996 Prison Litigation Reform Act requires the court to deny leave to proceed if the prisoner has had three or more lawsuits or appeals dismissed for lack of legal merit (except under specific circumstances that do not exist here), or if the prisoner's complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. This court will not dismiss petitioner's case on its own motion for lack of administrative exhaustion, but if respondents believe that petitioner has not exhausted the remedies available to him as required by § 1997e(a), they may allege his lack of exhaustion as an affirmative defense and argue it on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).*Massey v. Helman*, 196 F.3d 727 (7th Cir.1999); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir.1999).

Petitioner contends that respondents Hamilton and Greagor violated his rights under the **equalprotection** clause of the Fourteenth Amendment by failing to conduct an exhaustive investigation of a **trafficaccident** in which petitioner was injured and by not ticketing respondent Black for causing the accident. Petitioner will not be allowed to proceed on this constitutional claim because these acts do not violate his rights under the equal protection clause and because it does not appear that he sustained an injury as a result of these alleged shortcomings. In addition, petitioner alleges that respondent Black was at fault for this traffic accident and neither Black nor his insurance provider, respondent Metropolitan, has compensated petitioner for the injuries he sustained as a result of the accident. From his allegations, I conclude that petitioner has stated a negligence tort action against respondent Black. Petitioner argues that there is diversity jurisdiction for this claim. Although the complaint does not provide enough information to establish diversity jurisdiction, I will give petitioner until February 18, 2004 to cure its deficiencies.

In his complaint, petitioner alleges the following facts.

ALLEGATIONS OF FACT

Petitioner Dennis E. Barnes is currently an inmate at the Fox Lake Correctional Institution in Fox Lake, Wisconsin. Respondent William J. Black resides in Reddick, Illinois. Respondent Metropolitan Property and Casualty Insurance is the automobile insurance provider for respondent Black. Respondents Hamilton and Greagor are sheriff's deputies in Livingston County, Illinois.

**\*2** On December 18, 2001, respondent Black caused a serious traffic accident when he pulled out into an intersection in Livingston County, Illinois, colliding into the passenger side of another vehicle in which petitioner was a passenger. Respondent Black did not have the right of way and shortly after the accident, he stated that he had not seen petitioner's vehicle when he pulled out into the intersection. Respondents Hamilton and Greagor responded to the accident. Although they filled out a traffic crash report form, they did not investigate the accident scene completely, interview petitioner or ticket

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

respondent Black. Petitioner was taken to the Kankakee Trauma Center, where he was later released with instructions to seek follow-up treatment with his family physician or V.A. hospital provider.

Respondents Black and Metropolitan gave petitioner claims forms, stating that respondent Black was at fault and that respondent Metropolitan would take care of everything. Petitioner submitted his bills relating to the accident to respondent Metropolitan, who has paid some but not all of these submitted bills. Both petitioner and his wife Debra have contacted respondent Metropolitan several times regarding these outstanding claims. Respondent Metropolitan has ignored these claims in bad faith. Petitioner continues to suffer from the physical injuries he incurred as a result of the collision.

DISCUSSION

A. *Equal Protection*

Petitioner alleges that respondents Hamilton and Greagor violated his rights under the equal protection clause of the Fourteenth Amendment by not interviewing him about the accident, failing to investigate the accident completely and by not ticketing respondent Black. The equal protection clause of the Fourteenth Amendment guarantees that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).* Construing the allegations liberally, petitioner's complaint does not suggest any way in which he has been treated differently from similarly situated individuals.

Even if I were to assume that petitioner had alleged that he was treated differently in some way, it is unclear that petitioner sustained an actual injury as a result of the alleged shortcomings of respondents Hamilton and Greagor. A party must have sustained some sort of injury as a result of the alleged wrongdoing to have standing to bring a claim. *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).* From petitioner's alleged facts, it appears that respondent Black has been held at fault for the accident. It is not clear what additional advantage petitioner would have gained had respondents Hamilton and Greagor

conducted a more thorough investigation or ticketed respondent Black. Petitioner's complaint does not make out a claim under the equal protection clause or indicate that he would have standing to bring such a claim. Therefore, he will be denied leave to proceed on this claim.

B. *Negligence*

**\*3** Although petitioner has not identified a legal theory under which he seeks recovery against respondent Black, he is not required to do so.*Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir.1997)* (complaint need not identify legal theories). Petitioner's factual allegations make out a negligence tort action against respondent Black on which petitioner will be allowed to proceed if he can establish federal jurisdiction. *See,e.g.,Senno v. Jackson, 262 Ill.App.3d 384, 198 Ill.Dec. 866, 633 N.E.2d 707 (Ill.App.Ct.1992)* (recovery against party negligently causing car accident); *Osman v.. Phipps, 2002 WI App. 170, 256 Wis.2d 589, 649 N.W.2d 701* (same).

Although petitioner need not identify the legal basis for his claim, he must set forth the basis for federal jurisdiction. *Fed.R.Civ.P. 8(a)(1).* For his claim against respondent Black, petitioner alleges both supplemental and diversity jurisdiction. Because petitioner has not stated a claim under the equal protection clause, there is no underlying claim to which supplemental jurisdiction may attach. There may be diversity jurisdiction over this claim, but plaintiff has not provided enough information to allow me to make this determination. *28 U.S.C. § 1653* permits amendment of complaints to cure deficiencies. Accordingly, I will give petitioner two weeks in which to amend his complaint.

Diversity jurisdiction exists only if petitioner and respondent Black are citizens of different states. *28 U.S.C. § 1332.* Petitioner has provided a mailing address for both himself and respondent Black, indicating that he resides in Wisconsin in a correctional institution and respondent Black resides in Illinois. However, residence is not determinitive. The parties must be "citizens" of diverse states. *Salzstein v. Bekins Van Lines, Inc., 747 F.Supp. 1281, 1282 (S.D.Ill.1990).*

Generally, citizenship is defined by two elements: physical presence and intent to make the state a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
**(Cite as: Not Reported in F.Supp.2d)**

permanent home. *Stifel v. Hopkins,* 477 F.2d 1116, 1120 (6th Cir.1972); *Palazzo v. Corio,* 232 F.3d 38, 42 (2d Cir.2000);￼ 15 *Moore's Federal Practice* § 102.34[2] (3d ed.2003)."A prisoner is a citizen of 'the state of which he was a citizen before he was sent to prison unless he plans to live elsewhere when he gets out, in which event it should be that state." ' *Bontkowski v. Smith,* 305 F.3d 757, 763 (7th Cir.2002)* (quoting *Singletary v. Continental Illinois National Bank & Trust Co.,* 9 F.3d 1236. 1238 (7th Cir.1993)). The accident report that petitioner attached to his complaint indicates that he provided the responding officers an Indiana street address and had an Indiana driver's license. Petitioner must amend his complaint identifying both the state in which he plans to live upon his release from prison and respondent Black's state of citizenship. If he and Black are citizens of different states, petitioner will be permitted to proceed on his negligence claim against Black and Black's insurer. He has satisfied the diversity jurisdiction amount in controversy requirement by alleging damages in excess of $75,000. Although some of these claims appear somewhat speculative, courts do not disregard damage amounts that plaintiff's plead unless the damages are not recoverable to a legal certainty.

*Freeman v. Sports Car Club of America, Inc.,* 51 F.3d 1358, 1362 (7th Cir.1995).

ORDER

**\*4** 1. Petitioner is DENIED leave to proceed on his claim that respondents Hamilton and Greagor denied him equal protection under the law in violation of his rights under the Fourteenth Amendment and therefore, respondents Hamilton and Greagor are DISMISSED.

2. Petitioner will have until February 18, 2004, in which to amend his complaint to add allegations showing that this court has diversity jurisdiction. If, by February 18, 2004, petitioner fails to respond to this order, the clerk of court is directed to dismiss this case.

W.D.Wis.,2004.
Barnes v. Black
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
**(Cite as: Not Reported in F.Supp.2d)**

Cravens v. City of La Marque. Tex

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
(Cite as: Not Reported in F.Supp.2d)

H

Cravens v. City of La Marque, Tex.
S.D.Tex.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. Texas, Galveston
Division.
Marie CRAVENS, et al., Plaintiffs,
v.
CITY OF LA MARQUE, TEXAS, Defendant.
No. Civ.A. G-05-545.

Feb. 28, 2006.

Scot Gibbons Dollinger, Dollinger Law, Houston,
TX, for Plaintiffs.
William Scott Helfand, Chamberlain Hrdlicka,
Houston, TX, for Defendant.

KENT, J.
*1 This case arises out of alleged misconduct by
former City of La Marque police officer Richard
Ontiveros ("Ontiveros") who failed to take Abner
Cravens ("Cravens") into custody for driving while
intoxicated even though he allegedly had probable
cause to do so. Plaintiffs are Cravens's survivors and
representatives of the estate. They bring their claims
against the City of La Marque ("the City") under 42
U.S.C. § 1983 for alleged violations of Cravens's
constitutional rights. Now before the Court is the
City's Motion to Dismiss for Failure to State a Claim
pursuant to FED. R. CIV. P. 12(b)(6). For the
reasons stated below, the City's Motion is
GRANTED, and Plaintiffs' claims against the City
are hereby DISMISSED WITH PREJUDICE.[FN1]

> FN1. This Court does not consider this
> Order worthy of publication. Accordingly, it
> has not requested and does not authorize
> publication.

I. Background

Plaintiffs allege that Cravens was denied substantive
due process and equal protection under the
Fourteenth Amendment to the United States
Constitution. Plaintiffs claims are based on the
alleged misconduct of Officer Ontiveros, who at the
time of the events giving rise to this lawsuit was
employed as a police officer by the City. Plaintiffs
claim that the City is directly liable for the actions of

Officer Ontiveros based on its policies, customs, and
practices, which resulted in the violation of
Cravens's constitutional rights and resulted in his
untimely death. The tragic facts of this case are laid
out below.[FN2]

> FN2. Since this is a Motion to Dismiss, the
> Court must consider the facts as they have
> been presented by Plaintiffs. Accordingly,
> the Court has laid out the facts as alleged in
> Plaintiffs' Complaint, but makes no
> judgment as to their accuracy.

Plaintiffs allege that around 5:30 p.m., on or about
October 13, 2003, Cravens was driving his vehicle in
La Marque, Texas, when he rear-ended another
motor vehicle driven by Rosezelia Sonnier
("Sonnier"), who also happened to be his cousin.
After the accident occurred, Sonnier and others were
concerned about Cravens's well-being because he
appeared to be intoxicated, and they called the La
Marque Police Department. Police arrived at the
scene of the accident shortly thereafter, and Officer
Ontiveros conducted an investigation.[FN3]Plaintiffs
claim that Officer Ontiveros was advised at the scene
that Cravens was intoxicated and that he required
help, and that Officer Ontiveros knew that Cravens
was intoxicated based on his own personal
observations. Next, Plaintiffs claim that Officer
Ontiveros told Cravens's family and others that he
had the situation under control, that he would handle
the situation, and that their involvement "was no
longer needed, necessary, or allowed."As a result, all
of the people that would have helped Cravens left his
"well-being" in the hands of Officer Ontiveros.
Additionally, Plaintiffs claim that Officer Ontiveros
had probable cause to arrest Cravens for driving
while under the influence of alcohol, but instead,
released Cravens and allowed him to continue to
drive his vehicle in his intoxicated state, posing a
danger to himself and others.

