FILED
Clerk
District Court

NOV 16 2007

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| AE JA ELLIOT-PARK,<br><br>    Plaintiff,<br><br>v.<br><br>JARROD MANGLONA, MICHAEL LANGDON, ANTHONY MACARANAS, DEPARTMENT OF PUBLIC SAFETY, and JUAN DOES 1-4,<br><br>    Defendants.<br>_____/ | Civil Action No. 07-00021<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

THIS MATTER came before the Court on Thursday, November 15, 2007, for hearing of Defendants' motion to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants appeared through their attorney Braddock J. Huesman. Plaintiff was notified of, and stipulated to the hearing but did not appear. Having carefully reviewed the parties' briefs and the relevant legal authority, and having had the benefit of oral argument and good cause appearing, the Court hereby GRANTS the motion without prejudice.

## BACKGROUND

On February 12, 2006, Plaintiff Mrs. Ae Ja Elliot-Park and Defendant Mr. Norbert Duenas Babauta were involved in a head-on traffic collision on 16 Highway Papago. (First Amended Comp. ¶¶ 13-16.) Department of Public Safety ("DPS") officer Jarrod Manglona was the first to arrive at the accident scene and was followed by officers Michael Langdon and Anthony Macaranas. (*Id.* ¶¶ 17, 24.) Mrs. Elliot-Park and Mr. Babauta were taken to the

hospital where they were both examined by Dr. Thomas Austin. (*Id.* ¶ 26.)

Mrs. Elliot-Park asserts that Mr. Babauta was drunk at the time of the accident, that the DPS officers knew that he was drunk, and that they did not investigate his intoxication because of Mr. Babauta's Northern Mariana Islands ("NMI") descent. (*Id.* ¶¶ 20-25.) Moreover, Mrs. Elliot-Park claims that other DPS officers harassed Dr. Austin to intimidate him into retracting his statement about Mr. Babauta's intoxication. (*Id.* ¶ 48.)

On June 8, 2007, Mrs. Elliot-Park filed suit in this court against the DPS officers involved in investigating the accident, the DPS, and Mr. Babauta (collectively, the "Defendants") seeking monetary damages. (*Id.* ¶¶ 2-7.) The complaint asserts that the DPS officers engaged in discrimination, conspiracy, and obstruction of justice in violation of 42 U.S.C. sections 1983 and 1985. (*Id.* ¶¶ 56, 61, 69.) In addition, the complaint asserts violation of Mrs. Elliot-Park's civil rights under the Commonwealth of the Northern Mariana Islands ("CNMI") Constitution, intentional and negligent infliction of emotional distress, and negligence. (*Id.* ¶¶ 65, 76, 81, 85, 88, 92, 99.)

The Defendants now move to dismiss the complaint arguing that it does not allege a constitutionally protected interest sufficient to support a section 1983 or 1985 claim. As such, Defendants argue that the complaint fails to state a claim and that the DPS Defendants are immune from suit. Defendants also ask the Court to decline to exercise jurisdiction over the remaining state claims.

## ANALYSIS

A. **Legal Standard for a Rule 12(b)(6) Motion.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). A court may dismiss a complaint under Rule

12(b)(6), based on the "lack of a cognizable legal theory" or based upon the "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). A court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds*; *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

**B.     The Complaint Fails to State a Section 1983 Claim.**

To establish a valid 1983 claim, a plaintiff must show: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988); 42 U.S.C. § 1983. Here, there is no dispute as to whether the DPS officers were acting under the color of state law when the alleged conduct at issue was committed. Rather, the parties dispute whether that conduct, even if true, deprived Mrs. Elliot-Park of a cognizable constitutional right. Mrs. Elliot-Park claims that the alleged conduct deprived her of her constitutional rights to equal protection and due process.

