**O'CONNOR BERMAN DOTTS & BANES**
**Second Floor, Nauru Building**
**1 Nauru Loop**
**Susupe, Saipan, CNMI**
**Mail: PO Box 50-1969 Saipan MP 96950**
**Phone: 234-5684**
**Fax: 234-5683**
**E-mail: attorneys@saipan.com**

**Attorneys for Plaintiff**

**IN THE DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **AE JA ELLIOT PARK,** | Civ. No. 07-0021 |
| Plaintiff, | |
| vs. | **MOTION FOR RECONSIDERATION AND/OR CLARIFICATION** |
| **JARROD MANGLOÑA, et al.,** | |
| Defendants. | |

Plaintiff hereby moves the Court to reconsider its Order Granting Defendants' Motion To Dismiss (entered November 16, 2007), insofar as it held that *discriminatory police investigation* of crime, on the basis of the race of the perpetrator, the victim, or both, does not violate equal protection.[1] The applicable case law in this area uniformly demonstrates that investigation, arrest, and response to crime generally are part and parcel of the "protective services" as to which the police may not discriminate, and thus indicates that reconsideration of the Court's contrary ruling is warranted. *See, e.g.,* United States v. Commonwealth of the Northern Mariana Islands, 1993 WL

---

[1]
In its Order, the Court wrote as follows with respect to the equal protection claim:
Here, the complaint fails to allege that Ms. Elliot-Park was denied any *protective* services – the right she claims to have been deprived of. Instead, she claim that the DPS officers failed to investigate a crime that was already allegedly committed when the officers arrived. That failure, even if true, did not deprive her of her right to *police protection* from the commission of a crime. The right has not been applied to non-protective law enforcement functions.
Order at 4 (emphasis in original). The Court rejected Plaintiff's view that "the right to non-discriminatory *police protection* extends to police investigations generally." Id. at 4 n.1 (emphasis in original).

763588 (D.N.M.I. 1993) at *1 (reconsidering prior orders upon determining that they were incorrectly decided, and that justice requires the error be corrected) (*citing* Vaughan v. Regents of Univ. of California, 504 F.Supp. 1349, 1351 (E.D. Cal. 1981) ("District courts are authorized to reconsider, set aside or amend interlocutory orders at any time prior to final judgment.")).

In support of this motion, Plaintiff shows the Court the following:

1. In Roman v. City of Reading, 257 F.Supp. 799 (E.D. Pa. 2003), a black man's car had been shot at while he was driving through the streets of Reading, and he, spotting a police car nearby, sought the officers' assistance.  After substantial delay, an officer finally spoke with the man, but took no evidence from the car, and apparently took no further action, remarking casually that "there are a lot of shootings in that part of town." Id. at 801.  The victim brought a Section 1983 action against the city, and the court, while it dismissed his due process claim, upheld his claim for violation of equal protection.  It that claim:

> He 'maintains that from the very beginning, when the Reading Police Department saw him to be a black man or a man of color, the crime committed against him was handled differently . . . .  The officers assumed that the Plaintiff was either a drug dealer or a pimp, and that there was no need for a formal *investigation* because it would confirm the racist concept of blacks killing blacks.'  He further alleges that 'if the Plaintiff was a white man or woman,' *the police response and investigation* would have proceeded more aggressively.

Id. at 803 (emphasis added) (internal punctuation omitted).  The equal protection claim, in other words, was solely and explicitly grounded in racially-based failure to investigate.  The court quoted the rule of DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200 n.5 (1989), that "a State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the equal protection clause," and found that:

> This appears to be exactly the gravamen of Plaintiff's allegations: that Defendants, pursuant to a 'policy' of racial discrimination, denied him *protective services* based on his race, and treated him differently than they would have a person of a different race.

Id. at 803 (emphasis added).  "Investigation" is thus treated by the court as a type of "protective

2

services," to the point that the allegations of the complaint are found to fit "exactly" within the rule of DeShaney.

