**O'CONNOR BERMAN DOTTS & BANES**
**Second Floor, Nauru Building**
**1 Nauru Loop**
**Susupe, Saipan, CNMI**
**Mail: PO Box 501969 Saipan MP 96950**
**Phone: 234-5684**
**Fax: 234-5683**

**Attorneys for Ae Ja Park Elliott**

**IN THE DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | | |
|---|---|---|
| **AE JA PARK ELLIOTT,** | ) | **CIVIL ACTION NO. 07-0021** |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | |
| | ) | **SECOND AMENDED COMPLAINT** |
| **JARROD MANGLONA, MICHAEL** | ) | |
| **LANGDON, ANTHONY MACARANAS,** | ) | |
| **DEPARTMENT OF PUBLIC SAFETY,** | ) | |
| **DOES 1-5, and NORBERT DUENAS** | ) | |
| **BABAUTA,** | ) | |
| **Defendants.** | ) | |

Plaintiff, by and through counsel, hereby files her Second Amended Complaint, and in support thereof alleges as follows:

**I.**
**PARTIES**

1.     Plaintiff Ae Ja Park Elliott ("Mrs. Elliot"), is now, and at all times mentioned herein was, a citizen of the Republic of Korea and a resident of Saipan, Commonwealth of the Northern Mariana Islands ("CNMI").  Mrs. Elliott is racially and ethnically Korean and is not of Northern Mariana Islands ("NMI") or Micronesian descent.

2.      Defendant Norbert Duenas Babauta ("Defendant Babauta"), on information and belief, was, at all times relevant to this matter, a citizen and resident of Saipan, CNMI, and is of NMI or Micronesian descent.

3.      Defendant Jarrod Manglona ("Defendant Manglona"), on information and belief, was, at all times relevant to this matter, a citizen and resident of Saipan, CNMI, and an employee of the Department of Public Safety acting within the scope and course of his employment and under the color of state law, and is of NMI or Micronesian descent.

4.      Defendant Michael Langdon ("Defendant Langdon"), on information and belief, was, at all times relevant to this matter, a citizen and resident of Saipan, CNMI, and an employee of the Department of Public Safety acting within the scope and course of his employment and under the color of state law, and is of NMI or Micronesian descent.

5.      Defendant Anthony Macaranas ("Defendant Macaranas"), on information and belief, was, at all times relevant to this matter, a citizen and resident of Saipan, CNMI, and an employee of the Department of Public Safety acting within the scope and course of his employment and under the color of state law, and is of NMI or Micronesian descent.

6.      Doe Defendants 1-4, on information and belief, were, at all times relevant to this matter, citizens and residents of Saipan, CNMI, and employees of the Department of Public Safety acting within the scope and course of their employment and under the color of state law, and are of NMI or Micronesian descent.

7.      Defendants Manglona, Langdon and Macaranas are sometimes referred to collectively herein as the "Responding Officer Defendants."   Does 1-4, together with the

Responding Officer Defendants, are sometimes referred to collectively herein as the "Police Officer Defendants."

8.      Defendant Doe 5, on information and belief, was, at all times relevant to this matter, a citizen and resident of Saipan, CNMI, and is of NMI or Micronesian descent.

9.      Defendant the Commonwealth Government is named and sued through its instrumentality Defendant Department of Public Safety ("DPS"), which is now, and was at all times mentioned herein, a governmental entity operating as a police department, with its principal place of business in Saipan.

10.      At all relevant times, all Defendants except Babauta and Doe 5 were acting as agents and/or co-conspirators of one another, and acting under color of CNMI law.

## II.
### JURISDICTION

11.      This action arises under the Constitution of the United States, particularly the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and under the laws of the United States.   The Court has jurisdiction of this matter pursuant to the Covenant to Establish a Commonwealth of the Northern Mariana Islands In Political Union With the United States of America (authorizing Congress to establish this Court), 48 U.S.C. § 1821-22 (establishing this Court and granting it the jurisdiction of a district court of the United States), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1332 (diversity jurisdiction), 28 U.S.C. § 1343 (jurisdiction over civil rights actions), and 28 U.S.C. § 1367 (supplemental jurisdiction).

12.     Venue is proper in this Court under 28 U.S.C. §1391(b). Defendants are residents of and/or are present in the CNMI. Additionally, the facts giving rise to this lawsuit occurred within this District.

