1  Braddock J. Huesman
   T#00047
2  Assistant Attorney General
   Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
3  Caller Box 10007, Capital Hill
   Saipan, MP  96950-8907
4  Telephone:    (670) 664-2341
5  Fax:          (670) 664-2349

6  Attorney for Defendants Department of Public Safety,
   Jarrod Manglona, Michael Langdon, and Anthony
7  Macaranas.

8

9
                IN THE UNITED STATES DISTRICT COURT
10
                FOR THE NORTHERN MARIANA ISLANDS
11

12
   AE JA ELLIOT PARK,                    CIVIL ACTION NO. 07-0021
13
              Plaintiff,
14
                                         **DEFENDANTS' MOTION TO DISMISS**
15         vs.                           **AND INCORPORATED MEMORANDUM**
                                         **OF POINTS AND AUTHORITIES**
16 JARROD MANGLONA, MICHAEL              **[FED. R. CIV. P. 12(b)(1) & (6)]**
   LANGDON, ANTHONY MACARANAS,
17 DEPARTMENT OF PUBLIC SAFETY
   and JUAN DOES 1-4, NORBERT            Date:       March 6, 2008
18 DUENAS BABUTA,                        Time:       9:00 a.m.
                                         Judge:      Hon. Alex R. Munson
19
              Defendants.
20

21

22

23

24

25

26

27

28

LA/576564v1

-i-

1

TABLE OF CONTENTS

2      MOTION  ……………………………………………………………………… 1

3      FACTS  ………………………………………………………………………..1

4      STANDARD OF REVIEW  …………………………………………………… 2

5      OVERVIEW  …………………………………………………………………….3

6      ARGUMENT ……………………………………………………………………… 4

7      Ms. Park's Traffic Case Does Not Entitle Her To Police Protection.
       Even If It Did, She Received All The Protection She Was Entitled To………………………4
8
            Police Protection Cases Do Not Apply ………………………………..…………....5
9
            Even If Police Protection Cases Apply, Ms. Park Received
10          The Benefit Of Police Protection …………………………………………..…………..8

11
       This Court Dismissed Ms. Park's Due Process Claims Previously.  Her Inclusion
12     Of The Same Claims Amounts To A Frivolous Pleading ……………………………….10

13
       Ms. Park Has No Valid Equal Protection or Due Process Claims.  Therefore,
14     Ms. Park Lacks Standing To Bring This Suit ……………………………….…..……..14

15     Without an Underlying 1983 Violation, Plaintiff May Not Allege a 1985
       Action on the Same Plead Facts.  ……………………………………………….…..15
16
       The Facts Alleged Do Not Show a Violation of Constitutional Rights.
17     Therefore, the DPS Defendants are entitled to Qualified Immunity ……………………..16

18     28 U.S.C. 1347(c) Allows Dismissal of Plaintiff's Remaining State Claims.
       Therefore, Ms. Park's remaining state claims should be dismissed
19     without prejudice………………………………………………………………………..…17

20     CONCLUSION ………………………………………………………………….....18

21

22

23

24

25

26

27

28

LA/576564v1

1

# TABLE OF AUTHORITIES

2

*Allen v. Wright,*
3    468 U.S. 737, 755 (1984)..................................................................................14

4    *Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
      459 U.S. 519, 526 (1983)....................................................................................3

5
      *Azul-Pacifico, Inc. v. City of Los Angeles,*
6      973 F.2d 704, 705 (9th Cir. 1992)........................................................................5

7    *Balisteri v. Pacific Police Dept.,,*
      901 F.2d 696 (9th Cir. 1990)...............................................................................5

8
      *Bailey v. Forks,*
9      688 P.2d 526 (Wash.App. 1984)..........................................................................8

10    *Barnes v. Black  ,*
      WL 257105 (W.D. Wis.)..................................................................................6, 7

11
      *Barratt v. Burlingham,*
12     492 A.2d 1219 (R.I.1985)....................................................................................8

13    *Board of Regents v. Roth,,*
      408 U.S. 564, 577 (1972)...................................................................................12

14
      *Cahill v. Liberty Mut. Ins. Co.,*
15     80 F.3d 336, 337-338 (9th Cir.1996).....................................................................2

16    *Cassettari v. Nevada County, Cal.,*
      824 F.2d 735, 739 (9th Cir.1987).........................................................................15

17
      *Commonwealth v. Bergonia,*
18     3 NMI 22 (1992)................................................................................................10

19    *Colney v. Gibson,*
      355 U.S. 41, 45-46 (1957)....................................................................................2

20
      *Cravens v. City of La Marque, Tex.*
21     2006 WL 492805 (S.D. Tex.)................................................................................7

22    *Crosby v. Town of Bethlehem,*
      90 A.D.2d 134 (1982).........................................................................................8

23
      *De Nieva v. Reyes,*
24     966 F.2d 480 (9th Cir.1992) ...............................................................................13

25    *DeShaney v. Winnebago County Dept. of Soc. Serv.'s*
      489 U.S. 189, 195-196, (1989)..............................................................................6

26
      *Doe I v. The Gap, Inc.,*
27     WL 1842389 (D.N.Mar. I. 2001)...........................................................................3

28    *Estate of Macias v. Ihde,*
      219 F.3d 1018 (9th Cir. 2000)...............................................................................5

*Everton v. Willard*
   468 So.2d 936 (Fla.1985)...........................................................................................8

*Fusilier v. Russell,*
   345 So.2d 543 (La.Ct.App. 1977).............................................................................8

*Galbraith v. County of Santa Calara,*
   307 F.3d 1119, 1126 (9th Cir. 2002)........................................................................16

*Harris v. Roderick,*
   126 F.3d 1189 (9th Cir. 1997) .................................................................................16

*Hunter v. Bryant,*
   502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)....................................17

*Ivey v. Bd of Regents of Univ. of Alaska,*
   673 F.2d 266, 268 (9th Cir. 1982)......................................................................3, 16

*Leake v. Cain,*
720 P.2d 152 (Colo.1986)..........................................................................................7

*Lehto v. City of Oxnard.,*
   171 Cal.App.3d 285 (1985).......................................................................................7

*Lindquist v. Moran,*
   662 P.2d 281 (Mont. 1983)........................................................................................8

*Lockary v. Dayfetz,*
   587 F.Supp. 631 (N.D. Cal. 1984)..........................................................................16

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555, 560 (1992)....................................................................................14, 15

*Lunini v. Grayeb,*
   395 F.3d 761 (7th Cir.2005)......................................................................................9

*McCleskey v. Kemp,*
   481 U.S. 279 (1987).....................................................................................................9

*Miller v. Continental Airlines,*
   260 F.Supp.2d 931, 935 (N.D. Cal. 2003)................................................................3

*Mitchell v. Forsyth,*
   472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)...............................16, 17

*Navarro v. Block,*
   250 F.3d 729, 732 (9th Cir. 2001)............................................................................5

*Olsen v. Idaho State Bd. of Medicine,*
   363 F.3d 916, 929 (9th Cir.2004)............................................................................16

*Ricketts v. City of Columbia,*
   36 F.3d 775 (8th Cir.1994)..................................................................................9, 15

LA/576564v1

*Richardson v. United States,*
  841 F.2d 993 (9th Cir. 1988)………………………………………………………………..11

*Roberts v. Corrothers,*
  812 F.2d 1173, 1177 (9th Cir.1987) …………………………………………………………2

*Robertson v. Dean Witter Reynolds, Inc.,*
  749 F.2d 530, 534 (9th Cir. 1984) ………………………………………………………………3

*Schutte v. Sitton,*
  729 S.W.2d 208 (Mo.Ct.App.1987)………………………………………………………..8

*Seed v. Hudson,*
  No. CIV. A. 93-00081994, WL 229096  (D.N. Mar. I.  1994) ………………………………..5, 10, 15

*Siegert v. Gilley,*
  500 U.S. 226 (1991)……………………………………………………………………17

*Shore v. Town of Stonington.,*
  444 A.2d 1379 (1982)…………………………………………………………………..7

*Slaughter-House Cases,*
  83 U.S. 36, 70 (1876)……………………………………………………………….....10

*Town of Castle Rock v. Gonzales,*
  545 U.S. 748 (2005)……………………………………….,……………………..10, 11, 13, 14, 15

*United States v. Hays,*
  515 U.S. 737, 743 (1995)……………………………………………………………….14

*United States v. Lummi Indian Tribe,*
  235 F.3d 443 (9th Cir. 2000)…………………………………………………………….11

*Woodrum v. Woodward County,*
  866 F.2d 1121, 1126 (9th Cir. 1989)……………………………………………………….15

## STATUTES AND REGULATIONS

1 CMC § 2504  ……………………………………………………………………….13
6 CMC § 3202  ……………………………………………………………………….13
NMIAC § 150-10-001  …………………………………………………………………13
NMIAC § 150-10-005(a)  ………………………………………………………………13
NMIAC § 150-10-010  …………………………………………………………………13
NMIAC § 150-10-310  …………………………………………………………………13
NMIAC § 150-10-305  …………………………………………………………………14

LA/576564v1

# RULES OF CIVIL PROCEDURE

Fed. R. Civ. Pro. 12(b)(6) ................................................................................................................ 1, 2, 3

LA/576564v1

**MOTION**

Defendants Jarrod Manglona ("Defendant Manglona"), Michael Langdon ("Defendant Langdon"), Anthony Macaranas ("Defendant Macaranas")(collectively, the "DPS Defendants"), and the Department of Public Safety ("DPS") move to dismiss Plaintiff Ae Ja Elliot-Park's ("Ms. Park") Second Amended Complaint in the above entitled action on the grounds that Ms. Park has failed to state a claim upon which relief can be granted. Defendants submit this motion pursuant to 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**FACTS**

On February 12, 2006, Ms. Park proceeded southbound along Highway 16, Papago to meet her husband for dinner. At or around 6:30 p.m., defendant Norbert Duenas Babauta ("Babauta") was proceeding northbound on the same stretch of road. Babauta crossed lanes during a turn and crashed, head-on, into Ms. Park's car.

Defendant Manglona was the first DPS officer to arrive on the scene. He called in the traffic accident and requested an ambulance and back up. Defendant Manglona then proceeded to check on both cars involved in the accident and the passengers therein. Park alleges that Babauta's truck was empty except for beer cans and that Babauta was teetering, slurring his words, smelled strongly of alcohol, and had bloodshot eyes. Ms. Park also alleges, for the first time, that Defendant Manglona, without reason, committed battery against her.

Defendant Manglona then began conducting interviews of witnesses, passengers and drivers to determine the cause of the accident. Ms. Park stated that Babauta's truck swerved into her lane and hit her head-on. It is alleged Babauta stated that he "blacked out" while driving which caused him to swerve into oncoming traffic. Defendant Magnlona did not administer a field sobriety test to Babauta. Because of injuries received during the accident, the persons involved in the accident were transported to the Commonwealth Health Center ("CHC").

1    At CHC, Ms. Park and Babauta's son were examined by Dr. Thomas Austin. Ms. Park

2   suffered lacerations on her right leg and right eyelid as well as fractures to her right wrist and leg.