> FN3. Plaintiffs do not mention any other La
> Marque police officers in their Complaint.

Shortly after Officer Ontiveros released Cravens, he
was involved in a second accident. Cravens crossed
the center line and ran head-on into oncoming
traffic. Cravens suffered injuries that ultimately lead
to his death several days later. Plaintiffs allege that
had Officer Ontiveros not told them that he had the

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
(Cite as: Not Reported in F.Supp.2d)

situation under control, they would have made sure Cravens was driven from the scene and given proper medical care. Essentially, Plaintiffs claim that but for the actions of Officer Ontiveros, Cravens would still be alive.

**\*2** Plaintiffs originally filed suit against the City and Officer Ontiveros. That cause of action was dismissed on July 11, 2005 because Plaintiffs' Counsel failed to appear at the Rule 16 Scheduling Conference. On July 25, 2005, Plaintiffs moved to reopen the case as to Officer Ontiveros only. The Court granted that motion and the case was reopened as to Officer Ontiveros.[FN4] On October 12, 2005, Plaintiffs filed a separate suit against the City concerning the same events. On November 16, 2005, the City filed its Motion to Dismiss for Failure to State a Claim. After thoughtful consideration of the City's Motion, Plaintiff's Response thereto, and applicable law, the Court concludes that the City's Motion to Dismiss is hereby GRANTED.

FN4. Cause No. 3:05-cv-00222, *Cravens, et al. v. Richard Ontiveros.*

II. Motion to Dismiss for Failure to State a Claim

A party is entitled to dismissal under FED. R. CIV. P. 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted. Rule 12(b)(6) dismissal is appropriate when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994). When considering a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded allegations in the complaint, and views them in the light most favorable to the plaintiff. *See Scanlan v. Texas A & M University,* 343 F.3d 533, 536 (5th Cir.2003); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000) (noting that a court must construe the complaint liberally in favor of the plaintiff).*See also Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993)."A motion to dismiss under Rule 12(b)(6) 'is viewed with disfavor and is rarely granted.' " *Collins,* 224 F.3d at 498 (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir.1982).

Although all doubts are resolved in the plaintiff's favor, a plaintiff still must plead specific facts to avoid dismissal for failure to state a claim; a court may not accept as true conclusory allegations or unwarranted deductions of fact contained within the plaintiff's complaint. *See Tuchman,* 14 F.3d at 1067;*Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993)." '[A] statement of facts that merely creates a suspicion that the pleader might have a right of action' is insufficient."*Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir.1995) (quoting 3 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216 at 163). Dismissal is appropriate if the complaint lacks factual allegations regarding required elements necessary to obtain relief. *Id.* (citing 2A MOORE'S FEDERAL PRACTICE ¶ 12.07 [2.-5] at 12-19 (footnote omitted)).

**\*3** Additionally, in considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings. *See Scanlan,* 343 F.3d at 536-37. In their Response, Plaintiffs invite the Court to consider briefs and exhibits that have been submitted in their lawsuit against Officer Ontiveros in his individual capacity. *See* Defendant's Motion for Summary Judgment, *Cravens, et al. v. Ontiveros,* Cause No. 3:05-cv-222. Those exhibits have no bearing on the Court's determination of the sufficiency of Plaintiffs' Complaint to state a claim for which relief can be granted against the City, and they will not be considered. Only in narrow circumstances are documents beyond the pleadings themselves considered by a court in ruling on a Rule 12(b)(6) motion. *See Scanlan,* 343 F.3d at 536-37. This case does not fall within those parameters, and the City's Motion to Dismiss will be based solely on the pleadings.

III. Analysis

A. 42 U.S.C. § 1983

42 U.S.C. § 1983 provides a cause of action for those who have been deprived of their federal rights under color of law. Section 1983 does not create any substantive rights, rather, it "simply provides a remedy for the rights that it designates."*Johnson v.*

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
**(Cite as: Not Reported in F.Supp.2d)**

*Harris County Flood Control Dist.,* 869 F.2d 1565, 1574 (5th Cir.1989). The assertion of an underlying constitutional or federal statutory violation is a predicate to liability under § 1983. *See Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 215 (5th Cir.1998). A municipality will only be held liable for the violation of a plaintiff's constitutional rights if the municipality's policies were the moving force behind the constitutional violation. *See Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001) ("*Piotrowski II*") (citing *Monell v. Dep't of Social Servs. of City of New York,* 436 U.S. 658, 690-94, 98 S.Ct. 2018, 2035-37, 56 L.Ed.2d 611 (1978)).

Plaintiffs premise their § 1983 claims upon the following constitutional violations: (1) violation of Cravens's substantive due process rights under the Fourteenth Amendment to the United States Constitution arising from a special relationship as established in the Supreme Court's decision in *DeShaney v. Winnebago County Dept. of Soc. Sevs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); (2) violation of Cravens's substantive due process under the Fourteenth Amendment to the United States Constitution arising under the state-created danger theory; and (3) violation of Cravens's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The sufficiency of Plaintiffs' claims against the City with respect to each alleged constitutional violation will be analyzed individually. Each analysis will require a two-part inquiry: (1) have Plaintiffs alleged facts which, if true, amount to a constitutional violation, and (2) have Plaintiffs alleged that a policy or custom of the City was the moving force behind the constitutional violation.

A. Substantive Due Process

**\*4** In general, municipalities are under no affirmative duty to provide protection to private citizens. "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests of which the government itself may not deprive the individual."*Id.* at 196, 109 S.Ct. at 1003. "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."*Id.* at 197,109 S.Ct. 1004.However, there are exceptions. The Constitution imposes a duty to protect individuals in two limited circumstances: (1) when

the state has a special relationship with a person; or (2) when the state exposes a person to a danger of its own creation (a "state-created danger").*See Piotrowski v. City of Houston,* 51 F.3d 512, 516 (5th Cir.1995) ("*Piotrowski I*" ) (citing *Salas v. Carpenter,* 980 F.2d 299, 307 (5th Cir.1992)). Plaintiffs argue both that Officer Ontiveros created a special relationship with Cravens and therefore had a duty to protect him, and that Officer Ontiveros subjected Cravens to a state-created danger by cutting off a private source of aid.

1. Special Relationship

"[I]n certain limited circumstances, the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals."*DeShaney,* 489 U.S. at 198, 109 S.Ct. at 1004. This is known as the "special relationship" exception. Under this exception, the state has a constitutional duty to protect an individual from known threats of harm by private actors. *See Beltran v. City of El Paso,* 367 F.3d 299, 307 (5th Cir.2004); *Priester v. Lowndes County,* 354 F.3d 414, 421-22 (5th Cir.2004). The affirmative duty only arises when the state acts to restrain an individual through incarceration, institutionalization or puts some other similar restraint on an individual's personal liberty by the affirmative exercise of state power such that he cannot act on his own behalf. *See McClendon v. City of Columbia,* 305 F.3d 314, 324 (5th Cir.2002); *Walton v. Alexander,* 44 F.3d 1297, 1303-04 (5th Cir.1995).*See also DeShaney,* 489 U.S. 199-200, 109 S.Ct. at 1005-06.

Plaintiffs have failed to allege any facts in their Complaint that would support a cause of action under the special relationship exception. First, there is no allegation that Cravens was institutionalized, incarcerated or in any other way restrained his freedom. *See McClendon,* 305 F.3d at 324. In fact, it was Officer Ontiveros's *failure to arrest* is the keystone to Plaintiffs' claims. Cravens was only detained for the purpose of investigating the accident, and he was then permitted to drive away. In *Beltran v. City of El Paso,* the Fifth Circuit emphasized that the state actor must affirmatively place the individual into custody and restrain the individual's freedom for the special relationship exception to apply. *See Beltran,* 367 F.3d at 307 (finding that the actions of a 911 operator encouraging a caller to stay in the bathroom and

telling her that police were on their way did not establish a special relationship or that the operator became the custodian of the caller's safety.

**\*5** Second, there is no allegation that Officer Ontiveros prevented Cravens from acting on his own behalf. Officer Ontiveros merely let Cravens return to the activities in which he was engaged directly before coming into contact with the police. Whether Cravens could act on his own behalf given his alleged state of intoxication is irrelevant. Cravens's intoxicated state was due to his own voluntary actions, and his intoxication alone does not give rise to a special relationship with Officer Ontiveros. There was no special relationship between Cravens and Officer Ontiveros and therefore no constitutional violation. As such, there can be no claim against the City, for if a person has not suffered a constitutional injury, whether the City's regulations might have authorized the conduct is beside the point. *See Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). Plaintiffs claim against the City premised on the special relationship theory is hereby DISMISSED WITH PREJUDICE.

## 2. State Created Danger Under Substantive Due Process

The validity of the state-created danger theory is uncertain in the Fifth Circuit, which has repeatedly declined to recognize state-created danger as a trigger of affirmative duties under the Due Process Clause. *See Beltran,* 367 F.3d at 307;*Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 249 (5th Cir.2003). However, on numerous occasions the Fifth Circuit has recognized and discussed the existence and elements of the doctrine, as well as its acceptance in other Circuits. *See id.;Scanlan,* 343 F.3d at 538;*Randolph v. Cervantes,* 130 F.3d 727 (5th Cir.1997); *Doe v. Hillsboro Indep. Sch. Dist.,* 113 F.3d 1412 (5th Cir.1997); *Piotrowski I,* 51 F.3d 512;*Johnson v. Dallas Indep. Sch. Dist.,*38 F.3d 521 (5th Cir.1994). Additionally, the Circuit has discussed what a plaintiff would be required to show to prevail on such a theory. To survive Rule 12(b)(6) dismissal, a plaintiff must allege facts sufficient to show: (1) that the state actor increased the danger to the individual, and (2) that the state actor acted with deliberate indifference to the plight of the plaintiff. *See Rivera,* 349 F.3d at 249;*Scanlan,* 343 F.3d at 537-38;*Piotrowski I,* 51 F.3d at 515. "The key to the state created danger cases ... lies in the state actors'

culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of [his or] her ability to defend [himself or] herself, or cutting off potential sources of private aid."*Johnson,* 38 F.3d at 201 (quotations and citations omitted). In *Scanlan,* the Circuit expressly noted that despite the theory's uncertain viability, a district court should treat such claims as valid on a motion to dismiss, and analyze them accordingly. *See Scanlan,* 343 F.3d at 538.

According to the facts as alleged, Officer Ontiveros prevented Cravens's cousin and others from rendering aid to Cravens at the scene of the first accident by telling them that "he had the situation in hand and that he would take care of the situation."By making representations that Cravens would be taken care of, he cut off a potential source of aid, and discouraged Cravens's family and others from looking out for the safety of Cravens. Plaintiffs claim that but for Officer Ontiveros's representations, Cravens's family and others would have intervened to see that Cravens arrived home safely. These facts, as alleged, demonstrate that by cutting off a potential source of aid, Officer Ontiveros created a situation where Cravens was in greater danger than he would have otherwise been.[FN5]

> FN5. The Court again notes that the facts alleged must be taken as true.