    **1.     The Complaint Does Not State an Equal Protection Claim.**

        **a.     The Complaint Does Not State a Non-Discriminatory Police Protection Claim.**

Mrs. Elliot-Park claims that she was deprived of her right to non-discriminatory police protection when the DPS officers chose not to investigate Mr. Babauta's alleged drunk driving

because of his NMI descent and her non-NMI descent. (First Amended Comp. ¶ 58; Opp. at 2-3.) The constitutional right to equal protection includes the right to receive non-discriminatory police protection. *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000); *Navarro v. Block*, 72 F.3d 712, 717 (9th Cir. 1995); *Balistreri*, 901 F.2d at 701. In *Estate of Macias*, *Navarro*, and *Balistreri*, domestic abuse victims claimed that the police failed to protect them from the commission of a crime because of their status as domestic abuse victims. *Estate of Macias*, 219 F.3d at 1021; *Navarro*, 72 F.3d at 713; *Balistreri*, 901 F.2d at 698. Each court held that a person has a valid constitutional right to non-discriminatory police protection that may be violated "when a state actor denies such protection to disfavored persons." *Estate of Macias*, 219 F.3d at 1028; *see Navarro*, 72 F.3d at 717; *Balistreri*, 901 F.2d at 701.

Here, the complaint fails to allege that Mrs. Elliot-Park was denied any *protective services*-the right she claims to have been deprived of. Instead, she claims that the DPS officers failed to investigate a crime that was already allegedly committed when the officers arrived. That failure, even if true, did not deprive her of her right to *police protection* from the commission of a crime. The right has not been applied to non-protective law enforcement functions.[1]

---

[1] Mrs. Elliot-Park appears to argue that the right to non-discriminatory *police protection* extends to police investigations generally. In support of this argument, she cites *Hayden v. Grayson*, 134 F.3d 449 (1st Cir. 1998) and *Walker v. Shepard*, 107 F. Supp. 2d 183 (N.D.N.Y. 2000). Neither case supports the assertion.

In *Hayden*, victims of child sexual abuse brought an equal protection claim against the chief of police arguing that the chief failed *to protect* them when he refused to investigate accusations of sexual abuse. 134 F.3d at 452. The claim was based on an alleged failure to protect the plaintiffs from the commission of a crime. Therefore, the holding does not support the assertion that the right extends to all investigations.

In *Walker*, black victims of assault claimed that their right to equal protection was violated when the police failed to investigate white assailants because of the victims' and/or the assailants' race. 107 F. Supp. 2d at 185. The court dismissed the claim for failure to allege that the officers acted with discriminatory intent. *Id.* at 189. Although the court acknowledged the right to a non-protective police investigation, the court did not address the issue. Instead, it dismissed the claim on other grounds. Accordingly, the case cannot be construed to have held that the equal protection right to non-discriminatory police protection extends to non-protective criminal investigations.

### b. The Complaint Does Not State a Selective Enforcement Claim.

Mrs. Elliot-Park also appears to argue that the DPS officers' selective enforcement of the drunk driving laws violated her right to be free from unlawful classifications based on race. (First Amended Comp. ¶ 45.) However, the complaint fails to claim that any laws were selectively enforced or not enforced against Mrs. Elliot-Park. Therefore, the complaint fails to allege a personal injury sufficient to support standing. *See Allen v. Wright*, 468 U.S. 737, 751 (1984) (To establish standing in a federal court "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.").

Accordingly, the equal protection claim fails because the complaint does not allege that Mrs. Elliot-Park was denied any protective services nor does it allege a valid selective enforcement claim.

### 2. The Complaint Does Not State a Due Process Claim.

The complaint also asserts that Mrs. Elliot-Park was deprived of her right to due process. Mrs. Elliot-Park does not claim that she was deprived of any interest derived directly from the Constitution. Instead, the complaint asserts that she was deprived of a constitutionally protected interest created by CNMI law. State law may, in limited circumstances, create an entitlement that is protected by the Due Process Clause of the United States Constitution. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005); *Bonin v. Calderon*, 59 F.3d 815, 841-42 (9th Cir. 1995). However, a state law requiring police to take action does not create such an entitlement if it is not mandatory and does not precisely define the means of enforcement. *Castle Rock*, 545 U.S. at 762-63.