2. Likewise in Hawk v. Perillo, 642 F.Supp. 380 (E.D. Ill. 1986), two black men had been assaulted by a group of white men outside a restaurant in Chicago. When the police arrived, they spoke privately with some of the assailants, who promptly fled. The officers did not order them to stop, and gave only belated and half-hearted chase, allowing the white men to escape. They also "did not interview anyone at the scene of the attack." Id. at 382. The black victims brought a civil rights action, charging that the officers, "*by their post attack inaction*," id. (emphasis added), violated their civil rights, including equal protection. Their complaint, in other words, was *not* that the police had failed to protect them from the crime in the first instance, but rather (as in Roman and as in this case) that it discriminated against them in their *investigative response* to the crime after the fact. The Court upheld the claim against the officers' motion to dismiss, writing:

> [T]his court interprets plaintiffs complaint as alleging that the Police Defendants failed to act because plaintiffs are black. These allegations state a claim under Section 1983 of violations of the plaintiffs' Fourteenth Amendment right to equal protection.

Id. at 384. Not only did the court uphold the claim, moreover, it noted that, if true, "the police Defendants actions are *precisely the type of actions* that motivated Congress to pass Section 1983." Id. (emphasis added). Recalling the origins of Section 1983 in the Reconstruction era, a time when law enforcement officers in the former Confederacy often turned a blind eye to offenses committed against blacks by whites, the court noted that the civil rights law was directly motivated by "the failure of certain States to enforce the laws with an equal hand," necessitating a federal remedy against state officials who "were *unable* or *unwilling* to enforce a state law." Id. (*quoting* Monroe v. Pape, 365 U.S. 167 (1961)) (emphasis in original).

3. Similarly in Smith v. Gilpin County, Colorado, 949 F.Supp. 1498 (D. Colo. 1996), a black man brought a Section 1983 equal protection case against the county sheriff's department and some

3

of its officers, alleging that the department had failed to investigate various crimes committed against him, and had done so discriminatorily based upon his race. For example, there had been several assault cases in which the department:

> did not issue an all points bulletin for the cars described or the people involved and did not do a lineup although Smith [the victim] gave them good investigative leads and had documented injuries. [However,] all points bulletins were put out in other assault cases involving white persons.

Id. at 1502. The court denied defendants' motion to dismiss, again citing the DeShaney rule that, "although there is no general constitutional right to police protection, the police may not discriminate in providing such protection." Id. at 1500. The court, in other words, again found "investigation" to be within the scope of "protection" for purposes of this rule. As in Hawk, the court took note of the "circumstance surrounding the passage of § 1983, including the concern for protecting Negroes from the widespread non-enforcement of state laws." Id. (*quoting* Smith v. Ross, 482 F.2d 33 (6th Cir. 1973)).[2] The court, moreover, described the law in this area as "clearly established," so as to defeat a claim of qualified immunity. Id. at 1500, 1508.

4. The foregoing cases demonstrate that "police protection" does *not* mean *only* protection from a crime before it occurs. Post-crime responsive functions such as investigation and arrest *are part of* DeShaney "protective services," in the provision of which the state may not discriminate on the basis of race. Sometimes, as in Smith, the two concepts are potentially linked, in that the failure to properly respond to one crime might have encouraged further crimes. Other times, however, as

---

[2] *See also, e.g.*, Mody v. City of Hoboken, 758 F.Supp. 1027, 1028 (D.N.J. 1991) ("An express or implied policy which permits or condones attacks upon members of a particular minority group is the very evil which the post-Civil War statutes sought to eradicate. If law enforcement turns away from a victim solely because of the victim's race, religion, or national origin, equal protection of the laws is rendered meaningless."). The plaintiff in Mody alleged a pattern of police "not detaining or filing criminal complaints against those who attacked Indians." Id. at 1032. *Cf.* First Amended Complaint in this matter at ¶¶ 45-46 (alleging DPS custom and practice of discriminatory investigation and enforcement of DUI laws based upon race and/or national origin).

4

1  in Hawk and Roman, there are no further crimes even alleged, but the claims are still sustained under
2  the same analysis, without distinction. Indeed, the only perceptible distinction between a failure to
3  protect in advance and a failure to respond after the fact is on the issue of *damages* – i.e., the extent
4  to which the plaintiff was damaged as a result of the failure to properly investigate or otherwise
5  respond to the crime. If the failure to investigate one crime can be demonstrated to have
6  proximately led to another crime being committed against the plaintiff, then his actual damages
7  would presumably be greater than if no further crime had occurred. That, however, is a separate
8  question from whether a claim is stated, because a constitutional injury exists, and can be sued upon,
9  in the absence of any damages at all:

> While the question considered by the district court [causation] may have had some relevance to the amount of damages that the Appellants are entitled to recover, it has no effect on the issue of whether they can demonstrate that the Appellees' conduct could support a cause of action under § 1983. A plaintiff may prove a violation of § 1983 without demonstrating that the deprivation of his or her constitutional rights caused any actual harm. In this circuit, nominal damages must be awarded if a plaintiff proves a violation of his or her constitutional rights. The trier of fact must award nominal damages to the plaintiff as a symbolic vindication of her constitutional right. Thus, the Appellants may prevail on their claim and receive at least nominal damages if they can prove that the Appellee's violated Mrs. Macias's right to equal protection, irrespective of whether the Appellees' conduct caused Mrs. Macias's death.

Estate of Macias v. Ihde, 219 F.3d 1018, 1028 (9th Cir., 2000) (citations and internal punctuation omitted) (*quoting* George v. City of Long Beach, 973 F.2d 706, 708 (9th Cir. 1992), and Floyd v. Laws, 929 F.2d 1390, 1403 (9th Cir. 1991)). *See also, e.g.*, Floyd v. Laws, 929 F.2d 1390, 1401-1402 (9th Cir. 1991) (noting also that the same rule applies regardless of whether the rights infringed were procedural or substantive); Draper v. Coombs, 792 F.2d 915, 921-22 (9th Cir. 1986) (same holding); Larez v. City of Los Angeles, 946 F.2d 630, 640 (9th Cir. 1991) ("[I]t was appropriate to proceed . . . for the purpose of vindicating those constitutional rights, through the awarding of nominal, yet symbolic, damages"). *See generally* Carey v. Piphus, 435 U.S. 247, 266-67 (1978) ("the denial of procedural due process should be actionable without proof of actual injury"); Ndaula v. Holliday, 2007 WL 1098954 (W.D.La. 2007) at *6 fn.2 (reconciling Carey with Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) (requiring actual injury for standing) as follows: "The

5

violation of a constitutional right constitutes an 'actual injury.'").

As shown by the foregoing authorities, discriminatory failure by police to investigate, arrest, or otherwise respond to a crime, does give rise to a viable Section 1983 claim by the victim of the crime for deprivation of equal protection. Plaintiff has, moreover, found no cases to the contrary, and in particular no cases which draw the distinction drawn by the Court in its Order, between "protective services" on the one hand, and post-crime activities such as investigation and arrest on the other.[3] Plaintiff therefore moves that the Court's dismissal of her equal protection claim, and all other claims which depend upon that claim (*viz.* the § 1985 conspiracy claims and the CNMI law claims) be reconsidered, and each of those claims reinstated.

Furthermore, as to any claims which are not reinstated (including the due process claim, reconsideration of the dismissal of which is not sought herein), Plaintiff moves the court to clarify whether, by dismissal of Plaintiff's claims "without prejudice," it means: a) without prejudice to filing an amended complaint in this action; b) without prejudice to filing a new and separate action in this Court; or c) without prejudice to filing a new action in the CNMI Superior Court.

Respectfully submitted this 26th day of November, 2007.

---

[3] There are of course, cases in which an equal protection claim based on post-crime actions or omissions has not survived summary judgment, but that has been due to failure of proof, rather than a failure to allege "protective services." For example, the court in Moua v. City of Chico, 324 F.Supp.2d 1132 (E.D.Cal. 2004), in which Hmong plaintiffs alleged that the city discriminatorily delayed filing felony charges against a person harassing them, granted summary judgment for the defendants based on lack of evidence of discriminatory intent. *See* id. at 1139-41. It found no fault with the issue as such, however, analogizing it, without distinction, to the same "failure-to-serve" line of cases cited by Plaintiff in support of her claim in this case, including Navarro v. Block, 72 F.3d 712 (9th Cir. 1995), Balistreri v. Pacifica Police Dept., 901 F.2d 969 (9th Cir. 1988), and Hayden v. Grayson, 134 F.3d 449 (1st Cir. 1998).

|   |   |
|---|---|
| 1 | O'CONNOR BERMAN DOTTS & BANES |
| 2 | Attorneys for Plaintiff |

By:_____/s/_____
　　　　　　　Joseph E. Horey

*3268-01-071120-PL-M reconsideration.wpd*