### III.
### FACTUAL ALLEGATIONS

13.     On February 12, 2006, Mrs. Elliott (with her baby in the back seat) was driving her white Hyundai Elantra (the "Hyundai car") south along 16 Highway in Papago, Saipan, CNMI.

14.     She was meeting her husband for dinner at the Pacific Islands Club. As it was around 6:30 p.m., the sky was still light, and the streets were dry.

15.     Defendant Babauta, a person of NMI descent, was driving a red Toyota Tacoma truck (the "pick-up truck") north on 16 Highway Papago. On information and belief, Babauta's wife and Doe 5 were passengers in the pick-up truck, while Babauta's four children, ages 8,11,13 and 14, sat in the bed of the truck.

16.     Babauta was drunk.

17.     Babauta's intoxication had impaired his driving, and he was swerving.

18.     At around 6:30 pm, Babauta sped through a turn, crossed over into oncoming traffic, and crashed head on into Mrs. Elliott's car, causing her grievous bodily injuries and property damage.

19.     Mrs. Elliott, in severe pain and unable to get out of her car or tend to her baby, called out for help.

20.     Doe 5, who had exited the pick-up truck, approached Mrs. Elliott, told her to shut up, and shoved her head violently against the steering wheel of her car.

21.     The driver of another car passing by stopped to offer assistance, but Doe 5 told her to shut up and go away.

22.     On information and belief, at or around 6:50 p.m., Defendant Manglona was driving on 16 Highway Papago when he saw that traffic was halted around a car accident.

23.     He called into DPS Central Command Center to report a traffic accident and request an ambulance and back up.

24.     Defendant Manglona approached both cars to check on the passengers. Meanwhile, Doe 5 was directing traffic around the scene of the accident.

25.     When Defendant Manglona approached Mrs. Elliott's car, she asked him to call her husband and tried to hand him her cell phone, but he roughly pushed her arm back inside the car and told her to shut up and calm down.

26.     On information and belief, in the bed of Babauta's truck were empty beer cans.

27.     Babauta was teetering, slurring his words, reeked of alcohol and had bloodshot eyes.

28.     Doe 5 was also belligerent, incoherent, and apparently intoxicated.

29.     Defendant Manglona began conducting initial interviews of the witnesses, drivers and passengers to ascertain the cause of the accident:

      a)  Mrs. Elliott stated that the truck had swerved into her lane, hitting her car head-on.

      b)  Babauta stated that he had "blacked out" while driving which had caused him to swerve into oncoming traffic.

      c)  Doe 5 was not interviewed, and later disappeared from the scene; his actual identity remains unknown to Mrs. Elliott.

30.     After viewing Babauta's drunkenness, and having probable cause to believe Babauta was under the influence of alcohol, Defendant Manglona failed to conduct any field sobriety tests, or do anything else to verify if Babauta was intoxicated or not.

31.     Shortly thereafter, Defendants Macaranas, Langdon and the medics arrived. While the medics attended to the injured parties, Defendants Macaranas and Langdon spoke to both drivers and then directed traffic.

32.     Again, although both Defendants Macaranas and Langdon were able to observe Babauta's bloodshot eyes, slurred words and stagger, and having probable cause to believe Babauta was under the influence of alcohol, both failed to conduct any field sobriety tests or blood alcohol tests on him, or otherwise investigate whether he was intoxicated.

3268-01-071212-second amended complaint-R1

33.     Upon arriving at the hospital, Dr. Thomas Austin examined both drivers and passengers.

34.     Mrs. Elliott was treated for a fractured right wrist and right leg, and lacerations on her right leg and right eyelid.

35.     Upon observing and talking with Babauta, Dr. Austin concluded that Babauta was visibly intoxicated.

36.     Dr. Austin walked a police officer over to Babauta and stated that the man was drunk.  At this time, that officer's identity is not conclusively established, and so he is labeled "Doe 1."

37.     Dr. Austin also informed Defendant Manglona that Babauta was drunk.

38.     Despite having probable cause to believe Babauta was under the influence of alcohol, neither Doe 1 nor Defendant Manglona conducted field sobriety tests or blood alcohol tests on him, or other investigate whether he was intoxicated.

39.     Around that time, Mark Williams arrived at the hospital after hearing of Mrs. Elliott's accident.

40.     Mr. Williams viewed Babauta passed out on a hospital bed.

41.     Mr. Williams was told by both Mrs. Elliott and her husband that the other driver was drunk.

3268-01-071212-second amended complaint-R1

42.     When Mr. Williams told Defendant Manglona that Babauta was drunk, Defendant Manglona informed him that Mrs. Elliott had confused Babauta with a "good Samaritan" at the scene of the accident.