3   Upon observing Babauta, Dr. Austin concluded that Babauta was intoxicated and found an

4   unnamed DPS officer who he informed that he, Dr. Austin, believed that Babauta was intoxicated.

5    At or around this time, a gentleman named Mr. Mark Williams arrived at CHC in response

6   to hearing that Ms. Park was at the hospital. He allegedly viewed Mr. Babauta passed out on a

7   hospital bed. Mr. Williams approached Defendant Manglona and informed him that Babauta was

8   drunk. Defendant Manglona told both Mr. Williams and Ms. Park that they had confused

9   Babauta with a "good Samaritan." Babauta did not receive a field sobriety test at CHC, and left

10   the hospital. Babauta was never arrested or charged with Driving While Intoxicated.

11

12                              **STANDARD OF REVIEW**

13    In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the court must

14   assume the truth of all factual allegations and must construe them in the light most favorable to

15   the non-moving party.[1] Legal conclusions, however, need not be taken as true "'merely because

16   they are cast in the form of factual allegations.'"[2]

17

18    Dismissal under Federal Rule 12(b)(6) is appropriate when "it appears beyond doubt that

19   the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[3]

20   Dismissal is warranted where the complaint lacks a cognizable legal theory or where the

21   complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.[4]

22

23

24   _____

25    [1]   *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir.1996).
    [2]   *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (quoting *Western Mining
26   Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)) (in parenthesis); *see also Clegg v. Cult
   Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).
27    [3]   *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Navarro v. Block*, 250 F.3d 729, 732 (9th
   Cir. 2001).
28    [4]   *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *Doe I v.
   The Gap, Inc.*, No. CV-01-0031, 2001 WL 1842389 *1 (D.N.Mar. I. Nov. 26, 2001).

LA/576564v1

-2-

In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged."[5] "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."[6] While only requiring a short and plain statement of the claim, FRCP 8(a)(2) is not such a liberal requirement that purely conclusory statements can survive a motion to dismiss under Rule and 12(b)(6).[7]

## OVERVIEW

Ms. Park's most recent suit is similar to the one previously dismissed by this court on November 16, 2007. In between the dismissal and the new filing, Ms. Park has discovered new and improved facts that, although heretofore unknown, allege a new defendant and new cause of action. The general narrative, however, remains similar. Ms. Park seeks an entitlement that she has no legal interest in; the arrest of another individual.

Ms. Park was injured in a car accident by a driver she alleges was drunk. Subsequent to this accident, she alleges that the DPS and the DPS Defendants failed to provide her "police protection." Ms. Park brings ten causes of action against the various DPS Defendants that include: violation of equal protection under § 1983; violation of due process under §1983; violation of equal protection and due process under the NMI Constitution; conspiracy to violate civil rights under § 1985; conspiracy to obstruct justice under §1985; battery; intentional infliction of emotional distress; negligent infliction of emotional distress; and negligence. Although when

---

[5] *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[6] *Ivey v. Bd of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

[7] *Miller v. Continental Airlines*, 260 F.Supp.2d 931, 935 (N.D. Cal. 2003).

one takes the allegations as true they may indicate a disturbing fact pattern, they fail to rise to the level of constitutional violations and thus fail to state a claim.

In the complaint's latest incarnation, Ms. Park's intent is clear; she wishes to receive compensation for the DPS Defendants' failure to arrest an allegedly intoxicated Babauta. This is clear not only from Ms. Park's alleged facts, but from her requested relief. Ms. Park now, as she did before, seeks redress for the DPS Defendants' failure to arrest Babauta. This, of course, is improper. Ms. Park's equal protection claim vis-à-vis police protection is not recognized by courts in a traffic accident setting and, therefore, must be dismissed. Ms. Park's due process claims are frivolous, barred by the U.S. Supreme Court, the law of the case and must be dismissed.

Moreover, the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations; therefore, her conspiracy claims must be dismissed. Further, because Ms. Park's claims are not based on any constitutional deprivation, she lacks standing to bring the instant suit, and as none of her constitutional rights were violated, or clearly established at any time, the DPS Defendants are entitled to qualified immunity.

Finally, Ms. Park's remaining state claims are frivolous, barred by the public duty doctrine or should be dismissed for failure to state a claim. As Ms. Park, however, has failed to state any federal cause of action, her remaining state law claims should be dismissed without prejudice under 28 U.S.C. § 1367(c).

**ARGUMENT**

I.    **Ms. Park's Traffic Case Does Not Entitle Her To Police Protection.  Even If It Did, She Received All The Protection She Was Entitled To**

Federal law requires that "a litigant complaining of a violation of a constitutional right . . . utilize 42 U.S.C. § 1983."[8]  Section 1983 requires that plaintiff prove that: "(1) a person acting under the color of state law committed the conduct at issue; and (2) the conduct deprived the Plaintiff of some right protected by the Constitution or laws of the United States."[9]  In this case, Ms. Park alleges that she was deprived her right of "police protection."

Ms. Park's newest lawsuit alleges violations of equal protection arising out of the failure of the DPS Defendants to "protect" her by arresting or taking action on Defendant Babauta.  This latest theory is fundamentally flawed due to a simple fact: police protection does not include investigation and arrest after a traffic accident.  Even if it did, however, Ms. Park's own pleadings make it clear that she received an investigation, just not an arrest.  Again, Ms. Park's entire claim boils down to an alleged failure to arrest, and this is improper.

**A.  Police Protection Cases Do Not Apply**

In her suit's prior incarnation, Ms. Park argued that the police protection domestic abuse cases, *Estate of Macias v. Ihde*,[10] *Navarro v. Block*,[11] and *Balisteri v. Pacific Police Dept.*,[12] established that "[t]here is a constitutional right . . . to have police services administered in a nondiscriminatory manner – a right that is violated when a state actor denies such protection to disfavored persons."[13]  Quite simply these types of police protection cases do not apply to Ms.

---

[8]    *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).

[9]    *Seed v. Hudson*, No. CIV. A. 93-00081994, WL 229096 at *6 (D.N. Mar. I. May 11, 1994) (citing *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir.1988)); *see also Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (holding that mere negligence cannot form the basis of a Fourteenth Amendment violation actionable under § 1983).

[10]    219 F.3d 1018, 1028 (9th Cir. 2000).

[11]    72 F.3d 712, 715-17 (9th Cir. 1996).

[12]    901 F.2d 696, 701 (9th Cir. 1990).

[13]    *Estate of Macias*, 219 F.3d at 1028 (emphasis added).

1  Park's traffic case.  This is made clear by *DeShaney v. Winnebago County Dept. of Social.*

2  *Serv's.*[14]

3      *DeShaney* held that the purpose of the constitution "was to protect the people from the

4  State, not to ensure that the State protected them from each other[.]"  Although *DeShaney* deals

5  with due process, in footnote 3 the Supreme Court recognized that "[t]he State may not, of

6  course, selectively deny its ***protective services*** to certain disfavored minorities without violating

7  the Equal Protection Clause."[15]  Protective services, as this Court noted in its dismissal order, do

8  not apply to cases like Ms. Park's.

9      Ms. Park's cause of action does not involve police protection.  It is a traffic case, and

10

11  similar traffic cases demonstrate that Ms. Park has no claim.  For example, in *Barnes v. Black,*[16]

12  Black caused a serious traffic accident when he collided into the passenger side of another vehicle

13  in which plaintiff was a passenger. Later, defendants Hamilton and Greagor, police officers,

14  responded to the accident. Although they drafted a traffic report form, defendants did not

15  investigate the accident scene completely, interview the plaintiff, or ticket Black.  Plaintiff, much

16  like Ms. Park, brought an equal protection suit against the police officers.  In examining the equal

17  protection claim, the court held that:

18

19

20              Even if [the Court] were to assume that petitioner had alleged that
              he was treated differently in some way, it is unclear that petitioner
21             sustained an actual injury as a result of the alleged shortcomings of
              respondents Hamilton and Greagor. A party must have sustained
22             some sort of injury as a result of the alleged wrongdoing to have
              standing to bring a claim. *Lujan v. Defenders of Wildlife,*
23             504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
              From petitioner's alleged facts, it appears that respondent Black has
24             been held at fault for the accident. It is not clear what additional
              advantage petitioner would have gained had respondents Hamilton
25             and Greagor conducted a more thorough investigation or ticketed
              respondent Black. Petitioner's complaint does not make out a claim
26

27  _____
   [14]  489 U.S. 189 (1989)
28  [15]  *See Walker v. Shepard,* 107 F.Supp.2d at 183.
   [16]  2004 WL 257105 (W.D. Wis.).

LA/576564v1

-6-

1
2

under the equal protection clause or indicate that he would have standing to bring such a claim. Therefore, he will be denied leave to proceed on this claim.[17]

3
4

In *Cravens v. City of La Marque, Tex.,*[18] plaintiffs brought suit because a police officer

5
6

failed to take Abner Cravens into custody for driving while intoxicated even though the officer,

just like the DPS Defendants, allegedly had probable cause to do so. Plaintiffs' claims, just like

7
8

Ms. Park's,[19] rested on the assertion that "[b]ut for [Cravens's] status as an African-American,

Officer Ontiveros would have properly arrested [him] in order to protect him." The court found

9
10

that this claim was unsupported and conclusory.[20]  The court went on to find that there were no

facts in the complaint to support an equal protection violation and that there were no facts

11
12

supporting an inference that the decision not to arrest Cravens was based on race.[21]  Finally, the

court noted that plaintiffs should not use an equal protection argument to circumvent the

13
14

*DeShaney* principal that the Constitution doesn't guarantee protection from private actors.[22]

15
16

*Barnes* and *Cravens* are nearly identical to Ms. Park's cause of action, and it is clear that

her equal protection claims, like those in *Barnes* and *Cravens,* should be dismissed.  Dismissal is

17
18

also compelled when one notices that case law is legion with instances where police officers failed

to arrest drunk individuals.  Failing to arrest drunk drivers or failing to investigate, however, does

19
20

not result in liability.[23]  Even if, however, this Court were to find that "police protection" applies

21

22

    [17]   *Barnes,* 2004 WL 257105 at 2

23

    [18]   2006 WL 492805 (S.D. Tex.)

    [19]   *See* Plaintiff's FIRST AMENDED PETITION, ¶ 37.

24

    [20]   *Barnes,* WL 492805 at 8.

25

    [21]   *Id.*

    [22]   *Id.*

26

    [23]   Although CNMI courts have not ruled on the issue, the weight of US authority is that neither a law enforcement officer nor a governmental entity is liable to an individual injured by a drunk driver whom the government failed to restrain or arrest.  The DPS Defendants note, however, that these cases are not quite analogous with Ms. Park's case-- the plaintiffs in these cases had the opportunity to argue causation and still lost.  *See, e.g., Lehto v. City of Oxnard* 171 Cal.App.3d 285, 289-291, 217 Cal.Rptr. 450 (1985); *Leake v. Cain,* 720 P.2d 152 (Colo.1986); *Shore v. Town of Stonington,* 187 Conn. 147, 444 A.2d 1379

27
28

in cases involving traffic accidents, the point is moot because Ms. Park received the benefit of police protection.