**\*6** Whether the facts support the second requirement, that Officer Ontiveros acted with deliberate indifference, presents a more difficult question. There is a significant distinction between a tort and a *constitutional* wrong. *See Lefall v. Dallas Ind. Sch. Dist.,* 28 F.3d 521, 532 (citing *de Jesus Benavides v. Santos,* 883 F.2d 385, 388 (5th Cir.1989)). The Supreme Court has made it clear that "[t]he Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property."*Davidson v. Canon,* 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). Where a state actor is merely negligent in causing the injury, no procedure for compensation is *constitutionally* required. *Id.* Reckless and grossly negligent conduct by state officials falls squarely within the ambit of traditional state tort law. *See de Jesus Benavides,* 883 F.2d at 388. Accordingly, the conduct of a state actor does not violate a victim's right to substantive due process unless that conduct

is carried out with deliberate indifference.

Deliberate indifference is a "lesser form of intent rather than a heightened form of negligence." *Lefall, 28 F.3d at 531* (internal quotations omitted). It involves a higher degree of certainty than gross negligence. *See Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 433, 453 (5th Cir.1994)."Deliberate indifference requires that the state actor both knew of and disregarded an excessive risk to the victim's health and safety." *Beltran, 367 F.3d at 307* (citing *McLendon, 305 F.3d at 326 n. 8).* Plaintiffs' argue that by failing to arrest Cravens when he was intoxicated *and* by cutting off private sources of protection, Officer Ontiveros acted with deliberate indifference toward the safety and well-being of Cravens. Plaintiffs rely upon a case from the Third Circuit, *Kneipp v. Tedder, 95 F.3d 1199 (3d Cir.1996),* for this argument. In that case, an intoxicated woman was walking home with her husband when the couple was stopped by police officers who later told the husband to go home.*Id. at 1201-03.*The husband left while his wife was resting on the hood of a police vehicle in the presence of several officers. After his wife did not return home, he went to look for her and came across the police officers he had been with earlier. When he asked about her whereabouts, an officer told him to "get out of here" before he was locked up. The husband left again upon the instruction of the officer. His wife was later found in a ditch where she suffered hypothermia causing permanent brain damage. In that case, the Third Circuit found that the plaintiffs had "adduced sufficient evidence to raise a material issue as to whether [the officers] had acted in willful disregard for [her] safety." *Id. at 1208.*The validity of *Kneipp* in this Circuit is far from certain. However, given the deference owed to a plaintiff on a motion to dismiss, the Court assumes without deciding that given the facts as alleged (that Officer Ontiveros knew that Cravens was intoxicated, permitted him to drive away from the scene of the accident *and* that he cut off private sources of aid), Plaintiffs have alleged sufficient facts to support their claim that Officer Ontiveros knew and disregarded an excessive risk to Cravens's safety.[FN6] Therefore, Plaintiffs have stated facts sufficient to show a constitutional violation by Officer Ontiveros under the state-created danger theory.[FN7]The next inquiry is whether the City's policies or customs were the "moving force" behind the alleged violation. If not, then Plaintiffs' claim against the City must fail as a matter of law.

FN6. The Court has doubts as to whether the act of allowing a drunk driver to continue driving after already committing one accident, and where people are offering to render him aid, actually amounts to deliberate indifference given the Supreme Court's recent decision in *Town of Castle Rock, Colo. v. Gonzalez, --- U.S. ----, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005),* and the Fifth Circuit's decision in *Saenz v. Heldenfels Bros., Inc., 183 F.3d 389 (5th Cir.1999).* In *Castle Rock,* the Supreme Court recognized the "deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands."*Castle Rock, --- U.S. ----, 125 S.Ct. at 2805-06, 162 L.Ed.2d 658.* In *Saenz,* the Fifth Circuit found that "neither the text nor the history of the **DueProcess** Clause supports holding that an officer who orders another officer to refrain from arresting a suspected **drunkdriver** has committed a constitutional tort," and that a state officer "cannot offend **dueprocess** by permitting an intoxicated driver to remain on the highway, thereby increasing the risk of harm to unidentified and unidentifiable members of the public."*Saenz, 183 F.3d at 391, 392.* For the purposes of this Motion, and given the absence of any directly-controlling authority, the Court will assume that Officer Ontiveros's actions amounted to deliberate indifference. However, the Court also recognizes that this questions presents a difficult policy decision best left to the purview of the Fifth Circuit, and not a district court.

FN7. The Court notes that this conclusion is aided by the fact that on a motion to dismiss for failure to state a claim the facts as alleged must be construed in a light most favorable to the plaintiff and all facts as alleged are to be taken as true.

**\*7** In suits against a city, "a plaintiff must demonstrate that a [city] 'policy' was the 'moving force' behind the constitutional violation."*In re Foust, 310 F.3d 849, 861 (5th Cir.2002)* (citing *Brown v. Bryan County, Okla., 219 F.3d 450, 457 (5th Cir.2000)).* To prove a violative policy or practice, a plaintiff must show that "(1) the local

government or official promulgated a policy; (2) the decision displayed 'deliberate indifference' and proved the government's culpability; and (3) the policy decision lead to the particular injury."*Id.* The Supreme Court has said that "locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."*Board of County Comm'rs v. Brown*, 520 U.S. at 403-04 (citing *Monell, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611).*

At this stage in the case, Plaintiffs do not need to prove a county custom or policy. Rather, they must allege facts which, if true, state a claim for which relief can be granted. Plaintiffs have failed to allege any facts showing that the allegedly unconstitutional action of Officer Ontiveros was carried out pursuant to the official policies and customs of the City. Plaintiffs essentially describe a "single incident" in which Officer Ontiveros exercised poor judgment. *See Campbell, 43 F.3d at 977.* There are no facts in the Complaint to support Plaintiffs' allegations of any of the following customs or policies on the part of the City: (1) failure to train police officers on their duties when confronted with intoxicated drivers; (2) failure to timely review and enforce the City's policies and procedures; (3) allowing discretion on arresting intoxicated drivers; and (4) allowing police officers to extend "special favors" to family members of law enforcement officers even when those "special favors" would result in failing to protect individuals such as Cravens and the public at large.[FN8]These are all conclusory allegations without any supporting facts. Furthermore, Plaintiffs' have failed to assert any facts which would show that any of these policies were the "moving force" behind Officer Ontiveros's decision not to arrest Cravens, or that Officer Ontiveros's poor decision on that evening was anything more than an isolated incident. For these reasons, Plaintiffs' claim against the City under the state-created danger theory is hereby DISMISSED WITH PREJUDICE.

FN8. There are not even any facts indicating that Officer Ontiveros was granting anyone a "special favor" by failing to arrest Cravens.

B. Equal Protection Claim

The Equal Protection Clause requires similar treatment of all persons similarly situated. *See City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).* A party who wishes to make out an equal protection claim must prove the existence of purposeful discrimination motivating the alleged state action. *See Washington v. Davis, 426 U.S. 229, 246-50, 96 S.Ct. 2040, 2051-52, 48 L.Ed.2d 597 (1976); Bryan v. City of Madison, Miss., 213 F.3d 267, 276 (5th Cir.2000); Vera v. Tue, 73 F.3d 604, 609-10 (5th Cir.1996).* To establish a claim of selective law enforcement, a plaintiff must show that selective enforcement was deliberately based upon an unjustifiable standard, such as race or religion. *See Beeler v. Rounsavall, 328 F.3d 813, 817 (5th Cir.2003).*

*8 Plaintiffs assert that "[b]ut for [Cravens's] status as an African-American, Officer Ontiveros would have properly arrested [him] in order to protect him."The City argues that this claim is unsupported and conclusory. The Court agrees. There are no facts in the Complaint to support an equal protection violation. There are no facts supporting an inference that the decision not to arrest Cravens was based on race. There are no facts showing or even alleging that similarly situated individuals of other groups outside Cravens' class were arrested under the same circumstances, nor are there any facts to support any inference of purposeful discrimination on the part of Officer Ontiveros. Plaintiffs have failed to allege any facts supporting any theory of racial discrimination, bias, or prejudice, or that race had anything to do with Officer Ontiveros's decision not to arrest Cravens. The unsupported allegation merely creates a suspicion that Plaintiffs might have a right of action, and that alone is insufficient to survive a motion to dismiss for failure to state a claim. *See Campbell*, 43 F.23d at 975.

Additionally, the Fifth Circuit has noted that "the Equal Protection Clause should not be used to make an end-run around the *DeShaney* principle that there is no constitutional right to state protection for acts carried out by a private actor."*Beltran, 367 F.3d at 304.* A plaintiff cannot circumvent the rule of *DeShaney* with an unsupported allegation that a police officer exercised his discretion to arrest in one incident but not in another based on race. *See McKee v. City of Rockwall, 877 F.2d 409, 413 (5th Cir.1989).* Yet, this is exactly what Plaintiffs are trying to do. There are no alleged facts supporting

Not Reported in F.Supp.2d                                                      Page 7
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
**(Cite as: Not Reported in F.Supp.2d)**

the assertion that Officer Ontiveros selectively enforced the drunk driving laws on any impermissible ground. *See Woodard v. Andrus,* 419 F.3d 348, 354 (5th Cir.2005).

As such, Plaintiffs equal protection claim against the City must fail. If there is no constitutional injury at the hands of the police, then the question whether any departmental policies or customs might have authorized the conduct is moot. *See Los Angeles v. Heller,* 475 U.S. at 799, 106 S.Ct. at 1573. Plaintiffs' equal protection claim against the City is hereby DISMISSED WITH PREJUDICE.

## IV. Conclusions

Plaintiffs have failed to allege facts sufficient to support their claims against the City. For the reasons stated above, the City's Motion to Dismiss for Failure to State a Claim is GRANTED. All of Plaintiffs' claims against the City are DISMISSED WITH PREJUDICE. A Final Judgment will be issued contemporaneously with this Order. Each Party is to bear its own taxable costs, expenses, and attorneys' fees incurred herein to date.

IT IS SO ORDERED.

S.D.Tex.,2006.
Cravens v. City of La Marque, Tex.
Not Reported in F.Supp.2d, 2006 WL 492805 (S.D.Tex.)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d                                                                                                          Page 1
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
**(Cite as: Not Reported in F.Supp.2d)**

Jackson v. Henderson, et al.



Not Reported in F.Supp.2d                                                                                        Page 1
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
**(Cite as: Not Reported in F.Supp.2d)**

Jackson v. Henderson
M.D.Tenn.,2006.
Only the Westlaw citation is currently available.
United States District Court,M.D.
Tennessee,Nashville Division.
Michael A. JACKSON, Plaintiff,
v.
Denise HENDERSON, et al., Defendants.
**No. 3:05-0677.**

Aug. 31, 2006.

Michael A. Jackson, Sr., Clarksville, TN, pro se.
Daniel Mark Nolan, Batson, Nolan, Brice, Williamson & Girsky, Clarksville, TN, for Defendants.

ROBERT L. ECHOLS, District Judge.
**\*1** Pending before the Court are two Reports and Recommendations ("R & R") filed by the Magistrate Judge. In the first R & R (Docket Entry No. 40), the Magistrate Judge recommends granting the Motion to Dismiss filed by Defendants Darrell Denton, Wayne Shelton and Montgomery County, Tennessee. Plaintiff Michael A. Jackson has filed objections to that R & R (Docket Entry No. 43). In the second R & R (Docket Entry No. 42) the Magistrate Judge recommends that Defendant Denise Henderson be dismissed for Plaintiff's failure to effectuate service. Plaintiff has filed no objections to that R & R.