In *Castle Rock*, the plaintiff argued that an entitlement interest was created from a state-issued restraining order and a state statute that mandated enforcement of restraining orders. *Id.* at 754. The Court held that neither the order, nor the statute truly mandated enforcement even though the language of both appeared to be mandatory. *Id.* at 762 (the statute stated that an

officer "*shall* use every reasonable means to enforce a restraining order," while the order stated that an officer "*shall* arrest, or, if an arrest would be impractical under the circumstances, seek a warrant . . . ." (emphasis added)). The Court reasoned that police officers necessarily retain significant discretion to execute their official duties and mandatory language in a state law, without more, cannot remove this discretion. *Id.* Moreover, the Court held that the means of enforcement was not clear because the alleged "right to enforcement" could mean either that the officer must arrest the offender, must seek an arrest warrant, or simply must "[use] every reasonable means, up to and including arrest, to enforce the order's terms." *Id.* ("Such indeterminacy is not the hallmark of a duty that is mandatory.") Finally, the Court concluded that even if the order and/or statute did create some entitlement, entitlement to procedure such as seeking an arrest warrant, is insufficient to confer standing much less a constitutionally protected entitlement interest. *Id.*

Here, Mrs. Elliot-Park claims that a constitutionally protected entitlement interest to restitution was created by the CNMI Victims Bill of Rights. (First Amended Comp. ¶ 63; Opp. at 3-5.) The CNMI Victims Bill of Rights provides, that

> Officers and employees of the . . . departments and agencies of the [CNMI] engaged in the detection, investigation, or prosecution of crime *shall* make their best efforts to see that victims of crime are accorded [the following rights:] (1) the right to be treated with fairness and respect; (2) the right to be reasonably protected from the accused offender; (3) the right to be notified of court proceedings; (4) the right to be present at all public court proceedings related to the offense; (5) the right to confer with the attorney for the government in the case; (6) the right to restitution; and (7) the right to information about the conviction, sentencing, imprisonment, and release of the offender.

6 C.M.C. §§ 9104(a)-(b).

Mrs. Elliot-Park argues that this CNMI law creates a protected entitlement because it

mandates that officers use their best efforts to ensure that crime victims are afforded their right to restitution. She argues that the use of the word "shall" in the CNMI law creates the mandatory duty and that the list of rights and the required "best efforts" of the officers is a sufficiently determinate means of enforcement. The argument misconstrues the law. As *Castle Rock* illustrates, the DPS officers necessarily retain discretion to execute their duties and the use of the word "shall" in the CNMI law does not deprive them of discretion. Moreover, the CNMI law does not provide a precisely defined means of enforcement of the alleged right-the right to "officers' best efforts" to afford victims the listed rights. The means used to achieve an officer's "best efforts" are innumerable. Finally, as the Court noted in *Castle Rock*, even if an entitlement right was created by the CNMI law, an entitlement to procedure such as an investigation, is insufficient to confer standing let alone an entitlement interest.[2]

Therefore, because the CNMI Victims Bill of Rights does not truly mandate any precisely defined action by the DPS officers, it does not create a constitutionally protected entitlement.[3]

---

[2] Mrs. Elliot-Park also argues that *Castle Rock* is not applicable here because the Court concluded that restraining orders are issued in the interest of the public, whereas here, the Victims Bill of Rights is meant to protect private individuals. The argument is not well-taken. In *Castle Rock*, the Court stated that even if the restraining order did create a mandatory obligation of enforcement, "that would not necessarily mean that state law gave [*plaintiff*] an entitlement to [*enforcement*] of the mandate." 545 U.S. at 764-65. The Court explained that criminal laws are generally in the interest of the public and therefore, not privately enforceable. *Id.* at 765. Here, not only does the CNMI Victims Bill of Rights expressly *not* create a private cause of action, 6 C.M.C. § 9104(c), but a restraining order is significantly more individualized since it protects a particular person based on an individually reviewed set of facts.