43.     Since none of the Responding Officer Defendants, or Doe 1, took any action on the basis of medical opinions and eye witnesses, Babauta was released from the hospital.

44.     The Responding Officer Defendants, and Doe 1, chose not to perform any sobriety test, or otherwise properly investigate Babauta's intoxication, because of Babauta's national and/or ethnic origin and the national and/or ethnic origin of Mrs. Elliott.

45.     The Responding Officer Defendants, and Doe 1, intentionally treated Mrs. Elliott differently from other similarly situated persons, without any rational basis.

46.     At some point during the evening or early night of February 12, 2006, Responding Officer Defendants Manglona, Langdon and Macaranas, Doe 1, and perhaps others, formed a conspiracy to obstruct justice and prevent the prosecution of Babauta.

47.     Defendant Macaranas observed Babauta leaving the hospital to join family members who were waiting for him in the parking lot, drinking beers in the bed of a truck.

48.     At approximately 12:30 a.m., February 13, 2006, when Dr. Austin discovered that Babauta was allowed to leave the hospital without being charged with a DUI, he called DPS to complain.  He stated that he had informed various officers of Babauta's intoxication, and that none had responded to his diagnosis.

49.     Ignoring Dr. Austin's medical assessment, the Responding Officer Defendants, and Doe 1, never charged Babauta with driving under the influence.

50.     On the contrary, Defendant Manglona falsely, without any factual basis, and in contradiction to all available evidence, stated in his report of the accident that Babauta "had not been drinking."

51.     Later that evening, Defendant Macaranas was called to assist another car accident that night.  The driver at fault in the other accident was a person not of NMI descent, and the victim in the other accident was a person of NMI descent.

52.     Defendant Macaranas, on information and belief, followed police protocol in the other accident, performed a sobriety field test to ascertain the driver's level of intoxication, and arrested that driver for driving under the influence.

53.     Upon information and belief, it is alleged that, after the accident in which Mrs. Elliott was injured, Responding Officer Defendants Manglona, Langdon and Macaranas, and Doe 1, acted alone or in concert with others in failing to investigate or arrest Babauta, a visibly intoxicated driver.

54.     The actions of Responding Officer Defendants Manglona, Langdon and Macaranas, and Doe 1, reflect Defendant DPS' practices, procedures, regulations and/or customs to selectively enforce the laws of the CNMI.

55.     Specifically, DPS maintains a pattern and practice of selectively enforcing those laws, policies and procedures that relate to driving under the influence of alcohol and the

investigation thereof, based upon race and/or national origin, or otherwise without rational basis.

56.     DPS, upon receiving complaints, initiated an investigation as to why Babauta had not been arrested, or at least given a field sobriety or blood alcohol test.  Does 2-4 were among the officers assigned to this investigation.

57.     In the course of the investigation, several other persons, including the fireman who transported Babauta to the hospital, the driver of the tow truck that removed Babauta's truck from the scene of the accident, and a CHC nurse who treated one of Babauta's injured children, reported evidence of Babauta's intoxication.

58.     As part of their "investigation," Does 2-4 interviewed Dr. Austin, and, during the "interview," tried to intimidate and harass Dr. Austin into recanting his statement, or otherwise not assisting in the investigation and prosecution of the Responding Officer Defendants and Doe 1.

59.     Sometime later, Edward Buckingham was appointed to investigate this matter. On information and belief, the Police Officer Defendants, and perhaps others, conspired to obstruct the investigation, and to prevent the prosecution of Babauta, the Responding Officer Defendants, and Doe 1.

60.     In doing the acts alleged above, each of the Police Officer Defendants acted as the agent for and on behalf of the other Police Officer Defendants, at all times material, within the course and scope of their respective agencies and in furtherance of the above-described conspiracy.

61.    In doing the acts described above, the Police Officer Defendants attempted to impede, obstruct or defeat the due course of justice in the CNMI with the intent to injure Plaintiff, and to deny Plaintiff the right of equal protection of laws within the meaning of 42 U.S.C. §1985(2) and (3).  Said actions were due to Plaintiff's race and ethnic origin being not of NMI and/or Micronesian descent, or otherwise without rational basis.

62.    Plaintiff has been injured by the foregoing acts of the Defendants, and has incurred pecuniary and other losses including emotional distress, and is entitled to damages.