      B.  Even If Police Protection Cases Apply, Ms. Park Received The Benefit Of Police Protection

      Throughout her Original, First and Second Amended Complaints, Ms. Park unequivocally demonstrates that she received the benefits of police protection. For example, Ms. Park alleges that Defendant Manglona: (1) alerted DPS Central Command to the accident;[24] (2) requested an ambulance;[25] (3) checked on both cars;[26] and (4) conducted interviews of witnesses, drivers and passengers.[27] Further, Ms. Park claims that Defendants Macaranas and Langdon conducted interviews and directed traffic while agents of the CNMI attended to her medical needs.[28] Ms. Park was not ignored and Ms. Park was not treated differently then any other accident victim. To be clear, Ms. Park received all the benefits of police protection to which she was entitled. Her current equal protection claim, first styled as the DPS Defendants failure to "take action," is not that she was denied protection but that she was denied an arrest and prosecution. Put plainly, Ms. Park is angry that Defendant Babuta was not arrested. She has no standing, however, to pursue such a claim.

---

(1982); *Everton v. Willard,* 468 So.2d 936 (Fla.1985); *Fusilier v. Russell,* 345 So.2d 543 (La.Ct.App.), cert. denied, 347 So.2d 261 (La.1977); *Schutte v. Sitton,* 729 S.W.2d 208 (Mo.Ct.App.1987); *Lindquist v. Moran,* 203 Mont. 268, 662 P.2d 281 (1983); *Crosby v. Town of Bethlehem,* 90 A.D.2d 134, 457 N.Y.S.2d 618 (1982); *Barratt v. Burlingham,* 492 A.2d 1219 (R.I.1985); *Bailey v. Forks,* 38 Wash.App. 656, 688 P.2d 526 (1984).

[24]  Second Amended Complaint, ¶ 23.
[25]  *Id.*
[26]  *Id.* at 24.
[27]  *Id.* at 29.
[28]  *Id.* at 31.

For a very long time, courts have consistently expressed an unwillingness to intrude upon a police officer's discretion to decide when to effectuate an arrest.[29]  In her Second Amended Complaint, indeed in all her complaints, Ms. Park conflates "arrest" with "police protection," and this is improper.  For example, in *Lunini v. Grayeb,* the former lover of a city councilman brought an action against police officers alleging that they violated his equal protection rights by failing to arrest the councilman for domestic violence.  In dismissing the claim the Seventh Circuit Court of Appeals held that:

> on this record it appears highly doubtful that any alleged police
> misjudgments (if misjudgments there were) took on constitutional
> proportions. While we take pains to affirm the baseline principle
> that police support and protection must be afforded to all citizens on a
> non-discriminatory basis, we decline to take the unprecedented step
> of implying a general constitutional police *duty* to arrest certain
> individuals during a response to an isolated domestic incident.
> Such a ruling would threaten to turn every police house call
> into a potential federal constitutional lawsuit.[30]

Ms. Park, like the plaintiff in *Lunini,* received the benefits of police protection.  In *Lunini,* the police arrived,[31] took statements,[32] and declined to arrest anyone.[33]  Ms. Park has alleged that the police arrived, took statements, and declined to arrest anyone.  The Seventh Circuit declined to, in its words, "turn every police house call into a potential federal constitutional lawsuit."  With her lawsuit, Ms. Park is asking the same thing, to turn every police traffic incident in the CNMI

---

[29]    *See, e.g., Lunini v. Grayeb*, 395 F.3d 761, 770 (7th Cir.2005) (finding that an officer's failure to arrest an individual involved "an ordinary exercise of police discretion" and thus it was "not obvious how the police officers' failure to arrest ... implicates [the plaintiff's] rights under the Equal Protection Clause in the first place"); *Ricketts v. City of Columbia*, 36 F.3d 775, 780 (8th Cir.1994) (noting that an "officer's discretion to determine when to arrest" is "a fundamental part of our criminal system"); *see also McCleskey v. Kemp*, 481 U.S. 279, 297, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (noting, as a general matter, that "discretion is essential to the criminal justice process").

[30]    *Lunini*, 395 F.3d at 772 (emphasis in original)(citations omitted).

[31]    *Id.,* at 764.

[32]    *Id.,* at 764-5.

[33]    *Id.,* at 765.

into a federal constitutional lawsuit.  This Court should decline the invitation.

Equal protection cases are founded on the troubled history of this nation.  The equal protection clause in particular and the "Civil War Amendments" in general were designed to end the caste system designed by states that had been in rebellion.[34]  The Equal Protection clause protects people from police action or inaction, but is reserved for serious invasions of individual rights.  Ms. Park utterly fails to plead that she did not receive police protection, and instead demonstrates that she did not receive the "benefit" of having somebody else arrested.  This, of course, she is not entitled to as demonstrated by legions of case law.  Her Equal Protection claims should be dismissed.

II.    **This Court Dismissed Ms. Park's Due Process Claims Previously.  Her Inclusion Of The Same Claims Amounts To A Frivolous Pleading.**

Ms. Park's due process claims are identical to the claims previously dismissed by this Court or rest upon the same legal theory that was previously rejected by this Court.  Again, even assuming that every allegation contained in Plaintiff's Second Amended Complaint is true, there can be no cause of action against the DPS Defendants for violations of due process either under the U.S. or NMI Constitutions.[35]

At the very least, section 1983 demands that Ms. Park plead that the DPS Defendants deprived her of "some right protected by the Constitution or laws of the United States."[36]  When a State has not explicitly created a "personal entitlement" to some benefit, there is no property interest and thus no procedural due process violation.[37]  The legal question, then, is whether Ms. Park had a recognized property interest in, that is, legal entitlement to, or personal interest in, an

---

[34]    *Slaughter-House Cases,*  83 U.S. 36, 70 (1876).
[35]    *See Commonwealth v. Bergonia,* 3 NMI 22 (1992) ("We will apply Article I, § 5 using the same analysis as for the Fourteenth Amendment.").
[36]    *Seed*, 1994 WL 229096 at *6 (citing *Leer*, 844 F.2d at 632-33).
[37]    *See Town of Castle Rock, Colorado v. Gonzales,* 545 U.S. 748 (2005).

1  outcome guaranteed in the Victim's Bill of Rights or the myriad statues and regulations she cites.

2  As there is no "precisely defined means of enforcement"[38] contained in any statute or regulation

3  cited by Ms. Park, the Supreme Court in *Castle Rock* and this Court have provided a clear

4  answer: "no."[39]

5

6  As the parties know, in its nine page order dismissing Ms. Park's claims, this Court

7  dismissed Ms. Park's due process claims on legal grounds rather than the factual grounds.  In its

8  analysis, the Court found that Ms. Park's due process claim regarding the CNMI Victims' Bill of

9  Rights misconstrued the law.[40]  Ms. Park's new complaint, as it pertains to due process, is nothing

10 more then an attempt at a "do over" that ignores the "law of the case" doctrine.

11

12 "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an

13 issue previously decided by the same court, or a higher court, in the same case."[41]  For the law of

14 the case doctrine to apply, "the issue in question must have been 'decided explicitly or by

15 necessary implication in [the] previous disposition.'"[42]  Because Ms. Park made the same Due

16 Process/Victims' Bill of Rights allegations in a consecutive series of pleadings, this Court should

17

---

18  [38]    Order Granting Defendants' Motion to Dismiss; Civil Action No. 07-00021.

19  [39]    *Castle Rock v. Gonzales* bars Ms. Park's claims.  In *Castle Rock v. Gonzales*,[39] Ms.

20  Gonzales filed a section 1983 action after her estranged husband abducted and murdered their

    three children.  Ms. Gonzales possessed a restraining order that included a preprinted "NOTICE

21  TO LAW ENFORCEMENT OFFICIALS," which ordered the officials in part to "use every

    reasonable means to enforce this restraining order."  The Court held that Gonzales did not have a

22  legitimate property interest in the enforcement, and therefore the Town did not violate the Due

    Process Clause when police officers failed to enforce the order.  Despite the forceful language of

23  the notice to law enforcement officials, the Court reasoned that the state of Colorado had not

    created a clear mandate of police action, noting that it is "***common sense that all police officers***

24  ***must use some discretion in deciding when and where to enforce city ordinances***."

    Consequently, Gonzales had no constitutionally protected property interest in the enforcement of

25  the restraining order, and the Town did not violate her procedural due process rights.  This Court

    has come to the same conclusion regarding Ms. Park's claims.

26  [40]    Order Granting Defendants' Motion to Dismiss; Civil Action No. 07-00021, p. 4.

27  [41]    *Richardson v. United States,* 841 F.2d 993, 996 (9th Cir. 1988) (citations omitted).

28  [42]    *United States v. Lummi Indian Tribe,* 235 F.3d 443, 452 (9th Cir. 2000).

dismiss the claim in accordance with the previous decisions.    Ms. Park, however, didn't stop at

the CNMI Victims' Bill of Rights.  Ms. Park now claims a constitutionally protected interest in

various CNMI laws and police regulations.

Ms. Park claims that she has "a liberty and property interest" in the following statutes and

regulations: 1 CMC § 2504; 6 CMC § 3202; NMIAC § 150-10-710; NMIAC § 150-10-745;

NMIAC § 150-10-760; NMIAC § 150-10-765; NMIAC § 150-10-845; and NMIAC § 150-10-

850; NMIAC § 150-10-850.  Ms. Park's claims regarding these statutes and regulations

completely ignore this Court's dismissal order.    Just as with the CNMI Victims' Bill of Rights,

Ms. Park has absolutely no "legitimate claim of entitlement to [any property interest]"[43] in these

statues and regulations.  Specifically, as this Court held, Ms. Park lacks any "precisely defined

means of enforcement" with these statutes and regulations.  This is so because these statutes and

regulations are either organizational, criminal, or employment based.

Even if Ms. Park could point to a "precisely defined means of enforcement[,]" and she

cannot, she would not have a property interest because of the nature of the statutes.  For example,

1 CMC § 2504 is an organizational statute that describes the duties of the Department of Public

Safety.  It is a laundry list of responsibilities and public policy goals the legislature has for the

Department.  Ms. Park claims, apparently, that she has a liberty and property interest in this

statute.  The statute, however, contains the ***responsibilities of the Department*** not individual

responsibilities for Defendants Manglona, Langdon, and Macaranas.  Ms. Park, however, seeks

relief from ***individual defendants*** under a statute that does not charge them with any duties.  This

is, of course, absurd.  To begin with, the duties contained in 1 CMC § 2504 are tasked to the

Department, not individuals in the Department.  Therefore, even if this statute provided a

---

[43]    *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).

property or liberty interest to Ms. Park, and it doesn't, the action would have to be filed against the Department, not an individual. Filing against the Department, however, is impossible as it is not a person for the purpose of a section 1983 suit.[44] Ms. Park has no property or liberty interest in 1 CMC § 2504.