When a party makes timely objections to a Report and Recommendation, the Court "shall make a *de novo* determination of the matter and may conduct a new hearing, take additional evidence, recall witnesses, recommit the matter to the Magistrate Judge for further proceedings and consideration, conduct conferences with counsel for the affected parties, and receive additional arguments, either oral or written, as the District Judge may desire."L.R.M. J. 9(b)(3). Where no objections are made to the R & R, "[t]he district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions."Fed.R.Civ.P. 72(b).

## A. *Facts*

The relevant facts are adequately and accurately set forth in the R & R. For present purposes those facts may be summarized as follows.

On May 11, 2005, Plaintiff's minor daughter was beaten in and about the face and head by a juvenile female whose legal guardian is Defendant Denise Henderson ("Henderson"). Plaintiff's daughter was taken by ambulance to the hospital and police investigated the assault. The following day, Plaintiff filed a report with the Clarksville Police Department attempting to have the assailant charged as an adult because of the aggravated nature of the assault. Detective Parrish, the investigating police officer, told the Plaintiff that the juvenile had been charged and that a hearing would be held on August 8, 2005.

On the appointed day for the hearing, Plaintiff and his family appeared at juvenile court, only to learn that the matter had been adjudicated on July 11, 2005, by Juvenile Court Judge Wayne Shelton ("Judge Shelton"). Defendant Darrell Denton ("Denton"), a juvenile probation officer, was summoned and he explained that the matter "had been taken care of" by Judge Shelton and him and that the juvenile had returned to Mississippi on the day of the hearing. Plaintiff's wife then indicated the juvenile was not in Mississippi since she had recently seen the juvenile at a Wal-Mart in Clarksville given for response. Denton tried to call the telephone number he was the juvenile's home in Mississippi, but received no Denton began to inquire of Plaintiff's daughter about the events that occurred on May 11, 2005, but was told by Plaintiff that "the conversation was over" since "they deprive[d] us of our constitutional rights and settled the matter without notifying us."(Complaint ¶ 14).

**\*2** Based on these events, Plaintiff, pro se, filed this action pursuant to 42 U.S.C. § 1983 against Henderson, Denton and Judge Shelton.[FN1]Plaintiff alleges due process violations under the Fourteenth Amendment because he was not notified of the rescheduled hearing.

FN1. Plaintiff also sued the "State of Tennessee Department of Children's

Services."That Defendant has previously been dismissed by Order of this Court (Docket Entry No. 41).

In the R & R, the Magistrate Judge recommends dismissal because, inter alia, (1) Plaintiff cannot show that Defendants had any duty to notify him of the change in the hearing date such that the failure violated Plaintiff's constitutional rights; (2) Judge Shelton is entitled to judicial immunity; (3) Defendant Denton is entitled to qualified immunity; and (4) even if Montgomery County failed to properly train its employees there is no liability against it or any its officials because Plaintiff cannot show an affirmative duty to notify the guardians of juvenile victims about the scheduling or rescheduling of juvenile hearings.

### B. *Analysis of Plaintiff's Objections*

Plaintiff first objects to the R & R by arguing that, as a parent, he has standing to file suit as a guardian of his minor daughter. While the Magistrate Judge noted the Defendants' argument that Plaintiff had no standing, the lack of standing was not a reason for the Magistrate Judge's recommendation that this suit be dismissed. Accordingly this objection will be overruled.

Plaintiff next asserts the Magistrate Judge erred in failing to recognize an affirmative duty of notification and, as a basis for that duty, Plaintiff points to T.C.A. § 40-38-110. That statute, which is part of Tennessee's Victims' Bill of Rights, provides that, among other things, "a victim of crime has the right to be informed of ... (1) cancelled/rescheduled hearings."T.C.A. § 40-38-108. Tellingly, that statutory provision does not identify the party responsible for informing the victim of changed hearings and most certainly does not designate the juvenile probation officer or Juvenile Court Judge as the information officer regarding hearings. Moreover, the deprivation of any right established by the Victims' Bill of Rights, does not entitle the victim to file a suit for damages. Quite the contrary, the statute provides:
Failure to comply with any provision of this part shall not create a cause of action or claim for damages against the state, a political subdivision of the state, a government employee or other official or entity, and no such cause of action shall be maintained.

T.C.A. § 40-38-108.

The existence of the Victims' Bill of Rights does not translate into a due process right under the United States Constitution. "What the Due Process Clauses of the Fifth and Fourteenth Amendments protects is 'life, liberty, [and] property,' U.S. Const. amends. V & XIV, § § 1, not the procedures designed to protect life, liberty, and property."*Montgomery v. Carter County, Tennessee,* 226 F.3d 758, 768 (6th Cir.2000). While Plaintiff did not receive the process he believes he was due under the Victims' Bill of Rights, "[p]rocess is not an end in itself."*Olim v. Wakinekona,* 461 U.S. 238, 250 (1982).

**\*3** In this regard, the decision in *Dix v. County of Shasta,* 963 F.2d 1296 (9th Cir.1992), *abrogated on other grounds, Sandlin v. Conner,* 515 U.S. 472 (1995) is instructive. In that case, plaintiff, the victim of a criminal assault, brought a section 1983 action against state and local officials claiming that they failed to discharge their responsibility under California's version of a **Victim'sBill** of **Rights** when a court reduced his assailant's sentence without notice to, or input from, plaintiff. The Ninth Circuit affirmed dismissal of the complaint noting that while states may permit sentencing authorities to consider the crime's impact on the victim, this does not mean states were "constitutionally *required* to give crime victims the right to become involved in the prosecution and sentencing of a criminal defendant."*Id.* at 1298 (emphasis added). The Ninth Circuit also held that the Bill of Rights did not grant crime victims an interest palpable enough to be enforced in federal courts as a matter of **dueprocess**. *Id.* at 1299-1300.

Likewise in this case, while the Tennessee Victims' Bill of Rights provides a procedure for crime victims to participate in prosecution of the accused, this does not mean that the Bill of Rights provides a right to that participation which is protected under the federal constitution. This is most notably so given that the statute itself provides no cause of action for its violation. This objection will be overruled.

Plaintiff next objects to the Magistrate Judge's suggestion that Judge Shelton is entitled to absolute judicial immunity. In this regard, Plaintiff writes:
Defendant Shelton acted beyond his scope of jurisdiction and adjudicated a case in which he knew the victim, Plaintiff's daughter[,] had to seek medical

treatment for the violent aggravated assault she underwent at the attack by [the juvenile perpetrator]. Judge Shelton also knew money wasn't coming out of Lakeshia Henderson's pocket nor out of his, thus his ruling took property out of Plaintiff's Michael A. Jackson, Sr., pocket, thus depriving the Plaintiff of his property without jurisdiction **(complete absence of all jurisdiction)** over Plaintiff Jackson and denying him due process.

(Docket Entry No. 43 at 4)(emphasis in original).

Judges are generally entitled to absolute judicial immunity from suits for money damages. *Mireles v. Waco,* 502 U.S. 9, 11 (1991) (per curiam). Judicial immunity is overcome only in two sets of circumstances: "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11-12.

In this case, there is no allegation that Judge Shelton was without jurisdiction to adjudicate the delinquency of the juvenile perpetrator or determine her fate. *See, Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994) (issuance of an Order is a judicial act). While the Judge may not have taken into account Plaintiff's desire for restitution, this does not mean that the action he did take (which apparently adjudicated the case against the juvenile perpetrator without ordering restitution for medical payments) was outside the scope of his jurisdiction. As for Plaintiff's argument that Judge Shelton had no authority over him, the argument fails because there is no suggestion that Judge Shelton acted, judicially or otherwise, in regard to Plaintiff. This objection will be overruled.

**\*4** Finally, Plaintiff objects stating "Defendant Denton is not entitled to quasi-judicial immunity because he is not an attorney, or a prosecutor; he is not sentencing, making rulings, etc."(Docket Entry No. 42 at 4). While that may be so, it is not grounds for an objection because the Magistrate Judge recommended that Denton be entitled to *qualified* immunity (Docket Entry No. 40 at 12). This recommendation was proper since government officials are generally entitled to qualified immunity so long as their conduct does not violate a clearly established right. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). As already indicated, there is no

showing that Denton had an affirmative duty to inform Plaintiff of the changed hearing date. Accordingly, this objection will be overruled.

The Magistrate Judge recommends that the claims against Defendant Henderson be dismissed because Plaintiff has failed to effectuate service on that Defendant. Plaintiff has lodged no objections to this R & R.

Plaintiff filed his Complaint on September 6, 2005 and to this date has not effected service on Defendant Henderson, even though he was granted extensions of time within which to do so. Plaintiff's failure to effectuate service led the Magistrate Judge to enter an order on June 14, 2005 (Docket Entry No. 39) requiring Plaintiff to serve that Defendant within thirty days or risk having that Defendant dismissed pursuant to Rules 4(m) and 41(b) of the Federal Rules of Civil Procedure. When Plaintiff did not accomplish service as required, the Magistrate Judge entered the instant R & R. This Court accepts the Magistrate Judge's recommendation and Defendant Henderson will be dismissed for lack of service.

For the foregoing reasons, the Reports and Recommendations of the Magistrate Judge (Docket Entry Nos. 40 & 42) will be accepted and Plaintiff's Objections (Docket Entry No. 43) will be overruled. The Motion to Dismiss filed by Defendants Denton, Shelton and Montgomery County, Tennessee will be granted and Defendant Henderson will be dismissed for failure to effectuate service.

An appropriate Order will be entered.

M.D.Tenn.,2006.
Jackson v. Henderson
Not Reported in F.Supp.2d, 2006 WL 2559713 (M.D.Tenn.)

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
**(Cite as: Not Reported in F.Supp.2d)**

Jones v. Tozzi

Not Reported in F.Supp.2d                                                                                                      Page 1
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
**(Cite as: Not Reported in F.Supp.2d)**



Jones v. Tozzi
E.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. California.
Melvin JONES, Jr., Plaintiff,
v.
Michael A. TOZZI et al., Defendants.
**No. 1:05CV0148OWWDLB.**

Aug. 24, 2006.

Melvin Jones, Jr., Modesto, CA, pro se.
William Alan Krabbenhoft, California Attorney General's Office, Sacramento, CA, Leslie Frederick Jensen, II, Law Offices of Leslie F. Jensen, Modesto, CA, William Hadley Littlewood, Daniel Lawrence Wainwright, Fresno, CA, for Defendants.

MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

WANGER, J.

I.

**\*1** Before the court for decision is yet another round of potentially dispositive motions in this case. Defendant Hollenback moves to dismiss Plaintiff's fifth amended complaint, or, in the alternative, for summary judgment on all of Plaintiff's claims. (Doc. 235.)

II.

This case arises out of a child custody dispute between Plaintiff and Kea Chhay, the mother of Plaintiff's minor child. The case was first filed in Santa Clara Superior Court, but was later transferred to Stanislaus County. Additional factual background concerning the state proceedings is set forth in various memorandum opinions in this case and related cases.[FN1]

> FN1.See Jones v. California, 1:04-CV-065676; Jones v. Strangio, 1:04-CV-06567; and Jones v. Strangio, 1:05-CV-00410.

Plaintiff filed his initial complaint on February 3,

2005. (Doc. 1.) Then, prior to the filing of any responsive pleading by Defendant, Plaintiff filed a first amended complaint on March 3, 2005. (Doc. 7.) The first amended complaint named as defendants: Michael A. Tozzi, the Executive Officer of Stanislaus County Superior Court; Superior Court Judge Marie Sovey-Silveria; and attorneys Leslie Jensen and John Holenback.