The Court further rejects Mrs. Elliot-Park's argument that *Dix v. County of Shasta*, 963 F.2d 1296 (9th Cir. 1992) is instructive on the issue of entitlement interests created by state law. The case's entitlement interest analysis was overruled in *Sandin v. Conner*, 515 U.S. 472 (1995).

[3] Mrs. Elliot-Park also claims that she has been deprived of her right to a fair trial. (First Amended Comp. ¶ 63.) However, she fails to elaborate on the argument. The Sixth Amendment protects a criminal defendant's right to a fair trial. U.S. Const. amend. VI; *Fields v. Brown*, 431 F.3d 1186, 1192 (9th Cir. 2005). In addition, whether or not to bring a charge is one of complete prosecutorial discretion. *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("Executive Branch has exclusive and absolute discretion to decide whether to prosecute a case."). Moreover, a crime victim has no right to engage in or have any say in the prosecution or sentencing of the perpetrator. *Dix v.*

In sum, the complaint fails to state a constitutionally protected interest and the section 1983 claims fail. Accordingly, the motion is GRANTED without prejudice as to the first and second causes of action.[4]

**C.    The Section 1985 Claims Fail.**

Section 1985 conspiracy and obstruction of justice claims fail to state a claim upon which relief can be granted where they are brought "based solely upon allegations which [the Court has] concluded were insufficient to state a claim for deprivation of a federal right under section 1983." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The insufficiency of these allegations to support a section 1983 violation precludes a conspiracy claim predicated upon the same allegations.").

Here, Mrs. Elliot-Park asserts conspiracy and obstruction of justice claims under 42 U.S.C. sections 1985(2) and (3). (First Amended Comp. ¶¶ 70, 74.) These claims are based solely on the conduct that Mrs. Elliot-Park alleges violated her civil rights under section 1983. (*See id.*) However, because the Court has concluded that Mrs. Elliot-Park has not stated a claim pursuant to section 1983, the section 1985 claims must also fail.

Accordingly, the motion is GRANTED without prejudice as to the fourth and fifth causes of action.

**D.    All Federal Causes of Action Have Been Dismissed.**

Mrs. Elliot-Park also asserts causes of action for violation of the CNMI Constitution,

---

*County of Shasta*, 963 F.2d 1296, 1299, *overruled on other grounds*.
  Here, Mrs. Elliot-Park is not a criminal defendant, nor does she have a right to have criminal charges brought against Mr. Babauta. Therefore, based on the pleadings, Mrs. Elliot-Park has not stated a valid claim for deprivation of her right to a fair trial.

[4] The DPS Defendants also argue that they are immune from this suit. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order for the Court to grant immunity, there must first be a constitutional violation from which to be immune. *Id.* Here, because the Court has held that the complaint, as currently pleaded, has not stated a constitutional violation, the Defendants' claim for immunity is moot.

negligent and intentional infliction of emotional distress, and negligence. (First Amended Comp. at 12-15.) Because all federal causes of action have been dismissed, the Court declines to exercise jurisdiction over the remaining state claims. Accordingly, the motion to dismiss the remaining claims is GRANTED without prejudice.

## CONCLUSION

The complaint fails to articulate a constitutionally protected interest. As such, the sections 1983 and 1985 claims fail. In addition, the Court declines to exercise jurisdiction over the remaining state claims.[5]

Accordingly, the motion to dismiss is GRANTED without prejudice.

**IT IS SO ORDERED.**

Dated: November 16, 2007

                                          ALEX R. MUNSON
                                          UNITED STATES DISTRICT JUDGE

---

[5] As articulated in *Hayden*, "our conclusion represents no endorsement of the [alleged] conduct . . . . Nevertheless, not every form of misconduct is a constitutional violation-most wrongs find their remedy under state law-and our present holding is simply that the allegations made in the complaint do not properly assert a [constitutional] violation." 134 F.3d at 457.