63.    The foregoing acts of the Police Officer Defendants were taken under color of the law of the CNMI.

64.    The foregoing acts of the Defendants were willful and malicious, taken in bad faith and for oppressive reasons.

**IV.**
**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Violation of Equal Protection Under 42 U.S.C. §1983)**

65.    Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 through 64 above.

66.    This First Cause of Action is pled by Plaintiff against Defendants Macaranas, Langdon, Manglona, and Does 1-4 in their individual capacities.

67.    State executive and law enforcement officials, including officials of the CNMI, may not selectively deny protective services to certain disfavored minorities, or otherwise discriminate in the provision of such services on the basis of race or national origin.

68.    The investigation of crime and the arrest of criminal offenders are among the protective services as to which state law enforcement officials, including officials of the CNMI, may not discriminate on the basis of race or national origin.

69.    State officials, including officials of the CNMI, may not selectively deny governmental services (including but not limited to the investigation of crime and the arrest and prosecution of criminal offenders) to disfavored minorities, or otherwise discriminate in the provision of such services on the basis of race or national origin, regardless of whether such services may be characterized as "protective."

70.    By failing to investigate or arrest Babauta, and obstructing the subsequent investigation of the incident, on the basis of Mrs. Elliott's and/or Babauta's race and/or national origin, the Defendants caused Mrs. Elliott to be deprived of the equal protection of the laws.

71.    In addition, or in the alternative, by failing to investigate or arrest Babauta, and obstructing the subsequent investigation of the incident, the Defendants caused Mrs. Elliott, as a "class of one," to be deprived of the equal protection of the laws, by intentionally treating her differently from others similarly situated, with no rational basis for the difference in treatment.

72.    These Defendants acted intentionally, willfully, and in reckless disregard as to the civil rights of Mrs. Elliott.

73.    The conduct of the Defendants, as described herein, resulted in financial and emotional damage to Mrs. Elliott, entitling her to damages pursuant to 42 U.S.C. § 1983, including punitive damages and attorneys' fees in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Violation of Due Process under 42 U.S.C. § 1983)

74.    Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 through 73 above.

75.    This Second Cause of Action is pled by Plaintiff against the Defendants Manglona, Langdon and Macaranas and Does 1-4, in their individual capacities.

76.    Mrs. Elliott was the victim of a crime committed by Defendant Babauta, namely driving under the influence and reckless driving.

77.    The CNMI Victims Rights Act, 6 CMC § 9101 *et seq.*, imposes a mandatory duty on law enforcement officers to make their best efforts to see that victims of crime, including Mrs. Elliott, are accorded the rights described in that Act, including the right to be treated with fairness and with respect for the victim's dignity, and the right to restitution.

78.    The Act creates a liberty and property interest in victims of crime, including Mrs. Elliott, in the best efforts of the officers to see that they are accorded the rights described in the Act, and in the described rights themselves.

79.    It is a necessary and inherent prerequisite to the application of the Victims Rights Act that the law enforcement officers make a good faith preliminary determination that a crime has been committed.

80.    The Defendants wrongfully, and with deliberate indifference to the law and to Mrs. Elliott's rights, failed to make a good faith preliminary determination whether a crime had

been committed, failed to make their best efforts to see that Mrs. Elliott was accorded the rights described in the Act, and failed to accord her any of those rights.

81.    In so doing, Defendants deprived Mrs. Elliott of liberty and property without due process of law.

82.    Other laws and regulations of the CNMI also create a liberty and property interest in Mrs. Elliott, including but not limited to:

      a.    1 CMC §2504, which sets forth the duties of the Department of Public Safety, including the duty to provide effective police protection to the inhabitants of the Commonwealth, and the duty to enforce traffic laws and regulations.

      b.    6 CMC § 3202, which provides that a public official who willfully neglects to perform the duties of his office as provided by law is guilty of misconduct in public office.

      c.    NMIAC § 150-10-710, which charges the officer assigned to the preliminary investigation with the duty to secure statements and other information which will aid in the successful completion of the investigation.

      d.    NMIAC § 150-10-745, which prohibits any DPS officer from knowingly falsifying any official report or causing any inaccurate, false or improper information to be entered in the records of the department.

e.  NMIAC § 150-10-760, which prohibits DPS officers from interfering with the proper administration of criminal justice, and from attempting to have any traffic citation reduced or voided, except in the interest of justice.