Ms. Park's attempt to claim a property and liberty interest in 6 CMC § 3202 is even more frivolous. Title 6, Division 3, Chapter 2 of the Commonwealth Code is entitled "Offenses against the Commonwealth." 6 CMC § 3202, entitled "Misconduct in Public Office," is a criminal statute that provides, upon criminal conviction, up to one year in jail and/or a fine of up to $1000. Clearly, criminal prosecution is the remedy available in this statute, not a private right of action. This statute, like all the other statutes Ms. Park cites, does not provide her with a "precisely defined means of enforcement."

The remaining regulations Ms. Park claims to have a liberty or property interest in are all, without exception, employment rules and regulations of the Department of Public Safety. The only individuals who have any property interest in these regulations are the employees of the Department, not general members of the public. This is clear from the fact that the regulations also contain provisions for: a code of ethics;[45] the definition of an employee;[46] an oath of office;[47] and the manner of dress on duty.[48] Again, none of the provisions cited in the Second Amended Complaint contain the requisite enforcement mechanism required by this Court and the U.S. Supreme Court.[49] Moreover, if Ms. Park is correct and these regulations do create property and

---

[44] *De Nieva v. Reyes,* 966 F.2d 480 (9th Cir.1992)
[45] NMIAC § 150-10-001
[46] NMIAC § 150-10-005(a)
[47] NMIAC § 150-10-010
[48] NMIAC § 150-10-310
[49] *See Town of Castle Rock v. Gonzales,* 545 U.S. 748 (2005); Order Granting Defendants' Motion to Dismiss; Civil Action No. 07-00021.

1   liberty interests for the general public, it is conceivable that this Court will see an surge in due

2   process claims regarding citizens seeking damages due to officers failing to keep their uniforms

3   "neat, clean and well pressed[.]"[50]

4

5   **III.    Ms. Park Has No Valid Equal Protection or Due Process Claims.  Therefore, Ms. Park lacks standing to bring this suit.**

6          Ms. Park's suit should be dismissed because she has not suffered "an invasion of a

7   concrete and particularized legally protected interest."[51]   All Ms. Park has alleged in her suit is a

8   generalized grievance: the DPS Defendants failed to arrest Babauta.  Ms. Park attempts to mask

9   this request by calling it "police protection," but as demonstrated in her own pleadings, Ms. Park

10  received police protection, just not an arrest.  Moreover, as demonstrated above, Ms. Park has no

11  individual interest in the prosecution of another.  She has only a general interest, just as much as

12  any member of the general public, in seeing Babauta arrested.  The Supreme Court has repeatedly

13  refused to recognize a generalized grievance against allegedly illegal government conduct as

14  sufficient to confer standing.[52]  The Supreme Court requires that even if a government actor

15  discriminates on the basis of race, the resulting injury "accords a basis for standing only to those

16  persons who are personally denied equal treatment."[53]  Ms. Park hasn't alleged that she was

17  denied the protective services of the police regarding accident investigation, witness interviews,

18  medical attention and emergency services, she has only alleged that Babauta was not arrested.  As

19  discussed above, however, the failure to arrest an individual does not implicate the due process

20  clause in either a substantive or procedural way.[54]  For these reasons, Ms. Park's suit should be

21  dismissed because she has not suffered "an invasion of a concrete and particularized legally

22

23

24

25  _____

26  [50]   NMIAC § 150-10-305
    [51]   *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).
27  [52]   *United States v. Hays,* 515 U.S. 737, 743 (1995).
    [53]   *Allen v. Wright,* 468 U.S. 737, 755 (1984) (internal quotation marks omitted).
28  [54]   *See Town of Castle Rock,* 545 U.S., at 768.

LA/576564v1

1   protected interest."[55]

2   **IV.    Without an Underlying §1983 Violation, Plaintiff May Not Allege a §1985 Action on the Same Pled Facts.**

3

4       As demonstrated above, police protection cases don't extend to Ms. Park's claims.

5   Even if they did however, she received all the police protection to which she was entitled.

6   Further, Ms. Park has no right to have anyone arrested, or to have the police take action[56] as

7   this is a purely discretionary act.[57]  Ms. Park has failed to state an equal protection claim and

8   she has failed to state, either procedurally or substantively, a due process claim.  The

9   absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim

10  predicated on the same allegations.[58]  The Ninth Circuit precludes plaintiffs from bringing

11

12  conspiracy claims for violating equal protection and due process when there is no underlying

13  violation of equal protection and due process.[59]  As demonstrated above, Ms. Park cannot

14  show that the DPS Defendants' acts "deprived [her] of some right protected by the

15  Constitution or laws of the United States."[60]    Further, even if the Ninth Circuit allowed Ms.

16  Park to state a claim for conspiracy, and it does not, she has failed to do so.

17

18      When pleading a conspiracy a "plaintiff must make some showing of an agreement or

19  a meeting of the minds on the part of defendants to violate his constitutional rights."[61]

20  Conspiracy allegations must be supported by material facts and not merely conclusory

21

22      [55]  *Lujan v. Defenders of Wildlife,* 504 U.S. at 560.

23      [56]  *See Town of Castle Rock,* 545 U.S., at 768.

24      [57]  *Ricketts,* 36 F.3d at 780 (noting that an "officer's discretion to determine when to arrest" is "a fundamental part of our criminal system")

25      [58]  *Cassettari v. Nevada County, Cal.,* 824 F.2d 735, 739 (9th Cir.1987) (citing *Dooley v. Reiss,* 736 F.2d 1392, 1395 (9th Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984)).

26      [59]  *See, e.g., Id.*

27      [60]  *Seed,* 1994 WL 229096 at *6 (citing *Leer,* 844 F.2d at 632-33).

28      [61]  *Woodrum v. Woodward County,* 866 F.2d 1121, 1126 (9th Cir. 19889) (citing *Fonda v. Gray,* 707 F.2d 435 (9th Cir. 1983))

LA/576564v1

1    statements.[62]  "Vague and conclusory allegations are not sufficient to support a claim for

2    civil rights violations based on conspiracy."[63]  This heightened pleading standard no longer

3    applies to civil rights actions in general,[64] but it does still apply to conspiracy claims.[65]

4            The heightened pleading standard requires that a conspiracy claim must be pled with

5    particularity as to which defendants conspired, how they conspired and how the conspiracy

6    led to a deprivation of plaintiff's constitutional rights.[66]  Ms. Park's pleadings fail to meet

7    this standard.  All Ms. Park has pled are conclusory facts.  For example, Ms. Park alleges

8    that: the DPS Defendants formed a conspiracy;[67] all defendants conspired to destroy

9    evidence;[68] and obstruct justice.[69]  These are all conclusory allegations which assume the

10   ultimate issue.  Further, Ms. Park has only made a conclusory allegation that the alleged acts

11   were race related but provides no facts.  Moreover, since she has no personal right to see

12   anyone prosecuted, she was no more injured by this "obstruction of justice" than any other

13   individual on Saipan.

14
15   ## V.    The Facts Alleged Do Not Show a Violation of Constitutional Rights.  Therefore, the DPS Defendants are entitled to Qualified Immunity

16           Qualified immunity is "an entitlement not to stand trial or face the other burdens of

17   litigation."[70]  The privilege is "an *immunity from suit* rather than a mere defense to liability;

18   and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to

19   trial."  As a result, "[the U.S. Supreme Court has] repeatedly . . . stressed the importance of

---

[62]  *Lockary v. Dayfetz,* 587 F.Supp. 631 (N.D. Cal. 1984).

[63]  *Ivey,* 673 F.2d at 268.

[64]  *see Galbraith v. County of Santa Calara,* 307 F.3d 1119, 1126 (9th Cir. 2002)

[65]  *Olsen v. Idaho State Bd. of Medicine,* 363 F.3d 916, 929 (9th Cir.2004).

[66]  *See Harris v. Roderick,* 126 F.3d 1189, 1196 (9th Cir. 1997).

[67]  *See* Second Amended Petition, ¶ 46.

[68]  *See* Second Amended Petition, ¶ 61.

[69]  *See* Second Amended Petition, ¶ 61.

[70]  *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

resolving immunity questions at the earliest possible stage in litigation."[71]  The Supreme

Court has held that the denial of a claim of qualified immunity is immediately appealable

under the collateral order doctrine.[72]

        A court asked to rule on qualified immunity must consider this threshold question:

"Taken in the light most favorable to the party asserting the injury, do the facts alleged show

the officer's conduct violated a constitutional right?"[73]  As demonstrated frequently in earlier

sections of the brief, Ms. Park has failed to allege she was denied equal protection of any

right protected by the U.S. Constitution, and the U.S. Supreme Court has concluded that

individuals have no protected interest in having a third party arrested.  Therefore, as the

Plaintiff's own alleged facts fail to show the DPS Defendants violated any of Ms. Park's

constitutional rights, the DPS Defendants are immune and the suit must be dismissed.

## VI.    28 U.S.C. 1347(c) Allows Dismissal of Plaintiff's Remaining State Claims. Therefore, Ms. Park's remaining state claims should be dismissed without prejudice.

        Ms. Park's state law claims should be dismissed outright as they are alleged

constitutional violations, which fail to state a claim, or they are negligence actions which are

barred by the public duty doctrine.  28 U.S.C. § 1367(c), however, provides that district

courts may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or

complex issue of State law, (2) the claim substantially predominates over the claim or claims

over which the district court has original jurisdiction, (3) the district court has dismissed all

claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are

other compelling reasons for declining jurisdiction."  In the absence of federal question or

---

[71]  *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) *(per curiam).*
[72]  *Mitchell,* 472 U.S. at 526.
[73]  *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

1   diversity jurisdiction, it is within the Court's discretion to decline to exercise supplemental

2   jurisdiction and to dismiss Ms. Park's remaining claims based upon local law without

3   prejudice pursuant to 28 U.S.C. § 1367(c).[74]  As discussed above, Ms. Park's claims express

4   her disappointment and unhappiness that DPS officers failed to arrest a drunk driver.  Ms.

5   Park's disappointment, however, does not constitute a section 1983 action.  Even if this

6   Court were to find that there is any question that Ms. Park has any valid local law claims,

7   these claims would involve novel questions of local law.  Accordingly, the first three, if not

8   all four factors contained in the statute would militate in favor of dismissing Ms. Park's local

9   law claims without prejudice.  This would allow these local law questions, which

10  predominate, to be decided in the first instance by the local courts.

11
                                   **CONCLUSION**
12

13          WHEREFORE, based upon the foregoing, this honorable Court should grant, in whole or

14  in part, DPS Defendants' Motion to Dismiss and that they be awarded attorneys' fees.