Defendants Tozzi and Silveria moved to dismiss on March 9, 2005. (Doc. 8.) Plaintiff opposed this motion (Doc. 13, filed Mar. 14, 2005), and moved for default judgment against Defendants Jensen and Hollenback. (Doc. 14, filed Mar. 14, 2005.) Plaintiff then (improperly) filed an additional "counter motion" in opposition to Defendants Tozzi and Silveria's motion to dismiss, along with a motion to amend the complaint a second time. (Doc. 16, filed Mar. 24, 2005.) Four days later, on March 28, 2005, Plaintiff lodged yet another "second amended complaint" to "supercede" the second amended complaint that was attached to his motion for leave to amend. (Doc. 19, filed Mar. 28, 2005.)

On March 18, 2005, an order issued dismissing Plaintiff's related case, *Jones v. Strangio.*(See Doc. 72, 1:04-cv-06567.) In light of that dismissal, the district court ordered Plaintiff to show cause why *this* case should not be dismissed as well. (Doc. 18, filed Mar. 29, 2005.) Plaintiff responded to the order to show cause on April 20, 2005. (Doc. 29.) At the same time, Plaintiff filed yet another (third) proposed amended complaint intended to supercede the complaint lodged on March 28, 2005. (*See* Proposed "Second Amended Complaint" lodged Apr. 20, 2005.) This complaint contained numerous new allegations that Defendants made racially derogatory remarks to Plaintiff as part of a conspiracy to violate his constitutional rights in contravention of 42 U.S.C. § § 1981, 1985, and 1986.

A memorandum decision and order dated May 11, 2005 dismissed all claims against Defendants Tozzi and Silveria on immunity grounds, denied Plaintiff's motion for default judgment against Defendants Jensen and Hollenback, and denied Plaintiff's motion for leave to amend the complaint a second time. (Doc. 47.)

On June 22, 2005, Defendants Jensen and Hollenback's motion to dismiss was granted, affording Plaintiff one final opportunity to amend the complaint. (Doc. 61.) A separate memorandum

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
(Cite as: Not Reported in F.Supp.2d)

decision, dated June 29, 2005, denied Plaintiff's April 9, 2005 motion for sanctions. (Doc. 65.) On July 6, 2005, Plaintiff voluntarily dismissed Defendant Jensen from the case. (Doc. 66.) Plaintiff then filed a second amended complaint alleging that Defendant Hollenback directed racially derogatory remarks to Plaintiff with the goal of deterring Plaintiff's participation in legal proceedings related to Plaintiff's family law case. (*See* Doc. 67, filed July 6, 2005.)

**\*2** Defendant Hollenback moved to dismiss the second amended complaint on a variety of grounds. (Doc. 78, filed Sept. 8, 2005.) Defendant Hollenback also moved for sanctions, alleging that Plaintiff made false statements in his amended complaint. (Doc. 91, filed Sept. 27, 2005.) Both motions were denied. (Doc. 103.)

*Plaintiff* filed a motion for summary judgment. (Doc. 104, filed Oct. 31, 2005.) Defendant failed to timely file an opposition. The court then issued a warning to Defendant about a litigant's obligation to file an opposition or statement of non-opposition at least fourteen days prior to the hearing pursuant to Local Rule 78-230(c). (Doc. 118.) Defendant filed a proposed opposition along with a request for leave to late-file the opposition. (Doc. 120, filed Dec. 5, 2005.) Plaintiff objected to granting Defendant leave to file this opposition and submitted that he is entitled to judgment as a matter of law. (Docs. 115, 116, 119, 128 & 129.) Plaintiff continued to insist on a speedy trial.

A hearing on the motion for summary judgment was held December 12, 2005. The district court granted Defendant's request to late file-his opposition and denied Plaintiff's motion for summary judgment, but granted Plaintiff's motion for leave to amend the complaint to add state law claims. (Doc. 185, filed February 15, 2006.)

Plaintiff filed his second amended complaint on February 8, 2006 (Doc. 182.), alleging that Defendant Hollenback became involved with Plaintiff's family law dispute in December 2003 as counsel for Ms. Chhay. (Doc. 67 at ¶ 44.) Plaintiff filed contempt charges against Ms. Chhay in early 2004 to enforce a court order. (*Id.* at ¶ 45.)Plaintiff alleges that on April 22, 2004, Defendant Hollenback told Plaintiff that he "called the Stanislaus County Housing Authority and told them what a lazy low-life black piece of shit you are ... you

get nigger justice."(*Id.* at ¶ 47.)Plaintiff also alleges that "after the child support trial and out of court" Defendant Hollenback stated that "he would knock the teeth out of his black greasy face ... and rattle them out of his jive-monkey ass if he showed up for the contempt hearings."(*Id.* at ¶ 48.)Plaintiff asserts that "as a direct and proximate cause of the defendant's threats, [he] withdrew [the] contempt charges...."(*Id.* at ¶ 51.)The complaint further alleges that the statute of limitations on the contempt charges expired in July 2004. (*Id.* at ¶ 54.)As a result, "Mr. Jones's access to the judicial system was deprived."(*Id.*)

The second amended complaint alleged that Defendant's alleged conduct deprived Plaintiff of his civil rights in violation of 42 U.S.C. § 1981 and also included included a number of state law claims (Slander Per Se, Intentional Interference with Contractual Relations, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress). Plaintiff included Leslie Jensen as a defendant in many of the claims in the second amended complaint, without first obtaining leave to reinstate Leslie Jensen as a defendant.

**\*3** Plaintiff at one point presented an affidavit from his mother, Rosalind Jones. (Doc. 108.) Ms. Jones's statements in the affidavit corroborate Plaintiff's accusations that Hollenback made racially derogatory statements to Plaintiff. (*Id.* at 3.) Defendant sought to conduct further discovery regarding Ms. Jones' statements. Throughout December 2005 and January 2006, the parties engaged in formal discovery disputes over the method, timing, and circumstances of any such discovery. As is the normal practice in this district, these discovery disputes were heard before a United States Magistrate Judge, in this case, the assigned Magistrate Judge, Dennis L. Beck. After a hearing on February 3, 2006, Judge Beck issued an order denying Plaintiff's motion for a protective order and granting Defendant's motion to compel Ms. Jones to participate in an oral deposition. (Doc. 181, filed February 8, 2006.) Shortly after the adverse ruling, Plaintiff moved to recuse Judge Beck from participating in this case. (*See* Doc. 179.)

A few weeks after filing his second amended complaint, Plaintiff moved yet again for leave to amend, again alleging federal and state law claims against both Hollenback and Jensen. (*See* Doc. 190, third amended complaint, filed Feb. 22, 2006.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
**(Cite as: Not Reported in F.Supp.2d)**

Defendant Hollenback moved to dismiss all the claims in the second amended complaint (Docs. 191 & 2), and Defendant Jensen objected to being reinstated as a defendant after her dismissal. (Doc. 209.) Both Defendants moved to strike all of the state law claims pursuant to California's anti-slapp statute. (Docs 194 & 197.) Plaintiff opposed the motions to dismiss and to strike, and asserted his own anti-slapp motion to strike. A memorandum decision and order dated June 2, 2006(1) denied Plaintiff's motion for leave to file his third amended complaint; (2) granted Defendant Jensen's motion to strike her as a defendant in the operative second amended complaint; (3) granted Defendant Hollenback's motion to dismiss all the claims in the case (federal and state); and (4) and denied as moot the motions to strike. (Doc. 228.) Plaintiff was given "one *final* opportunity to frame a complaint under 42 U.S.C. § 1985 and 1986."(*Id.*)

Plaintiff filed his fifth amended complaint ("FAC") on June 13, 2006, which is summarized above. (Doc. 230.) Plaintiff then moved to set a scheduling conference and set that motion for hearing on July 17, 2006. (Doc. 19, 2006.) Subsequently, Defendant Hollenback moved to dismiss the FAC on numerous grounds or, in the alternative, for summary judgment. (Doc. 234, filed June 29, 2006.) Plaintiff opposes the motion to dismiss, arguing that he has satisfied the pleading requirements. Plaintiff also opposes summary judgment with his own affidavits, but he requests that decision on the motion for summary judgment be delayed until he has had an opportunity to conduct discovery. No party clearly explains the extent of discovery that has taken place thus far, although the record appears to indicate that Plaintiff has at least served some requests for admissions on Defendant HOllenback. Plaintiff represented during oral argument that in the one and one-half years this case has been pending he has not yet taken adequate discovery because (1) he only recently advanced the specific legal theory upon which his claims now rest and (2) he lacks the financial capacity to pursue certain forms of discovery. (*See* Doc. 243, Ex. D.)

III.

**\*4** Plaintiff's FAC appears to allege that Defendant Hollenback participated in four separate conspiracies, along with various other individuals, to deprive Plaintiff of his civil rights in violation of 42 U.S.C. § § 1985 and 1986. Three of the alleged conspiracies are at least tangentially related to Plaintiff's efforts to litigate in state court (the "state court conspiracies"); the fourth is distinct, in that it alleges a conspiracy to impede access to federal court (the "federal court conspiracy").

First, Plaintiff describes an alleged conspiracy between Hollenback and Leslie Jensen. (FAC, ¶ ¶ 45-58.) It is not easy to determine the nature of the alleged conspiracy from the text of the complaint, but it appears that Plaintiff is asserting that, together, Jensen and Hollenback through threats and intimidation: (a) impeded Plaintiff's access to state court, (b) impeded his ability to pursue his rights under the custody order issued by the Stanislaus Court, and (c) impeded his ability to apply for employment with the Stanislaus County Housing Authority. Specifically, Plaintiff alleges that Hollenback told Plaintiff that "[Hollenback] called the Stanislaus County Housing Authority," where plaintiff had recently applied for employment "and told them what a lazy low life black piece of shit [Plaintiff is]" and exclaimed "you get nigger justice." (FAC at ¶   47.) Plaintiff further alleges that Hollenback threatened that "he would knock the teeth out of his black greasy face ... and rattle them out of his jive-monkey ass if he showed up for the contempt hearings."(*Id.*) Separately, Plaintiff alleges that Ms. Jensen threatened that Plaintiff would "get his black ass kicked if he continued to make trouble for the court and if Plaintiff continued with the contempt proceedings."(*Id.*) Plaintiff alleges that there is circumstantial evidence that Hollenback and Jensen conspired with one another to intimidate him. Specifically, Plaintiff notes that Hollenback and Jensen have been colleagues practicing before the Stanislaus Superior Court for many years. Plaintiff also alleges that Hollenback and Jensen contracted with one another to cover each other's court appearances.

Next, Plaintiff alleges that Hollenback conspired with state courtroom bailiff Jane Doe. (*Id.* at ¶ 52.)Specifically, Plaintiff asserts that he heard Hollenback tell the bailiff that Plaintiff was a "low life black." The bailiff apparently became agitated as a result. However, Jones asserts that he continued with his scheduled hearing after reassuring the bailiff that he was "not a low life black."