f.  NMIAC § 150-15-765, which prohibits DPS officers from communicating any information which might assist persons guilty of criminal or quasi-criminal acts to escape arrest or punishment.

g.  NMIAC § 150-10-845, which requires DPS officers to be courteous and orderly in their dealings with the public, and to perform their duties quietly, avoiding harsh, violent, profane or insolent language.

h.  NMIAC § 150-10-850, which requires DPS officers to remain completely impartial towards all persons coming to the attention of the Commonwealth government, and prohibits them from exhibiting partiality for or against a person because of race, color, creed or national origin, or influence.

i.  NMIAC § 150-10-850, which requires DPS officers, in the course of judicial or investigative actions, to be truthful at all times, whether under oath or not.

83.    Defendants' violations of these provisions of CNMI law and regulation also deprived Mrs. Elliott of liberty and property without due process of law.

84. The aforesaid deprivations of liberty and property without due process of law, individually and in combination, violated Mrs. Elliott's rights to due process in violation of the Fourteenth Amendment of the United States Constitution, entitling her to damages pursuant to 42 U.S.C. § 1983, including punitive damages and attorneys' fees in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### (Violation Of Civil Rights Under The CNMI Constitution)

85. Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 through 84 above.

86. This Third Cause of Action is pled by Plaintiff against all Defendants except Babauta and Doe 5.

87. The actions of these Defendants deprived Mrs. Elliott of rights guaranteed by the Constitution of the Northern Mariana Islands, including but not limited to her right under Article I § 5 to due process of law and her right under Article I § 6 to equal protection of the law.

88. The conduct of the Defendants, as described herein resulted in financial and emotional damage to Mrs. Elliott, entitling her to damages, including punitive damages and attorneys' fees in an amount to be proven at trial.

3268-01-071212-second amended complaint-R1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FOURTH CAUSE OF ACTION
### (Conspiracy To Violate Civil Rights Under 42 U.S.C. § 1985)

89. Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 through 88 above.

90. This Fourth Cause of Action is pled by Plaintiff against Defendants Macaranas, Langdon and Manglona and Does 1-4 in their individual capacities.

91. In doing the acts described above, Defendants attempted to impede, obstruct or defeat the due course of justice in the CNMI with the intent to injure Plaintiff, and to deny Plaintiff the right of equal protection of laws within the meaning of 42 U.S.C. §1985(2) and (3). Said actions were due to Plaintiff's race and ethnic origin being not of NMI and/or Micronesian descent, and/or for no rational basis.

92. In so conspiring, the actions of these Defendants caused Mrs. Elliott to suffer injury and damages including emotional distress, and to incur substantial attorney fees to secure her civil rights, and she is therefore entitled, pursuant to 42 U.S.C. § 1985, to damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Assault and Battery)

93. Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 through 92 above.

3268-01-071212-second amended complaint-R1

94. This Fifth Cause of Action is pled by Plaintiff against Defendants Manglona and Doe 5.

95. Defendant Manglona, by shoving Mrs. Elliott's arm into the car, and Doe 5, by shoving her head down against the steering wheel, intended to cause, and did cause, a harmful or offensive contact with the person of Mrs. Elliott, entitling her to damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Intentional Infliction Of Emotional Distress)

96. Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 through 95 above.

97. This Sixth Cause of Action is pled by Plaintiff against all Defendants.

98. The acts of the Defendants as described above, were done willfully, maliciously outrageously, deliberately and purposefully with the intention to inflict emotional distress upon Mrs. Elliott.

99. In the alternative, these acts were done in reckless disregard of the probability of causing Mrs. Elliott emotional distress.

100.    In either event, these acts did in fact result in severe and extreme emotional distress, and she is therefore entitled to damages including punitive damages in amounts to be proven at trial.

## SEVENTH CAUSE OF ACTION
### (Negligent Infliction Of Emotional Distress)

101.    Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 through 100 above.

102.    This Seventh Cause of Action is pled by Plaintiff against all the Defendants.

103.    All Defendants' conduct violated a duty of care designed to protect Mrs. Elliott from fright and other emotional disturbance, which Defendants should have recognized as involving an unreasonable risk of bodily harm.

104.    All Defendants should have realized that their conduct involved an unreasonable risk of causing emotional distress to Mrs. Elliott, and, from facts known to them, should have realized that the distress might result in illness or bodily harm.

105.    The conduct of Defendants Babauta, Doe 5 and Manglona also created an unreasonable risk of causing bodily harm to Mrs. Elliott otherwise than by subjecting her to emotional distress.