15

16

17

18

19

20

21

22

23

24

25

26

27
    _____
28  [74]   *See Dyack v. Northern Mariana Islands,* 317 F.3d 1030, 1037-38 (9th Cir. 2003); *Bryan v. Adventist Health Sys./West,* 289 F.3d 1162, 1169 (9th Cir. 2002).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted
Thursday, January 31, 2008
OFFICE OF THE ATTORNEY GENERAL


_____/S/_____
Braddock Huesman, T#00047


CERTIFICATE OF SERVICE

**I certify that a copy of Defendants' Motion to Dismiss was served on George Hasselback, who is the attorney in charge for plaintiff, Ms. Park, and whose address is PO Box 501969, Saipan, MP 96950, (670) 234-5684, by electronic filing on Thursday, January 31, 2008.**


__/s/_____
**Braddock J. Huesman**

1    Braddock J. Huesman
     T#00047
2    Assistant Attorney General
     Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
3    Caller Box 10007, Capital Hill
     Saipan, MP  96950-8907
4    Telephone:    (670) 664-2341
5    Fax:          (670) 664-2349

6    Attorney for Defendants Department of Public Safety,
     Jarrod Manglona, Michael Langdon, and Anthony
7    Macaranas.

8

9                    IN THE UNITED STATES DISTRICT COURT

10                    FOR THE NORTHERN MARIANA ISLANDS

11

12

13   AE JA ELLIOT PARK,                      CIVIL ACTION NO. 07-0021

14            Plaintiff,

15        vs.                                **DEFENDANTS' MOTION TO DISMISS
                                             AND INCORPORATED MEMORANDUM
16   JARROD MANGLONA, MICHAEL                OF POINTS AND AUTHORITIES
     LANGDON, ANTHONY MACARANAS,             [FED. R. CIV. P. 12(b)(1) & (6)]**
17   DEPARTMENT OF PUBLIC SAFETY
     and JUAN DOES 1-4, NORBERT              Date:      March 6, 2008
18   DUENAS BABUTA,                          Time:      9:00 a.m.
                                             Judge:     Hon. Alex R. Munson
19            Defendants.

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2    MOTION ................................................................................................. 1

3    FACTS .....................................................................................................1

4    STANDARD OF REVIEW ...................................................................... 2

5    OVERVIEW ............................................................................................3

6    ARGUMENT ........................................................................................... 4

7    Ms. Park's Traffic Case Does Not Entitle Her To Police Protection.
     Even If It Did, She Received All The Protection She Was Entitled To............................4

8            Police Protection Cases Do Not Apply ........................................................5

9
     Even If Police Protection Cases Apply, Ms. Park Received
10   The Benefit Of Police Protection .......................................................................8

11
     This Court Dismissed Ms. Park's Due Process Claims Previously.  Her Inclusion
12   Of The Same Claims Amounts To A Frivolous Pleading ...........................................10

13
     Ms. Park Has No Valid Equal Protection or Due Process Claims.  Therefore,
14   Ms. Park Lacks Standing To Bring This Suit .......................................................14

15   Without an Underlying 1983 Violation, Plaintiff May Not Allege a 1985
     Action on the Same Plead Facts.  ....................................................................15

16
     The Facts Alleged Do Not Show a Violation of Constitutional Rights.
17   Therefore, the DPS Defendants are entitled to Qualified Immunity ............................16

18   28 U.S.C. 1347(c) Allows Dismissal of Plaintiff's Remaining State Claims.
     Therefore, Ms. Park's remaining state claims should be dismissed
19   without prejudice....................................................................................17

20   CONCLUSION .......................................................................................18

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

*Allen v. Wright,*
  468 U.S. 737, 755 (1984)...............................................................................................14

3

*Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
  459 U.S. 519, 526 (1983)................................................................................................ 3

4

5

*Azul-Pacifico, Inc. v. City of Los Angeles,*
  973 F.2d 704, 705 (9th Cir. 1992)...................................................................................5

6

7

*Balisteri v. Pacific Police Dept.,,*
  901 F.2d 696 (9th Cir. 1990).........................................................................................5

8

*Bailey v. Forks,*
  688 P.2d 526 (Wash.App. 1984).....................................................................................8

9

10

*Barnes v. Black ,*
  WL 257105 (W.D. Wis.)............................................................................................6, 7

11

*Barratt v. Burlingham,*
  492 A.2d 1219 (R.I.1985)...............................................................................................8

12

13

*Board of Regents v. Roth,,*
  408 U.S. 564, 577 (1972).............................................................................................12

14

*Cahill v. Liberty Mut. Ins. Co.,*
  80 F.3d 336, 337-338 (9th Cir.1996).............................................................................2

15

16

*Cassettari v. Nevada County, Cal.,*
  824 F.2d 735, 739 (9th Cir.1987)................................................................................15

17

*Commonwealth v. Bergonia,*
  3 NMI 22 (1992)..........................................................................................................10

18

19

*Colney v. Gibson,*
  355 U.S. 41, 45-46 (1957).............................................................................................2

20

*Cravens v. City of La Marque, Tex.*
  2006 WL 492805 (S.D. Tex.).........................................................................................7

21

22

*Crosby v. Town of Bethlehem,*
  90 A.D.2d 134 (1982).....................................................................................................8

23

*De Nieva v. Reyes,*
  966 F.2d 480 (9th Cir.1992) .......................................................................................13

24

25

*DeShaney v. Winnebago County Dept. of Soc. Serv.'s*
  489 U.S. 189, 195-196, (1989)......................................................................................6

26

*Doe I v. The Gap, Inc.,*
  WL 1842389 (D.N.Mar. I. 2001)...................................................................................3

27

*Estate of Macias v. Ihde,*
  219 F.3d 1018 (9th Cir. 2000).......................................................................................5

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Everton v. Willard*
  468 So.2d 936 (Fla.1985)……………………………………………………………8

*Fusilier v. Russell,*
  345 So.2d 543 (La.Ct.App. 1977)……………………………………………..…8

*Galbraith v. County of Santa Calara,*
  307 F.3d 1119, 1126 (9th Cir. 2002)……………………………………………16

*Harris v. Roderick,*
  126 F.3d 1189 (9th Cir. 1997) ………………………………………………...16

*Hunter v. Bryant,*
  502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)……………………17

*Ivey v. Bd of Regents of Univ. of Alaska,*
  673 F.2d 266, 268 (9th Cir. 1982)……………………………………………3, 16

*Leake v. Cain,*
  720 P.2d 152 (Colo.1986)………………………………………………………..7

*Lehto v. City of Oxnard.,*
  171 Cal.App.3d 285 (1985)………………………………………………………7

*Lindquist v. Moran,*
  662 P.2d 281 (Mont. 1983)……………………………………………………..…8

*Lockary v. Dayfetz,*
  587 F.Supp. 631 (N.D. Cal. 1984)………………………………………………16

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555, 560 (1992)……………………………………………………14, 15

*Lunini v. Grayeb,*
  395 F.3d 761 (7th Cir.2005)………………………………………………………9

*McCleskey v. Kemp,*
  481 U.S. 279 (1987)………………………………………………………………9

*Miller v. Continental Airlines,*
  260 F.Supp.2d 931, 935 (N.D. Cal. 2003)……………………………………...…3

*Mitchell v. Forsyth,*
  472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)………………16, 17

*Navarro v. Block,*
  250 F.3d 729, 732 (9th Cir. 2001)………………………………………………5

*Olsen v. Idaho State Bd. of Medicine,*
  363 F.3d 916, 929 (9th Cir.2004)………………………………………………16

*Ricketts v. City of Columbia,*
  36 F.3d 775 (8th Cir.1994)………………………………………………9, 15

*Richardson v. United States,*
   841 F.2d 993 (9th Cir. 1988)................................................................................11

*Roberts v. Corrothers,*
   812 F.2d 1173, 1177 (9th Cir.1987) ..........................................................................2

*Robertson v. Dean Witter Reynolds, Inc.,*
   749 F.2d 530, 534 (9th Cir. 1984) .............................................................................3

*Schutte v. Sitton,*
   729 S.W.2d 208 (Mo.Ct.App.1987).............................................................................8

*Seed v. Hudson,*
   No. CIV. A. 93-00081994, WL 229096 (D.N. Mar. I.  1994) ....................................5, 10, 15

*Siegert v. Gilley,*
   500 U.S. 226 (1991).................................................................................................17

*Shore v. Town of Stonington.,*
   444 A.2d 1379 (1982)...............................................................................................7

*Slaughter-House Cases,*
   83 U.S. 36, 70 (1876).............................................................................................10

*Town of Castle Rock v. Gonzales,*
   545 U.S. 748 (2005)............................................,..........................10, 11, 13, 14, 15

*United States v. Hays,*
   515 U.S. 737, 743 (1995)........................................................................................14

*United States v. Lummi Indian Tribe,*
   235 F.3d 443 (9th Cir. 2000)....................................................................................11

*Woodrum v. Woodward County,*
   866 F.2d 1121, 1126 (9th Cir. 1989)..........................................................................15

## STATUTES AND REGULATIONS

1 CMC § 2504  ......................................................................................................13
6 CMC § 3202  ......................................................................................................13
NMIAC § 150-10-001  ............................................................................................13
NMIAC § 150-10-005(a)  ........................................................................................13
NMIAC § 150-10-010  ............................................................................................13
NMIAC § 150-10-310  ............................................................................................13
NMIAC § 150-10-305  ............................................................................................14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# RULES OF CIVIL PROCEDURE

Fed. R. Civ. Pro. 12(b)(6) .................................................................................................... 1, 2, 3

**MOTION**

Defendants Jarrod Manglona ("Defendant Manglona"), Michael Langdon ("Defendant Langdon"), Anthony Macaranas ("Defendant Macaranas")(collectively, the "DPS Defendants"), and the Department of Public Safety ("DPS") move to dismiss Plaintiff Ae Ja Elliot-Park's ("Ms. Park") Second Amended Complaint in the above entitled action on the grounds that Ms. Park has failed to state a claim upon which relief can be granted. Defendants submit this motion pursuant to 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**FACTS**

On February 12, 2006, Ms. Park proceeded southbound along Highway 16, Papago to meet her husband for dinner. At or around 6:30 p.m., defendant Norbert Duenas Babauta ("Babauta") was proceeding northbound on the same stretch of road. Babauta crossed lanes during a turn and crashed, head-on, into Ms. Park's car.

Defendant Manglona was the first DPS officer to arrive on the scene. He called in the traffic accident and requested an ambulance and back up. Defendant Manglona then proceeded to check on both cars involved in the accident and the passengers therein. Park alleges that Babauta's truck was empty except for beer cans and that Babauta was teetering, slurring his words, smelled strongly of alcohol, and had bloodshot eyes. Ms. Park also alleges, for the first time, that Defendant Manglona, without reason, committed battery against her.

Defendant Manglona then began conducting interviews of witnesses, passengers and drivers to determine the cause of the accident. Ms. Park stated that Babauta's truck swerved into her lane and hit her head-on. It is alleged Babauta stated that he "blacked out" while driving which caused him to swerve into oncoming traffic. Defendant Magnlona did not administer a field sobriety test to Babauta. Because of injuries received during the accident, the persons involved in the accident were transported to the Commonwealth Health Center ("CHC").

LA/576564v1

1    At CHC, Ms. Park and Babauta's son were examined by Dr. Thomas Austin. Ms. Park

2    suffered lacerations on her right leg and right eyelid as well as fractures to her right wrist and leg.

3    Upon observing Babauta, Dr. Austin concluded that Babauta was intoxicated and found an

4    unnamed DPS officer who he informed that he, Dr. Austin, believed that Babauta was intoxicated.