In the final purported state court conspiracy, Plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

names as co-conspirators various individuals who were previously named as Defendants in this case. He alleges that Michael Tozzi (the Executive Officer of the Stanislaus County Superior Court), Steven Carmichael (the Court appointed Evaluator), Don Strangio (the Court appointed Family Law Mediator), Ms. Jensen, the "Jane Doe" bailiff from the April 22, 2004 hearing, and Marie Sovey-Silveria (the Family Law Judge who issued the December 10, 2002 cusody order), agreed to deprive Plaintiff of the opportunity to access state court and to pursue his rights under a custody order entered by the Stanislaus court. Plaintiff also alleges a separate conspiracy involving all of these individuals to retaliate against him. Plaintiff alleges that Tozzi, Silveria, Strangio, and Carmichael all conspired to aid in planning this conspiracy and in concealing the existence of the conspiracy. (*Id.* at ¶ 81.)More specifically, Plaintiff alleges (a) that Carmichael acted in furtherance of the conspiracy when he commented that Whites and Asians are "better at education than Blacks;" and (b) that Tozzi contributed to the conspiracy by failing to comply with a subpoena sent to him by Plaintiff. No specific factual allegations are made with regard to Silveria or Strangio.[FN2]

FN2. Plaintiff reiterates essentially the same fact pattern in support of a separate conspiracy between Hollenback, Tozzi, Strangio, Carmichael, Jensen, and Silveria, to "impede his access to petition the state court," and notes that the right to petition is one aspect of an individuals First Amendment right to free speech. (*Id.* at 84-91.)It appears that Plaintiff is attempting to articulate several different theories of liability for the same conduct.

**\*5** Finally, Plaintiff describes a conspiracy between Hollenback, Leslie Jensen, and Lonnie Ashlock to impede Plaintiff's ability to access federal court. (*Id.* at 59-68.)Apparently, Plaintiff and Lonnie Ashlock were parties to several real estate agreements, including a rental agreement and an agreement pursuant to which Plaintiff sold a house to Ashlock. Leslie Jensen admits that she has served as Lonnie Ashlock's attorney on many occasions. Plaintiff asserts that Mr. Ashlock threatened Plaintiff that if Plaintiff did not drop his litigation against Jensen he would "not pay him one cent" pursuant to the house sale. Plaintiff was later evicted from his

residence and now asserts that this eviction was in retaliation for Plaintiff's legal actions and in furtherance of the "conspiracy." Plaintiff claims that Ms. Jensen made misrepresentations to the Court in an effort to "conceal" this perceived "conspiracy." The Complaint does not clearly explain how Hollenback was involved in this conspiracy and the only stated explanation of Hollenback's wrongful conduct was "his apparent silence" about the alleged "conspiracy." (*Id.* at ¶ 67.)

### IV.

#### A. *Motion to Dismiss.*

In deciding whether to grant a motion to dismiss, a court must "take all of the allegations of material fact stated in the complaint as true and construe them in the light most favorable to the nonmoving party." *Rodriguez v. Panayiotou,* 314 F.3d 979, 983 (9th Cir.2002). In general, "a *pro se* complaint will be liberally construed and will be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir.1992). However, "a liberal interpretation of a [pro se] complaint may not supply essential elements of the claim that were not initially pled." *Id.*

#### B. *Motion for Summary Judgment*

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Fed. R. Civ. Pro. 56(c); California v. Campbell,* 138 F.3d 772, 780 (9th Cir.1998). Therefore, to defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material. *Id.* A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir.1995); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252-56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence must be viewed in

a light most favorable to the nonmoving party. *Indiana Lumbermens Mut. Ins. Co. v. West Oregon Wood Products, Inc.,* 268 F.3d 639, 644 (9th Cir.2001), *amended by* 2001 WL 1490998 (9th Cir.2001). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell,* 138 F.3d at 782 (quoting *Liberty Lobby, Inc.,* 477 U.S. at 248).

**\*6** The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir.2001). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102-03 (9th Cir.2000). However, if the nonmoving party has the burden of proof at trial, the moving party must only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden of proof, the non-moving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *Triton Energy Corp.,* 68 F.3d at 1221. The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *Devereaux,* 263 F.3d at 1076. [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23.

"In order to show that a genuine issue of material fact exists, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Rivera v. AMTRAK,* 331 F.3d 1074, 1078 (9th Cir.2003) (quoting *Liberty Lobby, Inc.,* 477 U.S. at 249). If the moving party can meet his burden of production, the non-moving party "must produce evidence in response.... [H]e cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med., Inc.,* 343 F.3d 1107, 1112 (9th Cir.2003)."Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera,* 331 F.3d at 1078 (citing *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 922 (9th Cir.2001)).

The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment. *See United States ex rel. Anderson v. N. Telecom, Inc.,* 52 F.3d 810, 815 (9th Cir.1996). Nevertheless, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Liberty Lobby, Inc.,* 477 U.S. at 255. A court's role on summary judgment is not to weigh evidence or resolve issues; rather, it is to find genuine factual issues. *See Abdul-Jabbar v. G.M. Corp.,* 85 F.3d 407, 410 (9th Cir.1996).

V.

A. *Legal Background.*

**\*7** Plaintiff alleges that the various conspiracies described in the complaint violate provisions of 42 U.S.C. § 1985 as well as 42 U.S.C. § 1986.

Section 1985 prohibits several forms of conspiracies to deprive individuals of the rights and privileges held by a citizen of the United States. The provision states in its entirety:

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
**(Cite as: Not Reported in F.Supp.2d)**

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**\*8** Sub-section 1985(1), which deals with conspiracies to impede federal officials in the performance of their official duties is not implicated by Plaintiff's complaint.

Plaintiff does allege claims under both clauses of § 1985(2). Plaintiff alleges that the first clause of § 1985(2) which concerns conspiracies to obstruct justice in the federal courts, was violated by the purported threats made by Jensen through Lonnie Ashlock. The First Clause of § 1985(2) makes it unlawful:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified ...

42 U.S.C. § 1985(2). To ultimately prevail on such a claim, a Plaintiff must demonstrate the existence of (1) a conspiracy, (2) to deter testimony in a federal court by force or intimidation, and (3) injury to the plaintiff. *Brever v. Rockwell Intern. Corp.,* 40 F.3d 1119, 1126 (10th Cir.1994).

Plaintiff alleges that several of the other purported conspiracies constitute violations of the second clause of § 1985(2), which applies to conspiracies to obstruct the due course of justice in any State. Specifically, § 1985(2) makes it unlawful for:

two or more persons [to] conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

The clause is actually divided into two separate sub-clauses, the first applying to conspiracies to impede the due course of justice in any state with the intent to deny to any citizen the equal protection of the laws, the second applies to conspiracies to injure a person for enforcing, or attempting to enforce, the right of any person to the equal protection of the laws. To prove a claim under either sub-clause, a plaintiff must demonstrate racial animus. *Bretz v.*

Case 1:07-cv-00021    Document 15    Filed 11/05/2007    Page 36 of 43

Not Reported in F.Supp.2d                                                    Page 7
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
**(Cite as: Not Reported in F.Supp.2d)**

*Kelman,* 773 F.2d 1026 (9th Cir.1985). Therefore, to ultimately prevail on such a claim, Plaintiff must establish(1) a conspiracy,
(2) motivated by race or class-based animus,
(3) either to
(a) impede, hinder, obstruct, or defeat, the due course of justice in any state, with the intent to deny any citizen the equal protection of the laws.
(b) to injure a citizen for enforcing or attempting to enforce the right of any citizen to the equal protection of the laws.


Plaintiff's complaint also purports to state claims under § 1985(3), entitled "depriving persons of rights or privileges."Section 1985(3) is divided into three parts. The first part prohibits conspiracies to deprive "any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."42 U.S.C. § 1985(3).[FN3] The second part prohibits conspiracies to interfere with federal elections, *see generally*Bretz, 773 F.2d at 1028 n. 3, and is not implicated in this case. The third clause provides a cause of action in federal court for the victim of conspiracies prohibited by § 1985(3).


> FN3. The first clause of § 1985(3) provides:
> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws....

**\*9** As is the case with the second clause of § 1985(2), to state a claim under the first part of § 1985(3) (conspiracies to deprive an individual of equal protection of the laws or equal privileges and immunities), plaintiff must show "discriminatory animus." In other words, Plaintiff must allege that the conspiracy was motivated by racial discrimination. *Griffen v. Breckenridge,* 403 U.S. 88, 101-102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see also* Kush v. Rutledge, 460 U.S. 719, 725, 103

S.Ct. 1483, 75 L.Ed.2d 413 (1983). In addition, Plaintiff must allege (1) a conspiracy, (2) to deprive any person (or class of persons) of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act performed by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage, or a deprivation of any right or privilege of a citizen of the United States. *Griffen,* 403 U.S. at 102-103.

Finally, Plaintiff alleges that Hollenback's conduct also violated 42 U.S.C. § 1986, which establishes a private right of action for damages against a person who knowingly failed to prevent a § 1986 conspiracy. To prevail on a Section 1986 claim Plaintiff must show that: "(1) the defendant had actual knowledge of a § 1985 conspiracy; (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation; (3) the defendant neglected or refused to prevent a § 1985 conspiracy; and (4) a wrongful act was permitted."*Clark v. Clabaugh,* 20 F.3d 1290, 1295 (3d Cir.1994). A successful § 1986 claim depends on "proof of actual knowledge by a defendant of the wrongful conduct."*Brandon v. Lotter,* 157 F.3d 537, 539 (8th Cir.1998). If Plaintiff fails to state a claim under § 1985, there can be no liability under § 1986. *Dacey v. Dorsey,* 568 F.2d 275, 277 (2d Cir.1977).


### B. *Motion to Dismiss the § 1985 and § 1986 Claims.*

Defendant Hollenback moves to dismiss the claims in the FAC on a variety of grounds. As a threshold matter, Defendant argues that all of the claims are barred by the statute of limitations. Defendant also maintains that Plaintiff has still not complied with the Ninth Circuit's heightened pleadings standard for conspiracy claims. In the alternative, assuming Plaintiff's claims satisfy the heightened pleading standard, Defendant argues that the none of the allegations state a valid claim under the federal civil rights statutes.


#### 1. Statute of Limitations.

##### a. *Section 1985 Claim.*

Federal courts in California apply California's statue of limitations for personal injury actions to claims brought under § 1985. *See* *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *McDougal v. County of Imperial,* 942 F.2d 668, 670 (9th Cir.1991)(applying California's personal injury limitations period to claims brought under § 1983 and § 1985). The personal injury statute of limitations in California is two years.Cal.Code Civ. Pro. § 335.1.[FN4]Federal law determines the date on which the limitations period begins to run. *Cline v. Brusett,* 661 F.2d 108, 110 (9th Cir.1981).

> **FN4.** Prior to January 1, 2003, California's personal injury statute of limitations was one year. Defendant does not dispute that it is the two year limitations period that applies in this case, as the bulk of the allegedly wrongful conduct occurred after January 1, 2003.

**\*10** In this case, Plaintiff's FAC, filed on June 13, 2006, alleges conduct beginning in 2002 and ranging to the end of 2005. The nature of the alleged conduct can be broken down into two categories. First, there is conduct pertaining to the conspiracies allegedly aimed at interfering with Plaintiff's access to the state judicial system and to employment with the Stanislaus Housing Authority. The latest specific date contained within the Complaint regarding these conspiracies appears to be April 22, 2004, the date on which it is alleged that Defendant Hollenback made various derogatory threats to Plaintiff and similar derogatory remarks concerning Plaintiff to bailiff Jane Doe at the conclusion of a hearing in state court. Second, the complaint alleges conduct related to the alleged conspiracy to impede Plaintiff's access to this court. The latest date mentioned in this context is December 2005, when "Ashlock refused to honor his agreement with Mr. Jones relating to $27,000 owed to Mr. Jones."(FAC at 67.)