106.    The conduct of the Defendants caused Mrs. Elliott bodily harm resulting from the internal operation of emotional distress, including severe anxiety that has made her constantly apprehensive and fearful, and has interfered with her ability to recover from her physical injuries.

107.    Having resulted in such severe and extreme emotional distress and attendant bodily harm, the actions of the Defendants have caused Mrs. Elliott damages for which she is entitled to compensation in amounts to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**(Negligence)**

108.    Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 through 107 above.

109.    This Eighth Cause of Action is pled by Plaintiff against Defendants Manglona, Langdon and Macaranas and Doe Defendants 1-4.

110.    Defendants Manglona, Langdon and Macaranas and Doe Defendants 1-4 had a duty to follow basic police procedures in investigating traffic accidents and allegations of driving while intoxicated, and not to be influenced by the ethnicity or national origin of any person involved, or other non-rational bases for action, and not to conspire to obstruct justice.

111.    Defendants breached this duty proximately causing Plaintiff to suffer injury and damages in an amount to be proven at trial.

**NINTH CAUSE OF ACTION**
**(Violation of Civil Rights Under CNMI Constitution)**

112.    Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 through 111 above

113.    This Ninth Cause of Action is pled by Plaintiff against all Defendants except Babauta and Doe 5.

114.    The actions of Defendants Manglona, Langdon and Macaranas and Doe Defendants and DPS in failing to properly train and supervise the police and corrections officers

3268-01-071212-second amended complaint-R1

of DPS deprived Plaintiff of rights guaranteed by the Constitution of the Northern Mariana Islands, including but not limited to her right under Article I, Section 5 to due process of law, equal protection under Article 1, Section 6 and her right of individual privacy under Article I, Section 10.

115.    The actions of Defendants caused Plaintiff to suffer injury and damages, and she is therefore entitled to damages in an amount to be proven at trial including attorney's fees.

**TENTH CAUSE OF ACTION**
**(Negligence)**

116.    Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 through 115 above

117.    This Tenth Cause of Action is pled by Plaintiff against Defendant DPS.

118.    DPS had a duty to train, supervise and instruct its officers not to selectively enforce DPS' procedures, policies, or CNMI laws, or to form conspiracies to obstruct justice.

119.    DPS breached this duty.

120.    DPS' conduct was a substantial factor in bringing about injuries and damages to Plaintiff.

121.    At all relevant times, Plaintiff acted reasonably under the circumstances.

122.    DPS' breach of the duty of care was the cause in fact and the proximate cause of the injury and damage to her, entitling her to damages in an amount to be proven at trial.

1

2
### ELEVENTH CAUSE OF ACTION
### (Negligence)
3

4
     123.   Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs

5
1 through 122 above.

6

7
     124.   This Eleventh Cause of Action is pled by Plaintiff against Defendant Babauta

8
only.

9

10
     125   At all relevant times, Defendant Babauta negligently and carelessly operated the

11
pick-up truck so this his vehicle collided with Plaintiff's Hyundai car (the "accident")

12
proximately causing Mrs. Elliott's physical injuries, requiring hospitalization and past and

13
future medical care, damage to her vehicle, lost wages, pain and suffering, emotional distress,

14
and loss of enjoyment of life and other injuries and damages.

15

16
     126.   At all relevant times, Mrs. Elliott exercised all due care and caution for her

17
safety and the safety of others.

18

19
     127.   Defendant Babauta at all relevant times acted with reckless and/or deliberate

20
disregard and reckless indifference to the safety of others, proximately causing the accident and

21
Mrs. Elliott's injuries and damages complained of herein, in an amount to be proven at trial but

22
including punitive damages.

23

24
### V.
### PRAYER
25

26
     WHEREFORE, Plaintiff prays for relief as follows:

27

28

1        a.  For general, consequential, statutory, special, and compensatory damages and

2        costs.

3        b.  For punitive damages in an amount to be proven at trial.

4        c.  For prejudgment interest as allowed by law.

5        d.  For attorney fees and costs of suit.

6        e.  For such other and further relief as the Court may deem appropriate.

7

Date:  December 17, 2007.

8

9                     O'CONNOR BERMAN DOTTS & BANES

10                 Attorneys for Plaintiff Ae Ja Elliott

11

12

13                By:  _/s/_____

14                    George L. Hasselback, Esq.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3268-01-071212-second amended complaint-R1