5    At or around this time, a gentleman named Mr. Mark Williams arrived at CHC in response

6    to hearing that Ms. Park was at the hospital. He allegedly viewed Mr. Babauta passed out on a

7    hospital bed. Mr. Williams approached Defendant Manglona and informed him that Babauta was

8    drunk. Defendant Manglona told both Mr. Williams and Ms. Park that they had confused

9    Babauta with a "good Samaritan." Babauta did not receive a field sobriety test at CHC, and left

10    the hospital. Babauta was never arrested or charged with Driving While Intoxicated.

## STANDARD OF REVIEW

In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the court must

assume the truth of all factual allegations and must construe them in the light most favorable to

the non-moving party.[1] Legal conclusions, however, need not be taken as true "'merely because

they are cast in the form of factual allegations.'"[2]

Dismissal under Federal Rule 12(b)(6) is appropriate when "it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[3]

Dismissal is warranted where the complaint lacks a cognizable legal theory or where the

complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.[4]

---

[1]    *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir.1996).

[2]    *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (quoting *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)) (in parenthesis); *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

[3]    *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

[4]    *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *Doe I v. The Gap, Inc.*, No. CV-01-0031, 2001 WL 1842319 *1 (D.N.Mar. I. Nov. 26, 2001).

In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged."[5]  "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."[6]  While only requiring a short and plain statement of the claim, FRCP 8(a)(2) is not such a liberal requirement that purely conclusory statements can survive a motion to dismiss under Rule and 12(b)(6).[7]

## OVERVIEW

Ms. Park's most recent suit is similar to the one previously dismissed by this court on November 16, 2007.  In between the dismissal and the new filing, Ms. Park has discovered new and improved facts that, although heretofore unknown, allege a new defendant and a new cause of action.  The general narrative, however, remains similar.  Ms. Park seeks an entitlement that she has no legal interest in; the arrest of another individual.

Ms. Park was injured in a car accident by a driver she alleges was drunk.  Subsequent to this accident, she alleges that the DPS and the DPS Defendants failed to provide her "police protection."  Ms. Park brings ten causes of action against the various DPS Defendants that include: violation of equal protection under § 1983; violation of due process under §1983; violation of equal protection and due process under the NMI Constitution; conspiracy to violate civil rights under § 1985; conspiracy to obstruct justice under §1985; battery; intentional infliction of emotional distress; negligent infliction of emotional distress; and negligence.  Although when

---

[5]  *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[6]  *Ivey v. Bd of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

[7]  *Miller v. Continental Airlines*, 260 F.Supp.2d 931, 935 (N.D. Cal. 2003).

1    one takes the allegations as true they may indicate a disturbing fact pattern, they fail to rise to the

2    level of constitutional violations and thus fail to state a claim.

3              In the complaint's latest incarnation, Ms. Park's intent is clear; she wishes to receive

4    compensation for the DPS Defendants' failure to arrest an allegedly intoxicated Babauta. This is

5    clear not only from Ms. Park's alleged facts, but from her requested relief. Ms. Park now, as she

6    did before, seeks redress for the DPS Defendants' failure to arrest Babauta. This, of course, is

7    improper. Ms. Park's equal protection claim vis-à-vis police protection is not recognized by

8    courts in a traffic accident setting and, therefore, must be dismissed. Ms. Park's due process

9    claims are frivolous, barred by the U.S. Supreme Court and the law of the case. The claims

10   should be dismissed.

11            Moreover, the absence of a section 1983 deprivation of rights precludes a section 1985

12   conspiracy claim predicated on the same allegations; therefore, her conspiracy claims must be

13   dismissed. Further, because Ms. Park's claims are not based on any constitutional deprivation,

14   she lacks standing to bring the instant suit, and as none of her constitutional rights were violated,

15   or clearly established at any time, the DPS Defendants are entitled to qualified immunity.

16            Finally, Ms. Park's remaining state claims are frivolous, barred by the public duty doctrine

17   or should be dismissed for failure to state a claim. As Ms. Park, however, has failed to state any

18   federal cause of action, her remaining state law claims should be dismissed without prejudice

19   under 28 U.S.C. § 1367(c).

**ARGUMENT**

I.    **Ms. Park's Traffic Case Does Not Entitle Her To Police Protection.  Even If It Did, She Received All The Protection She Was Entitled To**

Federal law requires that "a litigant complaining of a violation of a constitutional right . . . utilize 42 U.S.C. § 1983."[8]  Section 1983 requires that plaintiff prove that: "(1) a person acting under the color of state law committed the conduct at issue; and (2) the conduct deprived the Plaintiff of some right protected by the Constitution or laws of the United States."[9]  In this case, Ms. Park alleges that she was deprived her right of "police protection."

Ms. Park's newest lawsuit alleges violations of equal protection arising out of the failure of the DPS Defendants to "protect" her by arresting or taking action on Defendant Babauta.  This latest theory is fundamentally flawed due to a simple fact: police protection does not include investigation and arrest after a traffic accident.  Even if it did, however, Ms. Park's own pleadings make it clear that she received an investigation, just not an arrest.  Again, Ms. Park's entire claim boils down to an alleged failure to arrest, and this is improper.

**A.  Police Protection Cases Do Not Apply**

In her suit's prior incarnation, Ms. Park argued that the police protection domestic abuse cases, *Estate of Macias v. Ihde*,[10] *Navarro v. Block*,[11] and *Balisteri v. Pacific Police Dept.*,[12] established that "[t]here is a constitutional right . . . to have police services administered in a nondiscriminatory manner – a right that is violated when a state actor denies such protection to disfavored persons."[13]  Quite simply these types of police protection cases do not apply to Ms.

---

[8]    *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).

[9]    *Seed v. Hudson*, No. CIV. A. 93-00081994, WL 229096 at *6 (D.N. Mar. I. May 11, 1994) (citing *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir.1988)); *see also Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (holding that mere negligence cannot form the basis of a Fourteenth Amendment violation actionable under § 1983).

[10]    219 F.3d 1018, 1028 (9th Cir. 2000).

[11]    72 F.3d 712, 715-17 (9th Cir. 1996).

[12]    901 F.2d 696, 701 (9th Cir. 1990).

[13]    *Estate of Macias,* 219 F.3d at 1028 (emphasis added).

1    Park's traffic case.  This is made clear by *DeShaney v. Winnebago County Dept. of Social.*

2    *Serv's.*[14]

3        *DeShaney* held that the purpose of the constitution "was to protect the people from the

4    State, not to ensure that the State protected them from each other[.]"  Although *DeShaney* deals

5    with due process, in footnote 3 the Supreme Court recognized that "[t]he State may not, of

6    course, selectively deny its ***protective services*** to certain disfavored minorities without violating

7    the Equal Protection Clause."[15]  Protective services, as this Court noted in its dismissal order, do

8

9    not apply to cases like Ms. Park's.

10        Ms. Park's cause of action does not involve police protection.  It is a traffic case, and

11   similar traffic cases demonstrate that Ms. Park has no claim.  For example, in *Barnes v. Black,*[16]

12   Black caused a serious traffic accident when he collided into the passenger side of another vehicle

13   in which plaintiff was a passenger. Later, defendants Hamilton and Greagor, police officers,

14   responded to the accident. Although they drafted a traffic report form, defendants did not

15   investigate the accident scene completely, interview the plaintiff, or ticket Black.  Plaintiff, much

16   like Ms. Park, brought an equal protection suit against the police officers.  In examining the equal

17   protection claim, the court held that:

18

19

20            Even if [the Court] were to assume that petitioner had alleged that
              he was treated differently in some way, it is unclear that petitioner
21            sustained an actual injury as a result of the alleged shortcomings of
              respondents Hamilton and Greagor. A party must have sustained
22            some sort of injury as a result of the alleged wrongdoing to have
              standing to bring a claim. *Lujan v. Defenders of Wildlife,*
23            504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
              From petitioner's alleged facts, it appears that respondent Black has
24            been held at fault for the accident. It is not clear what additional
              advantage petitioner would have gained had respondents Hamilton
25            and Greagor conducted a more thorough investigation or ticketed
              respondent Black. Petitioner's complaint does not make out a claim
26

27   _____
     [14]   489 U.S. 189 (1989)
28   [15]   *See Walker v. Shepard,* 107 F.Supp.2d at 183.
     [16]   2004 WL 257105 (W.D. Wis.).

under the equal protection clause or indicate that he would have standing to bring such a claim. Therefore, he will be denied leave to proceed on this claim.[17]

In *Cravens v. City of La Marque, Tex.,*[18] plaintiffs brought suit because a police officer failed to take Abner Cravens into custody for driving while intoxicated even though the officer, just like the DPS Defendants, allegedly had probable cause to do so. Plaintiffs' claims, just like Ms. Park's,[19] rested on the assertion that "[b]ut for [Cravens's] status as an African-American, Officer Ontiveros would have properly arrested [him] in order to protect him." The court found that this claim was unsupported and conclusory.[20]  The court went on to find that there were no facts in the complaint to support an equal protection violation and that there were no facts supporting an inference that the decision not to arrest Cravens was based on race.[21]  Finally, the court noted that plaintiffs should not use an equal protection argument to circumvent the *DeShaney* principal that the Constitution doesn't guarantee protection from private actors.[22]

*Barnes* and *Cravens* are nearly identical to Ms. Park's cause of action, and it is clear that her equal protection claims, like those in *Barnes* and *Cravens,* should be dismissed.  Dismissal is also compelled when one notices that case law is legion with instances where police officers failed to arrest drunk individuals.  Failing to arrest drunk drivers or failing to investigate, however, does not result in liability.[23]  Even if, however, this Court were to find that "police protection" applies

---

[17]  *Barnes,* 2004 WL 257105 at 2
[18]  2006 WL 492805 (S.D. Tex.)
[19]  *See* Plaintiff's FIRST AMENDED PETITION, ¶ 37.
[20]  *Barnes,* WL 492805 at 8.
[21]  *Id.*
[22]  *Id.*
[23]  Although CNMI courts have not ruled on the issue, the weight of US authority is that neither a law enforcement officer nor a governmental entity is liable to an individual injured by a drunk driver whom the government failed to restrain or arrest.  The DPS Defendants note, however, that these cases are not quite analogous with Ms. Park's case-- the plaintiffs in these cases had the opportunity to argue causation and still lost.  *See, e.g., Lehto v. City of Oxnard* 171 Cal.App.3d 285, 289-291, 217 Cal.Rptr. 450 (1985); *Leake v. Cain,* 720 P.2d 152 (Colo.1986); *Shore v. Town of Stonington,* 187 Conn. 147, 444 A.2d 1379

LA/576564v1

1    in cases involving traffic accidents, the point is moot because Ms. Park received the benefit of

2    police protection.