As to the federal court conspiracy, as alleged, the statute of limitations does not expire until December 2007. That claim was timely filed. The earlier conspiracy, however, requires a closer examination of the limitations issue. The Ninth Circuit generally applies the "last overt act" test in determining when a cause of action for conspiracy to deny civil rights accrues.[FN5]*See* *Venegas v. Wagner,* 704 F.2d 1144, 1146 (9th Cir.1983). The "last overt act" test is an application of the general rule that a cause of action accrues when a plaintiff learns of the injury and its cause. *Id.* (claim based upon conspiracy to conduct an unconstitutional search accrues on the date of the search).

> **FN5.** The Ninth Circuit has departed from this approach in cases where the alleged conduct "taint[s] or distort[s] the integrity of the truth-finding process and thus den[ies] a fair trial."*Venegas,* 704 F.2d at 1146. In those cases, the primary injury "is the wrongful conviction and resulting incarceration," and, as such, the claim does not accrue until the individual is incarcerated. *Id.*

Here, with respect to the earlier conspiracy to impede access to state court and to employment opportunities, the last date mentioned in the complaint that is arguably an allegation of an overt act was April 22, 2004. On that date Plaintiff was aware of his injury and of its cause. Accordingly, the limitations period on that claim would have expired on April 22, 2006. Unless Plaintiff's June 13, 2006 FAC relates back to an earlier complaint, the claims may be time-barred.

Defendant asserts that the FAC should not relate back "to one of the numerous Complaints filed in this case, all of which raised different theories of liability (§ 1983, § 1981, and state torts) from what is now alleged (§ 1985 and § 1986)." (Doc. 245 at 8.) But, Defendant misunderstands the relation-back test as it is applied in the federal system. Relation back is governed by Federal Rule of Civil Procedure 15(c), which provides:

An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) *the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading,* or

**\*11** (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

(emphasis added). Here, the issue is not whether the particular statutory basis now asserted was previously raised. Rather, the question is whether "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."Fed. R. Civ. Pro. 15(c)(2).

Even a cursory review of the record reveals that earlier-filed complaints alleged the same course of conduct now alleged to be in furtherance of a conspiracy between Hollenback, Jensen, and various other Stanislaus county officials. Plaintiff's initial complaint, filed on February 3, 2005, mentions threats made by Defendant Hollenback against Plaintiff in connection with a January 22, 2004 hearing and alleges that Hollenback unduly interfered with Plaintiff's job search in a harassing manner on March 29, 2004. (Doc. 1 at ¶¶ 27 & 32.) Similar allegations are made in Plaintiff's first amended complaint, filed March 3, 2005. (Doc. 7 at ¶¶ 27 & 32.) Both these early complaints mention the existence of a "conspiracy" involving Hollenbeck. The numerous complaints filed (properly and improperly) thereafter were arguably part of Plaintiff's ongoing efforts to comply with federal pleading requirements by elaborating upon the alleged conduct and identifying the proper legal basis for his claims. The claims now asserted arose out of the conduct alleged in these two timely-filed complaints.

The motion to dismiss on statute of limitations grounds is DENIED. The most recent amended complaint relates back to the February 3, 2005 complaint

### b. *1986 Claim.*

Plaintiff's 1986 claims require a different statute of limitations analysis.Section 1986 specifically provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."As discussed, Plaintiff's allegations

regarding the federal court conspiracy date to December 2005. Any § 1986 claim based upon that conspiracy would not expire until December 2006. However, the allegations regarding the conspiracy between Hollenback, Jensen, and other Stanislaus Officials, accrued at the latest, on April 22, 2004. Based on this date, the one year § 1986 statue of limitations expired on April 22, 2005, absent relation-back. Plaintiff's initial complaint, filed on February 3, 2005, describes threats made by Defendant Hollenback against Plaintiff in connection with a January 22, 2004 hearing and alleged that Hollenback unduly interfered with Plaintiff's job search in a racially harassing manner on March 29, 2004. (Doc. 1, paras. 27 & 32.) This complaint precedes the expiration of the § 1986 limitations period. The motion to dismiss this claim on limitations grounds is DENIED.

### 2. Has Plaintiff Properly Pled His Conspiracy Claims?

**\*12** Defendant argues that Plaintiff's claims should be dismissed both because he has failed to plead all of the elements of the claims asserted and because he has failed to satisfy the heightened pleading standard for conspiracy claims applied in the Ninth Circuit.

As a threshold matter, Defendant again exhibits a misunderstanding of the pleading requirements in federal court. In the portion of Defendant's motion that requests dismissal for failure to state a claim, defendant repeatedly cites to legal standards that set forth the *burden of proof that is required on summary judgment or at trial.*For example, with respect to Plaintiff's federal court conspiracy claim, Defendant cites *Rutledge v. Arizona Bd. of Regents,* 859 F.2d 732, 735 (9th Cir.1988). But, *Rutledge* was decided on summary judgment. The language cited by Defendant from that case is the Ninth Circuit's articulation of the *standard of proof* that applies to claims on the merits, not the pleading standard that should apply on a motion to dismiss. Defendant again makes this mistake in his challenge to Plaintiff's state law conspiracy allegations, citing to *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), for a standard that applies on the merits, not at the pleading stage.

As a general rule, plaintiffs in federal court are not

required to plead the elements of a prima facie civil rights case. *See Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Plaintiffs are simply required to provide "a short and plain statement of the claim" to give the defendants fair notice of what the claim is and the grounds upon which it is based. *Id.* Although Plaintiff does not have to plead the elements of a prima facie case under section 1985, all of the claims set forth in the FAC are conspiracy allegations, which may be subject to a somewhat heightened pleading standard in the Ninth Circuit.

As a threshold matter, some of the cases cited by Defendant call into question the continued validity of the heightened pleading standard in conspiracy cases. Defendant cites *Branch v. Tunnell,* 14 F.3d 449, 452 (9th Cir.1994), which held that where evidence of unlawful intent is required to establish liability, allegations of facts must be "specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment."But, a close examination of *Branch* and its progeny reveals that *Branch* has been effectively overruled by*Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1126 (9th Cir.2002). In *Galbraith,* a three judge panel of the Ninth Circuit examined subsequent Supreme Court precedent, including *Swierkiewicz,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (disapproving of heightened pleading standards in civil rights cases brought under Title VII), found this precedent to be contrary to the en banc decision in *Branch,* and determined that *Branch* was no longer good law. *Galbraith* eliminated the heightened pleading requirement for improper motive in constitutional tort cases. 307 F.3d at 1125-26.

*13 Despite the holding in *Galbraith,* the Ninth Circuit appears to *still apply* a heightened pleading standard to conspiracy claims. This pleading standard was first clearly articulated in *Harris v. Broderick,* 126 F.3d 1189 (9th Cir.1989), which required a *Bivens* conspiracy claim to be "plead with particularity as to which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights ..."*Id.* at 1196.More recently, in 2004, two years after the decision in *Galbraith,* the Ninth Circuit *again* applied a heightened pleading standard to a claim for conspiracy to violate constitutional rights in *Olsen v. Idaho State Bd. of Medicine,* 363 F.3d 916, 929 (9th Cir.2004). But, both *Harris* and *Olsen*relied

*upon* Branch to support the application of the heightened standard, the very same case that the Ninth Circuit acknowledged had been overruled in *Galbraith.*Given *Galbraith's* holding, there is reason to question whether a heightened pleading standard applies. At the very least, *Galbraith* suggests the standard should be applied liberally. *Harris* confirms that the complaint should give defendants enough information about the alleged conspiracy to permit them to frame a response.[FN6]

FN6. The heightened pleading standard as applied to conspiracy cases does appear to still be good law in the Ninth Circuit, *see Olsen,* 363 F.3d at 929, even though other heightened pleading standards have been rejected, *see e.g. Galbraith,* 307 F.3d at 1125-26;*Swierkiewitz,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1. Although the *Olsen* court only dedicated one paragraph to the subject, *Olsen,* decided two years after *Galbraith,* is the law of the Ninth Circuit and the district court must follow it. *See Barapind v. Enomoto,* 400 F.3d 744, 750-51 (9th Cir.2005).

The Inquiry turns to whether Plaintiff has satisfied the somewhat heightened pleading standard of *Harris* with his Fifth Amended Complaint.

a. *First Clause of 1985(2)-Conspiracy to impede access to federal court.*

Plaintiff brings his federal court conspiracy claim under the first clause of § 1985(2), which pertains to conspiracies to obstruct justice in federal court proceedings. To summarize, that claim alleges that Jensen, through landlord Ashlock, used financial pressure to dissuade Plaintiff from pursuing his claims in federal court in this case.

*Harris* requires at a bare minimum that Plaintiff "plead with particularity as to which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights ..."*Id.* at 1196.(Even if Harris does not apply, Plaintiff must plead this claim in a manner that gives Defendant adequate notice of the nature of the claim against him.)

Here, *Plaintiff does not explain anywhere in his*

*complaint how Hollenback was involved in the federal court conspiracy.*The only stated explanation of Hollenback's wrongful conduct was "his apparent silence" about the alleged "conspiracy." (*Id.* at ¶ 67.)This is simply not enough to even put Defendant on notice of the nature of the claim being filed against him.

Any claims based upon the federal court conspiracy are DISMISSED WITH PREJUDICE. Plaintiff has been warned several times that he would be afforded no additional opportunities to amend.

    b. *Second Clause of 1985(2) Conspiracy to obstruct justice in state court; and 1985(3) conspiracy to deprive plaintiff of equal protection under the law.*

**\*14** Plaintiff has broken his alleged state court conspiracy down into numerous sub-conspiracies:
(1) First, Plaintiff alleges that Hollenback and Jensen conspired to, through the use of threats and intimidation (a) impede Plaintiff's access to state court, (b) impede his ability to pursue his rights under the custody order issued by the Stanislaus County Superior Court, and (c) impede his ability to apply for employment with the Stanislaus County Housing Authority.
(2) Next, Plaintiff alleges that Hollenback conspired with state courtroom bailiff Jane Doe; by telling the bailiff that Plaintiff was a "low life black;" and the bailiff apparently became agitated as a result. However, Jones asserts that he continued with his scheduled hearing after reassuring the bailiff that he was "not a low life black." This appears to be evidentiary information related to racial animus.
(3) Finally, Plaintiff describes a conspiracy between Hollenback, Tozzi, Carmichael, Strangio, Jensen, the "Jane Doe" bailiff, and Marie Sovey-Silveria to (a) deprive Plaintiff of the opportunity to access state court and (b) deprive Plaintiff of his right to pursue his rights under the custody order and (c) to deprive Plaintiff of his right to petition the courts. In addition, Plaintiff also alleges two additional conspiracies involving all of these individuals to retaliate against him and to aid in planning and concealing the existence of the conspiracy.

*Harris* requires that Plaintiff "plead with particularity as to which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights ..."*Id.* at

1196.With respect to several of the conspiracies alleged, it is not clear how Plaintiff was harmed. For example, the complaint does not allege how Plaintiff's job prospects were actually harmed by the purported threat made by Hollenback. Even more clearly, Plaintiff himself *admits* that he was not deterred and went forward with the hearing after Hollenback allegedly made racially derogatory remarks to the bailiff. It is not clear how either of these claims could stand alone as separately actionable conspiracy allegations. But, viewing the complaint liberally as is required, it appears that Plaintiff is attempting to describe pieces of a larger conspiracy to impede his access to state court, specifically to discourage him from pursuing contempt charges against Ms. Chhay.