3        B.  Even If Police Protection Cases Apply, Ms. Park Received The Benefit Of Police
             Protection
4

5            Throughout her Original, First and Second Amended Complaints, Ms. Park unequivocally

6    demonstrates that she received the benefits of police protection.  For example, Ms. Park alleges

7    that Defendant Manglona: (1) alerted DPS Central Command to the accident;[24]  (2) requested an

8    ambulance;[25] (3) checked on both cars;[26] and (4) conducted interviews of witnesses, drivers and

9    passengers.[27]  Further, Ms. Park claims that Defendants Macaranas and Langdon conducted

10   interviews and directed traffic while agents of the CNMI attended to her medical needs.[28]  Ms.

11   Park was not ignored and Ms. Park was not treated differently then any other accident victim.  To

12   be clear, Ms. Park received all the benefits of police protection to which she was entitled.  Her

13   current equal protection claim, first styled as the DPS Defendants failure to "take action," is not

14   that she was denied protection but that she was denied an arrest and prosecution.  Put plainly, Ms.

15   Park is angry that Defendant Babuta was not arrested.  She has no standing, however, to pursue

16   such a claim.

17

18

19

20

21

22

23   (1982); *Everton v. Willard,* 468 So.2d 936 (Fla.1985); *Fusilier v. Russell,* 345 So.2d 543 (La.Ct.App.),
     *cert. denied,* 347 So.2d 261 (La.1977); *Schutte v. Sitton,* 729 S.W.2d 208 (Mo.Ct.App.1987); *Lindquist v.*
24   *Moran,* 203 Mont. 268, 662 P.2d 281 (1983); *Crosby v. Town of Bethlehem,* 90 A.D.2d 134, 457
     N.Y.S.2d 618 (1982); *Barratt v. Burlingham,* 492 A.2d 1219 (R.I.1985); *Bailey v. Forks,* 38 Wash.App.
25   656, 688 P.2d 526 (1984).

26       [24]  Second Amended Complaint, ¶ 23.
         [25]  *Id.*
27       [26]  *Id.* at 24.
         [27]  *Id.* at 29.
28       [28]  *Id.* at 31.

For a very long time, courts have consistently expressed an unwillingness to intrude upon a police officer's discretion to decide when to effectuate an arrest.[29]  In her Second Amended Complaint, indeed in all her complaints, Ms. Park conflates "arrest" with "police protection," and this is improper.  For example, in *Lunini v. Grayeb,* the former lover of a city councilman brought an action against police officers alleging that they violated his equal protection rights by failing to arrest the councilman for domestic violence.  In dismissing the claim the Seventh Circuit Court of Appeals held that:

> on this record it appears highly doubtful that any alleged police
> misjudgments (if misjudgments there were) took on constitutional
> proportions. While we take pains to affirm the baseline principle
> that police support and protection must be afforded to all citizens on a
> non-discriminatory basis, we decline to take the unprecedented step
> of implying a general constitutional police *duty* to arrest certain
> individuals during a response to an isolated domestic incident.
> Such a ruling would threaten to turn every police house call
> into a potential federal constitutional lawsuit.[30]

Ms. Park, like the plaintiff in *Lunini,* received the benefits of police protection.  In *Lunini,* the police arrived,[31] took statements,[32] and declined to arrest anyone.[33]  Ms. Park has alleged that the police arrived, took statements, and declined to arrest anyone.  The Seventh Circuit declined to, in its words, "turn every police house call into a potential federal constitutional lawsuit."  With her lawsuit, Ms. Park is asking the same thing, to turn every police traffic incident in the CNMI

---

[29]   *See, e.g., Lunini v. Grayeb*, 395 F.3d 761, 770 (7th Cir.2005) (finding that an officer's failure to arrest an individual involved "an ordinary exercise of police discretion" and thus it was "not obvious how the police officers' failure to arrest ... implicates [the plaintiff's] rights under the Equal Protection Clause in the first place"); *Ricketts v. City of Columbia*, 36 F.3d 775, 780 (8th Cir.1994) (noting that an "officer's discretion to determine when to arrest" is "a fundamental part of our criminal system"); *see also McCleskey v. Kemp*, 481 U.S. 279, 297, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (noting, as a general matter, that "discretion is essential to the criminal justice process").

[30]   *Lunini*, 395 F.3d at 772 (emphasis in original)(citations omitted).

[31]   *Id.,* at 764.

[32]   *Id.,* at 764-5.

[33]   *Id.,* at 765.

into a federal constitutional lawsuit.  This Court should decline the invitation.

Equal protection cases are founded on the troubled history of this nation.  The equal protection clause in particular and the "Civil War Amendments" in general were designed to end the caste system designed by states that had been in rebellion.[34]  The Equal Protection clause protects people from police action or inaction, but is reserved for serious invasions of individual rights.  Ms. Park utterly fails to plead that she did not receive police protection, and instead demonstrates that she did not receive the "benefit" of having somebody else arrested.  This, of course, she is not entitled to as demonstrated by legions of case law.  Her Equal Protection claims should be dismissed.

II.     **This Court Dismissed Ms. Park's Due Process Claims Previously.  Her Inclusion Of The Same Claims Amounts To A Frivolous Pleading.**

Ms. Park's due process claims are identical to the claims previously dismissed by this Court or rest upon the same legal theory that was previously rejected by this Court.  Again, even assuming that every allegation contained in Plaintiff's Second Amended Complaint is true, there can be no cause of action against the DPS Defendants for violations of due process either under the U.S. or NMI Constitutions.[35]

At the very least, section 1983 demands that Ms. Park plead that the DPS Defendants deprived her of "some right protected by the Constitution or laws of the United States."[36]  When a State has not explicitly created a "personal entitlement" to some benefit, there is no property interest and thus no procedural due process violation.[37]  The legal question, then, is whether Ms. Park had a recognized property interest in, that is, legal entitlement to, or personal interest in, an

---

[34]   *Slaughter-House Cases,*  83 U.S. 36, 70 (1876).
[35]   *See Commonwealth v. Bergonia,* 3 NMI 22 (1992) ("We will apply Article I, § 5 using the same analysis as for the Fourteenth Amendment.").
[36]   *Seed*, 1994 WL 229096 at *6 (citing *Leer*, 844 F.2d at 632-33).
[37]   *See Town of Castle Rock, Colorado v. Gonzales,* 545 U.S. 748 (2005).

outcome guaranteed in the Victim's Bill of Rights or the myriad statues and regulations she cites. As there is no "precisely defined means of enforcement"[38] contained in any statute or regulation cited by Ms. Park, the Supreme Court in *Castle Rock* and this Court have provided a clear answer: "no."[39]

As the parties know, in its nine page order dismissing Ms. Park's claims, this Court dismissed Ms. Park's due process claims on legal grounds rather than the factual grounds. In its analysis, the Court found that Ms. Park's due process claim regarding the CNMI Victims' Bill of Rights misconstrued the law.[40] Ms. Park's new complaint, as it pertains to due process, is nothing more then an attempt at a "do over" that ignores the "law of the case" doctrine.

"Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."[41] For the law of the case doctrine to apply, "the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'"[42] Because Ms. Park made the same Due Process/Victims' Bill of Rights allegations in a consecutive series of pleadings, this Court should

---

[38]   Order Granting Defendants' Motion to Dismiss; Civil Action No. 07-00021.

[39]   *Castle Rock v. Gonzales* bars Ms. Park's claims.  In *Castle Rock v. Gonzales*, Ms. Gonzales filed a section 1983 action after her estranged husband abducted and murdered their three children.  Ms. Gonzales possessed a restraining order that included a preprinted "NOTICE TO LAW ENFORCEMENT OFFICIALS," which ordered the officials in part to "use every reasonable means to enforce this restraining order."  The Court held that Gonzales did not have a legitimate property interest in the enforcement, and therefore the Town did not violate the Due Process Clause when police officers failed to enforce the order.  Despite the forceful language of the notice to law enforcement officials, the Court reasoned that the state of Colorado had not created a clear mandate of police action, noting that it is "***common sense that all police officers must use some discretion in deciding when and where to enforce city ordinances***." Consequently, Gonzales had no constitutionally protected property interest in the enforcement of the restraining order, and the Town did not violate her procedural due process rights.  This Court has come to the same conclusion regarding Ms. Park's claims.

[40]   Order Granting Defendants' Motion to Dismiss; Civil Action No. 07-00021, p. 4.

[41]   *Richardson v. United States,* 841 F.2d 993, 996 (9th Cir. 1988) (citations omitted).

[42]   *United States v. Lummi Indian Tribe,* 235 F.3d 443, 452 (9th Cir. 2000).

1   dismiss the claim in accordance with the previous decision.   Ms. Park, however, didn't stop at the

2   CNMI Victims' Bill of Rights.  Ms. Park now claims a constitutionally protected interest in

3   various CNMI laws and police regulations.

4        Ms. Park claims that she has "a liberty and property interest" in the following statutes and

5   regulations: 1 CMC § 2504; 6 CMC § 3202; NMIAC § 150-10-710; NMIAC § 150-10-745;

6   NMIAC § 150-10-760; NMIAC § 150-10-765; NMIAC § 150-10-845; and NMIAC § 150-10-

7   850; NMIAC § 150-10-850.  Ms. Park's claims regarding these statutes and regulations

8   completely ignore this Court's dismissal order.   Just as with the CNMI Victims' Bill of Rights,

9   Ms. Park has absolutely no "legitimate claim of entitlement to [any property interest]"[43] in these

10  statues and regulations.  Specifically, as this Court held, Ms. Park lacks any "precisely defined

11  means of enforcement" with these statutes and regulations.  This is so because these statutes and

12  regulations are either organizational, criminal, or employment based.

13       Even if Ms. Park could point to a "precisely defined means of enforcement[,]" and she

14  cannot, she would not have a property interest because of the nature of the statutes.  For example,

15  1 CMC § 2504 is an organizational statute that describes the duties of the Department of Public

16  Safety.  It is a laundry list of responsibilities and public policy goals the legislature has for the

17  Department.  Ms. Park claims, apparently, that she has a liberty and property interest in this

18  statute.  The statute, however, contains the ***responsibilities of the Department*** not individual

19  responsibilities for Defendants Manglona, Langdon, and Macaranas.  Ms. Park, however, seeks

20  relief from ***individual defendants*** under a statute that does not charge them with any duties.  This

21  is, of course, absurd.  To begin with, the duties contained in 1 CMC § 2504 are tasked to the

22  Department, not individuals in the Department.  Therefore, even if this statute provided a

---

[43]   *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).

1   property or liberty interest to Ms. Park, and it doesn't, the action would have to be filed against

2   the Department, not an individual.  Filing against the Department, however, is impossible as it is

3   not a person for the purpose of a section 1983 suit.[44]  Ms. Park has no property or liberty interest

4   in 1 CMC § 2504.

5

6          Ms. Park's attempt to claim a property and liberty interest in 6 CMC § 3202 is even more

7   frivolous.  Title 6, Division 3, Chapter 2 of the Commonwealth Code is entitled "Offenses against

8   the Commonwealth."  6 CMC § 3202, entitled "Misconduct in Public Office," is a criminal statute

9   that provides, upon criminal conviction, up to one year in jail and/or a fine of up to $1000.