Plaintiff specifically alleges that both Jensen and Hollenback threatened him, using racially derogatory language, not to proceed with his contempt charges. For example, he alleges that Jensen stated that she and Hollenback were going to "put [Plaintiff's] black ass down ... payback is going to be hell."Jensen also allegedly threatened that plaintiff "would get [his] black ass kicked if [he] continued to make trouble for the court and if [he] continued with the contempt proceedings."The FAC also alleges that Hollenback threatened Plaintiff that "he would knock the teeth out of my jive monkey ass if [Plaintiff] showed up for the [pending] contempt hearings."Plaintiff specifically alleges that he did in fact withdraw his contempt charges as a result of these threats.

**\*15** Plaintiff attempts to tie other co-conspirators into this conspiracy. For example, while Plaintiff's allegations of communications between Hollenback and bailiff Jane Doe (telling her Plaintiff was a "low life black") are not necessarily actionable in and of themselves because Plaintiff was not dissuaded from participating in the particular hearing where those statements were made, the event is arguably circumstantial evidence of a greater effort on Hollenback's part to intimidate Plaintiff. Hollenback's threats pertaining to Plaintiff's pending job application with the Stanislaus Housing Authority are also arguably circumstantial evidence of Hollenback's intent to intimidate him for racially discriminatory reasons. Similarly, Plaintiff's allegations that other co-conspirators made comments or took actions with "race-based overtones" during the course of various state proceedings are arguably circumstantial evidence tending to show the existence of a conspiracy.

There is no need for Plaintiff to separately allege multiple sub-conspiracies. This only confuses the central issue in this case: Whether there existed a conspiracy to dissuade Plaintiff from pursuing his rights in federal court through threats and intimidation. Plaintiff has sufficiently alleged the existence of such a conspiracy by alleging that (1) Hollenback and others made racially derogatory threats expressly aimed at dissuading him from participating in state court proceedings; and (2) he was influenced to and did withdraw from certain state court proceedings out of fear generated by these threats. There is also some circumstantial evidence tending to suggest that at least some of the named co-conspirators acted together to further the conspiracy. For example, Jensen made strikingly similar threats to Plaintiff, suggesting that there was a common plan in place. Whether any of these threats were actually made remains to be determined on summary judgment or at trial.

Defendant's 12(b)(6) motion to dismiss is DENIED with respect to the conspiracy claim based on the alleged threats to dissuade Plaintiff from participating in the contempt proceeding. All of the other, related conspiracy claims are DISMISSED because Plaintiff has failed to specifically state how the alleged conspiracies harmed him. But, subject to the Federal Rules of Evidence, all of these allegations can be utilized as circumstantial evidence in support of the remaining conspiracy claim.

C. *Motion for Summary Judgment.*

1. Should Plaintiff Be Permitted the Opportunity to Conduct Further Discovery?

Plaintiff asserts that a motion for summary judgment is improper at this point in the litigation and requests that a decision on the pending motion for summary judgment be delayed until he has had an opportunity to conduct additional discovery.

Federal Rule of Civil Procedure 56(f) provides that: Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or

depositions to be taken or discovery to be had or may make such other order as is just.

**\*16** This rule allows litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence. *United States v. Kitsap Physician Serv.,* 314 F.3d 995, 1000 (9th Cir.2002). Although 56(f) "may" disallow discovery where the nonmoving party has not submitted evidence supporting its opposition, the Supreme Court has restated the rule as requiring discovery "where the nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking additional discovery "bears the burden of showing that the evidence sought exists. Denial of a Rule 56(f) application is proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation." *Terrell v. Brewer,* 935 F.2d 1015, 1018 (9th Cir.1991). Here, Plaintiff stated at oral argument that he has not had an adequate opportunity to conduct discovery on his new legal theory, grounded in 42 U.S.C. § § 1985 and 1986, in part because he has not possessed adequate funds to conduct thorough discovery. Plaintiff asserts that he will attempt to secure counsel to assist him with the taking of depositions. Alternatively, he will propound further written discovery. Although this case has been pending for more than one and one-half years, much of this time has been spent litigating various challenges to the pleadings. Plaintiff will be afforded a short interval to conduct additional discovery. Plaintiff's discovery shall be completed within 45 days, commencing on August 14, 2006, the date of oral argument on the instant motions. No further extensions will be granted.

2. The Admissibility of Evidence Contained Within Plaintiff's Declaration.

Although the motion for summary judgment is being continued, one evidentiary objection is discussed here in an effort to clarify the law for the parties. Defendant objects to much, if not all, of the evidence submitted by Plaintiff in his affidavits. For example, Plaintiff asserts in his second affidavit that Jensen threatened him that "[he] would get [his] black ass kicked if [he] continued to make trouble for the court and if [he] continued with the contempt

proceedings."Defendant asserts that this, and all similar statements reflecting race-based threats, are inadmissible hearsay. In support of this hearsay objection, Defendant cites *Mahone v. Lehman,* 347 F.3d 1170, 1173 (9th Cir.2003) and *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 779 (9th Cir.2002).

In *Orr* the Ninth Circuit considered whether an extrajudicial statement could be offered as evidence that a particular document was submitted to the FDIC. 285 F.3d 764. Specifically, The Plaintiff, Orr, stated in her deposition that a third person, Bourdeau, told Orr that he *saw* the document at the FDIC's office. The Ninth Circuit found Bourdeau's extra-judicial statement to be inadmissible hearsay because "the immediate inference the proponent wants to draw is the truth of assertion on the statement's face...."*Id.* at 779 n. 26.The *Orr* court reasoned that, "[a]lthough [the evidence] was not offered to prove the truth of the matter asserted, it [was] nonetheless hearsay [,]" because the inference counsel sought to draw "depend[ed] on the truth of [the third party's] statement...."*Id.*

**\*17** The Ninth Circuit reached a similar conclusion in *Mahone.* 347 F.3d 1170. Mahone was a prisoner who, after he acted out violently, was placed into a special strip cell without clothing or any other personal items. Mahone filed a section 1983 claim the prison, in which he alleged, among other things, that he suffered "significant mental trauma" from the conditions of confinement in the strip cell. *Id.* at 1173.The defendants attempted to prove that Mahone was faking the symptoms of mental trauma. Specifically, on cross examination of Mr. Mahone, the following exchange took place:
[Defense counsel]: Mr. Mahone, have you received any diagnosis from any mental health provider or therapist regarding mental and emotional suffering that was a result of your stay in the modified conditions of confinement?
Mahone: "Yes, I have gotten some. I don't know too much of the corpus of the diagnosis, not too much of it."
[Defense counsel] "Can you tell the jury what you've been diagnosed as?"

Mahone's counsel objected on the hearsay grounds, but the objection was overruled.Mahone responded: Well, I was interviewed by some Western State Hospital staff because I got charged in the incident of tearing up the cell. I have pled not guilty by reason

of insanity because at the time I didn't know what I was doing; it was a mental reaction, a reflex. The Western State Hospital psychiatrist-it was about three and one student came to diagnose me, and they said that they believed that I was faking it, and then they gave a real-then they gave a real diagnosis saying I was an anti-sociopathic, something, something. In other words, in the beginning they said that my symptoms that I was experiencing was a fake, that I was lying. And then the last part of their diagnosis, they diagnosed some type of mental illness actually, and it was something to the effect of anti-sociopathic behavior, something, something, big collegiate words, psychiatric collegiate words. I can't say them all.

*Id.* at 1172-73.Mahone's counsel renewed his objection to the jury learning that the doctor had diagnosed him as a "fake," but the answer was not stricken from the record.

Defense counsel argued that "faker" diagnosis was admissible "to establish whether or not Mr. Mahone was justified in claiming significant mental trauma resulting from the conditions of his confinement in the strip cell."*Id.* at 1173.The Ninth Circuit rejected this argument, following its prior holding in *Orr,* because the "extra-judicial statement was offered to prove that Mr. Mahone was not justified in claiming significant mental trauma ... The jury could only draw this inference, however, if it believed the therapist's opinion that Mr. Mahone was lying about the impact of his confinement in the strip cell."*Id.* Because the relevance of the statement depended on an inference that could be drawn only from the *truth* of the matter asserted, it was inadmissible hearsay. *See Id.*

**\*18** The statements at issue here are markedly different. They are being offered, not for the truth of the matter asserted, but for the fact that the statements were made as alleged. A witness' statement about what he heard others say is admissible to establish that racially offensive speech occurred.*Calmat Co. v. United States Dept. of Labor,* 364 F.3d 1117, 1124 (9th Cir.2004). For example, Plaintiff's allegation that Hollenback called him a "jive-monkey" (FAC at ¶ 48) is not being offered to establish it is true that Plaintiff *is* a "jive-monkey," it is being offered to establish that Hollenback made racially offensive remarks to Plaintiff. Plaintiff may testify that such statements were made to him before the finder of fact.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 14
Not Reported in F.Supp.2d, 2004 WL 257105 (W.D.Wis.)
**(Cite as: Not Reported in F.Supp.2d)**

But, with respect to certain statements, Defendant's objection is a bit more sophisticated. Defendant also objects to the use of any of the statements in which one hearsay declarant appears to implicate other individuals or entities in a conspiracy. For example, Plaintiff claims that Jensen said to him "Mr. Hollenback and I are known in this court ... you're going to get yours if you keep it up ....you just wait, Mr. Hollenback and I have something planned for you boy ... we're going to put your black ass down ... payback is going to be hell."(Second Affidavit, para 1.) Such statements arguably fall under the rubric of *Mahone* and *Orr* to the extent that Plaintiff offers them as evidence (directly or impliedly) of the truth of the assertions. For example, this statement would be inadmissible to establish the existence of a conspiracy between Jensen and Hollenback.

Under certain circumstances, such statements might be admissible as "statement [s] by a coconspirator of a party [made] during the course and in furtherance of the conspiracy."Fed.R.Evid. 801(d)(2)(E). But, co-conspirator statements are only admissible after a court has been satisfied that "there was a conspiracy involving the declarant and the [opposing] party."*See* United States v. Peralta, 941 F.2d 1003, 1005 (9th Cir.1991).

VI.

For the reasons set forth above:
1. Defendant's motion to dismiss on statute of limitations grounds is DENIED;
2. Defendant's 12(b)(6) motion to dismiss is DENIED with respect to the conspiracy claim based on the alleged threats to dissuade Plaintiff from participating in the contempt proceeding. All of the other, related conspiracy claims are DISMISSED because Plaintiff has failed to specifically state how the alleged conspiracies harmed him. But, all of these allegations can be utilized as circumstantial evidence in support of the remaining conspiracy claim.
3. The motion for summary judgment is CONTINUED to allow Plaintiff an additional 45 days to conduct further discovery. (This 45 day period began on the date of oral argument, August 14, 2006.)
4. Any renewed motion for summary judgment shall be filed on or before September 27, 2006. Opposition shall be filed on or before October 27, 2006. A

hearing on the motion is set for November 27, 2006 at 12:00 p.m. in Courtroom 3.

**\*19** SO ORDERED

E.D.Cal.,2006.
Jones v. Tozzi
Not Reported in F.Supp.2d, 2006 WL 2472752 (E.D.Cal.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.