10  Clearly, criminal prosecution is the remedy available in this statute, not a private right of action.

11  This statute, like all the other statutes Ms. Park cites, does not provide her with a "precisely

12  defined means of enforcement."

13

14         The remaining regulations Ms. Park claims to have a liberty or property interest in are all,

15  without exception, employment rules and regulations of the Department of Public Safety.  The

16  only individuals who have any property interest in these regulations are the employees of the

17  Department, not general members of the public.  This is clear from the fact that the regulations

18  also contain provisions for: a code of ethics;[45] the definition of an employee;[46] an oath of office;[47]

19  and the manner of dress on duty.[48]  Again, none of the provisions cited in the Second Amended

20  Complaint contain the requisite enforcement mechanism required by this Court and the U.S.

21  Supreme Court.[49]  Moreover, if Ms. Park is correct and these regulations do create property and

22

23

24  ───────────────────

25    [44]  *De Nieva v. Reyes,* 966 F.2d 480 (9th Cir.1992)

26    [45]  NMIAC § 150-10-001
      [46]  NMIAC § 150-10-005(a)
27    [47]  NMIAC § 150-10-010
      [48]  NMIAC § 150-10-310
28    [49]  *See Town of Castle Rock v. Gonzales,* 545 U.S. 748 (2005); Order Granting Defendants'
    Motion to Dismiss; Civil Action No. 07-00021.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

liberty interests for the general public, it is conceivable that this Court will see a surge in due process claims regarding citizens seeking damages due to officers failing to keep their uniforms "neat, clean and well pressed[.]"[50]

### III.    Ms. Park Has No Valid Equal Protection or Due Process Claims.  Therefore, Ms. Park lacks standing to bring this suit.

Ms. Park's suit should be dismissed because she has not suffered "an invasion of a concrete and particularized legally protected interest."[51]  All Ms. Park has alleged in her suit is a generalized grievance: the DPS Defendants failed to arrest Babauta.  Ms. Park attempts to mask this request by calling it "police protection," but as demonstrated in her own pleadings, Ms. Park received police protection, just not an arrest.  Moreover, as demonstrated above, Ms. Park has no individual interest in the prosecution of another.  She has only a general interest, just as much as any member of the general public, in seeing Babauta arrested.  The Supreme Court has repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct as sufficient to confer standing.[52]  The Supreme Court requires that even if a government actor discriminates on the basis of race, the resulting injury "accords a basis for standing only to those persons who are personally denied equal treatment."[53]  Ms. Park hasn't alleged that she was denied the protective services of the police regarding accident investigation, witness interviews, medical attention and emergency services, she has only alleged that Babauta was not arrested.  As discussed above, however, the failure to arrest an individual does not implicate the due process clause in either a substantive or procedural way.[54]  For these reasons, Ms. Park's suit should be dismissed because she has not suffered "an invasion of a concrete and particularized legally

---

[50]  NMIAC § 150-10-305
[51]  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).
[52]  *United States v. Hays,* 515 U.S. 737, 743 (1995).
[53]  *Allen v. Wright,* 468 U.S. 737, 755 (1984) (internal quotation marks omitted).
[54]  *See Town of Castle Rock,* 545 U.S., at 768.

1    protected interest."[55]

2    **IV.    Without an Underlying §1983 Violation, Plaintiff May Not Allege a §1985 Action**
3    **on the Same Pled Facts.**

4    As demonstrated above, police protection cases don't extend to Ms. Park's claims.

5    Even if they did however, she received all the police protection to which she was entitled.

6    Further, Ms. Park has no right to have anyone arrested[56] as this is a purely discretionary

7    act.[57]  Ms. Park has failed to state an equal protection claim and she has failed to state, either

8    procedurally or substantively, a due process claim.  The absence of a section 1983

9    deprivation of rights precludes a section 1985 conspiracy claim predicated on the same

10    allegations.[58]  The Ninth Circuit precludes plaintiffs from bringing conspiracy claims for

11    violating equal protection and due process when there is no underlying violation of equal

12    protection and due process.[59]  As demonstrated above, Ms. Park cannot show that the DPS

13    Defendants' acts "deprived [her] of some right protected by the Constitution or laws of the

14    United States."[60]    Further, even if the Ninth Circuit allowed Ms. Park to state a claim for

16    conspiracy, and it does not, she has failed to do so.

17    When pleading a conspiracy a "plaintiff must make some showing of an agreement or

18    a meeting of the minds on the part of defendants to violate his constitutional rights."[61]

19    Conspiracy allegations must be supported by material facts and not merely conclusory

---

22    [55]    *Lujan v. Defenders of Wildlife,* 504 U.S. at 560.

23    [56]    *See Town of Castle Rock,* 545 U.S., at 768.

24    [57]    *Ricketts,* 36 F.3d at 780 (noting that an "officer's discretion to determine when to arrest" is "a fundamental part of our criminal system")

25    [58]    *Cassettari v. Nevada County, Cal.,* 824 F.2d 735, 739 (9th Cir.1987) (citing *Dooley v. Reiss,* 736 F.2d 1392, 1395 (9th Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984)).

26    [59]    *See, e.g., Id.*

27    [60]    *Seed,* 1994 WL 229096 at *6 (citing *Leer,* 844 F.2d at 632-33).

28    [61]    *Woodrum v. Woodward County,* 866 F.2d 1121, 1126 (9th Cir. 19889) (citing *Fonda v. Gray,* 707 F.2d 435 (9th Cir. 1983))

1    statements.[62]  "Vague and conclusory allegations are not sufficient to support a claim for

2    civil rights violations based on conspiracy."[63]  This heightened pleading standard no longer

3    applies to civil rights actions in general,[64] but it does still apply to conspiracy claims.[65]

4            The heightened pleading standard requires that a conspiracy claim must be pled with

5    particularity as to which defendants conspired, how they conspired and how the conspiracy

6    led to a deprivation of plaintiff's constitutional rights.[66]  Ms. Park's pleadings fail to meet

7    this standard.  All Ms. Park has pled are conclusory facts.  For example, Ms. Park alleges

8    that: the DPS Defendants formed a conspiracy;[67] all defendants conspired to destroy

9    evidence;[68] and obstruct justice.[69]  These are all conclusory allegations which assume the

10   ultimate issue.  Further, Ms. Park has only made a conclusory allegation that the alleged acts

11   were race related but provides no facts.  Moreover, since she has no personal right to see

12   anyone prosecuted, she was no more injured by this "obstruction of justice" than any other

13   individual on Saipan.

16   **V.    The Facts Alleged Do Not Show a Violation of Constitutional Rights.  Therefore,
         the DPS Defendants are entitled to Qualified Immunity**

18           Qualified immunity is "an entitlement not to stand trial or face the other burdens of

19   litigation."[70]  The privilege is "an *immunity from suit* rather than a mere defense to liability;

20   and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to

21   trial." As a result, "[the U.S. Supreme Court has] repeatedly . . . stressed the importance of

---

[62]  *Lockary v. Dayfetz,* 587 F.Supp. 631 (N.D. Cal. 1984).

[63]  *Ivey,* 673 F.2d at 268.

[64]  *see Galbraith v. County of Santa Calara,* 307 F.3d 1119, 1126 (9th Cir. 2002)

[65]  *Olsen v. Idaho State Bd. of Medicine,* 363 F.3d 916, 929 (9th Cir.2004).

[66]  *See Harris v. Roderick,* 126 F.3d 1189, 1196 (9th Cir. 1997).

[67]  *See* Second Amended Petition, ¶ 46.

[68]  *See* Second Amended Petition, ¶ 61.

[69]  *See* Second Amended Petition, ¶ 61.

[70]   *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

1    resolving immunity questions at the earliest possible stage in litigation."[71]  The Supreme

2    Court has held that the denial of a claim of qualified immunity is immediately appealable

3    under the collateral order doctrine.[72]

4

5        A court asked to rule on qualified immunity must consider this threshold question:

6    "Taken in the light most favorable to the party asserting the injury, do the facts alleged show

7    the officer's conduct violated a constitutional right?"[73]  As demonstrated frequently in earlier

8    sections of the brief, Ms. Park has failed to allege she was denied equal protection of any

9    right protected by the U.S. Constitution, and the U.S. Supreme Court has concluded that

10   individuals have no protected interest in having a third party arrested.  Therefore, as the

11   Plaintiff's own alleged facts fail to show the DPS Defendants violated any of Ms. Park's

12

13   constitutional rights, the DPS Defendants are immune and the suit must be dismissed.

14   **VI.   28 U.S.C. 1347(c) Allows Dismissal of Plaintiff's Remaining State Claims.**
         **Therefore, Ms. Park's remaining state claims should be dismissed without**
15       **prejudice.**

16       Ms. Park's state law claims should be dismissed outright as they are alleged

17   constitutional violations, which fail to state a claim, or they are negligence actions which are

18   barred by the public duty doctrine.  28 U.S.C. § 1367(c), however, provides that district

19   courts may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or

20   complex issue of State law, (2) the claim substantially predominates over the claim or claims

21   over which the district court has original jurisdiction, (3) the district court has dismissed all

22   claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are

23

24   other compelling reasons for declining jurisdiction."  In the absence of federal question or

25

26       [71]  *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) *(per*
     *curiam).*

27       [72]  *Mitchell,* 472 U.S. at 526.

28       [73]  *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

1    diversity jurisdiction, it is within the Court's discretion to decline to exercise supplemental

2    jurisdiction and to dismiss Ms. Park's remaining claims based upon local law without

3    prejudice pursuant to 28 U.S.C. § 1367(c).[74]  As discussed above, Ms. Park's claims express

4    her disappointment and unhappiness that DPS officers failed to arrest a drunk driver.  Ms.

5    Park's disappointment, however, does not constitute a section 1983 action.  Even if this

6    Court were to find that there is any question that Ms. Park has any valid local law claims,

7    these claims would involve novel questions of local law.  Accordingly, the first three, if not

8    all four factors contained in the statute would militate in favor of dismissing Ms. Park's local

9    law claims without prejudice.  This would allow these local law questions, which

10   predominate, to be decided in the first instance by the local courts.

11   
12

13                                         **CONCLUSION**

14          WHEREFORE, based upon the foregoing, this honorable Court should grant, in whole or

15   in part, DPS Defendants' Motion to Dismiss and that they be awarded attorneys' fees.

16

17

18

19

20

21

22

23

24

25

26

27
          [74]  *See Dyack v. Northern Mariana Islands,* 317 F.3d 1030, 1037-38 (9th Cir. 2003); *Bryan*
28   *v. Adventist Health Sys./West,* 289 F.3d 1162, 1169 (9th Cir. 2002).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted
Thursday, January 31, 2008
OFFICE OF THE ATTORNEY GENERAL


_____/S/_____
Braddock Huesman, T#00047




CERTIFICATE OF SERVICE


**I certify that a copy of Defendants' Motion to Dismiss was served on George Hasselback, who is the attorney in charge for plaintiff, Ms. Park, and whose address is PO Box 501969, Saipan, MP  96950, (670) 234-5684, by electronic filing on Thursday, January 31, 2008.**


___/s/_____
**Braddock J. Huesman**