1  Braddock J. Huesman
   T#00047
2  Assistant Attorney General
   Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
3  Caller Box 10007, Capital Hill
   Saipan, MP  96950-8907
4  Telephone:   (670) 664-2341
5  Fax:              (670) 664-2349

6  Attorney for Defendants Department of Public Safety,
   Jarrod Manglona, Michael Langdon, and Anthony
7  Macaranas.

8
9
10                    IN THE UNITED STATES DISTRICT COURT

11                    FOR THE NORTHERN MARIANA ISLANDS

12

13  AE JA ELLIOT PARK,                     CIVIL ACTION NO. 07-0021

14           Plaintiff,

15       vs.                               **DEFENDANTS' REPLY TO PLAITIFF'S OPOSITION TO THE MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

16  JARROD MANGLONA, MICHAEL
    LANGDON, ANTHONY MACARANAS,
17  DEPARTMENT OF PUBLIC SAFETY
    and JUAN DOES 1-4, NORBERT            Date:    April 10, 2008
18  DUENAS BABUTA,                        Time:    8: 30 a.m.
                                          Judge:   Hon. Alex R. Munson
19           Defendants.
20
21
22
23
24
25
26
27
28

LA/576564v1

-i-

## ARGUMENT

**I. Ms. Park's Equal Protection Claims Should Be Dismissed.**

Ms. Park continues to complain that the DPS Defendants characterize her suit as the failure to arrest an individual. Simultaneously, she continues to conflate the withdrawal of police protection with arrest. The facts in this case, for the most part, have not changed.[1] Ms. Park, however, continues to claim she was damaged by the police officers not "investigating" and arresting Mr. Babauta. Her complaint is that there was no sobriety test and no arrest. That is all. There is no recognized equal protection claim for a failure to arrest. Moreover, the nature of her case, a random traffic accident that involved an investigation but no sobriety check and no arrest, precludes the application of the equal protection doctrine.

Ms. Park maintains that "[t]here is a constitutional right . . . to have police services administered in a nondiscriminatory manner – a right that is violated when a state actor denies such protection to disfavored persons."[2] This is a true statement of the law. Ms. Park, however, attempts to bootstrap her traffic accident case on to domestic abuse cases[3] as well as police protection race violence cases.[4] Quite simply these types of police protection cases do not apply to Ms. Park's traffic case.

The equal protection clause in particular and the "Civil War Amendments" in general were designed to end the caste system designed by states that had been in rebellion.[5] The Equal Protection clause protects people from police action or inaction, but is reserved for serious invasions of individual rights. Ms. Park suffered no such invasion and has not alleged she

---

[1] In between the dismissal and her newest filing, Ms. Park has discovered new and improved facts that allege a new defendant, a new cause of action, and, curiously, more details regarding her similarly situated status.

[2] *Estate of Macias v. Ihde,* 219 F.3d 1018, 1028 (9th Cir. 2000) (emphasis added).

[3] *See Estate of Macias,* 219 F. 3d at 1018; and *Navarro v. Block,* 72 F.3d 712, 715-17 (9th Cir. 1996).

[4] *Roman v. City of Reading*, 257 F.Supp. 799 (E.D. Pa. 2003); and *Hawk v. Perillo,* 642 F.Supp. 380 (E.D. Ill. 1986).

[5] *Slaughter-House Cases,* 83 U.S. 36, 70 (1876).

suffered any such violation.

The case most on point in this matter is the previously discussed *Barnes v. Black.*[6] In that case, the court, while dismissing the case on the grounds that plaintiff failed to allege he was treated differently from similarly situated individual, went on to say the following:

> A party must have sustained some sort of injury as a result of the alleged wrongdoing to have standing to bring a claim. From petitioner's alleged facts, it appears that respondent Black has been held at fault for the accident. It is not clear what additional advantage petitioner would have gained had respondents Hamilton and Greagor conducted a more thorough investigation or ticketed respondent Black. Petitioner's complaint does not make out a claim under the equal protection clause or indicate that he would have standing to bring such a claim. Therefore, he will be denied leave to proceed on this claim.[7]

Ms. Park has not alleged how she would benefit from Mr. Babauta's sobriety check or arrest. Instead, she claims that the failure of the police to perform a sobriety check and arrest is an injury in and of itself.[8] This is an incorrect reading of the law.

For example, in *Roman v. City of Reading,*[9] *Hawk v. Perillo,*[10] and *Smith v. Gilpin County, Co.,*[11] the police failed to offer any protection at all.  Moreover, the situations described in each case are the prototypical section 1983 case; turning a group, class or race into a second class citizenry by completely withdrawing all police protection.[12]  Ms. Park, however, is not at all concerned with how she was treated, but how the police failed to treat Mr. Babauta.  This is improper.  "[T]he [equal protection] clause, concerned as it is with equal treatment rather than with establishing entitlements to some minimum of government services, *does not entitle a person to adequate, or indeed to any, police protection*[,]" instead, it is concerned with the

---

[6]  2004 WL 257105 (W.D. Wis.).

[7]  *Barnes,* 2004 WL 257105 at 2 (citations omitted)

[8]  OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT, p. 6-7, note 6.

[9]  257 F.Supp.2d at 799.

[10]  642 F.Supp. at 380.

[11]  949 F.Supp. 1498 (D. Colo. 1996).

[12]  *Hilton v. City of Wheeling,* 209 F.3d 1005, 1007 (7th Cir. 2000).

"selective withdrawal of police protection, as when the Southern states during the Reconstruction era refused to give police protection to their black citizens[.]"[13] The facts, as alleged in her complaint, do not treat Ms. Park as a second class citizen. Further, police protection, generally, isn't involved in random traffic accident cases as is made clear in *Barnes v. Black*. This is why in her three substantive pleadings to this Court, Ms. Park has been utterly unable to identify a single traffic case, similar to hers, invoking equal protection in the 137 year history of 42 U.S.C. § 1983. DPS Defendants are not arguing there is a special rule for traffic cases that specifically exempts them from equal protection analysis. Indeed, if Ms. Park was singled out to be pulled over due to her race while other similarly situated drivers of NMI descent were not, she would state a claim under equal protection jurisprudence. Rather, DPS Defendants have maintained and continue to maintain that the withdrawal of police protection generally involves complete inaction of police due to the disfavored status of a particular plaintiff. Ms. Park has not and cannot demonstrate that such a withdrawal occurred. Even if equal police protection could be invoked in her case, and it cannot, Ms. Park received the benefits of police protection.

Ms. Park has not alleged how the failure to perform a sobriety check or arrest Mr. Babauta implicated police protection. Instead, she has insisted that the failure to perform a sobriety test and arrest Babauta is, in and of itself, the withdrawal of police protection. Thus, Ms. Park's claim only prevails if this court narrows the definition of police protection to "sobriety check and arrest."

Throughout her Original, First and Second Amended Complaints, Ms. Park unequivocally demonstrates that she received the benefits of police protection. For example, Ms. Park alleges that Defendant Manglona: (1) alerted DPS Central Command to the accident;[14] (2) requested an

---

[13] *Hilton,* 209 F.3d at 1007 (emphasis added, citations omitted).
[14] Second Amended Complaint, ¶ 23.

LA/576564v1

-3-

ambulance;[15] (3) checked on both cars;[16] and (4) conducted interviews of witnesses, drivers and passengers.[17] Further, Ms. Park claims that Defendants Macaranas and Langdon conducted interviews and directed traffic while agents of the CNMI attended to her medical needs.[18] Ms. Park was not ignored and was not treated differently then any other accident victim. To be clear, Ms. Park received all the benefits of police protection to which she was entitled. Her current equal protection claim, first styled as the DPS Defendants' failure to "take action," is not that she was denied protection but that she was denied an arrest and prosecution. Put plainly, Ms. Park is angry that Defendant Babuta was not arrested.

Amazingly, Ms. Park seems to think this discussion ignores the "elephant in the room." To be clear, this argument directly identifies the "elephant in the room"-- Ms. Park's complaint. From the outset, her complaint was and is about Mr. Babauta's nonarrest; nothing more. Ms. Park seeks to have this Court turn every police stop in the CNMI into a potential civil rights lawsuit if the officer on the scene fails to "take action." Again, courts have consistently expressed an unwillingness to intrude upon a police officer's discretion to decide when to "take action" or effectuate an arrest.[19] The Seventh Circuit in *Lunini v. Grayeb,* acknowledged this point when it stated: "we take pains to affirm the baseline principle that police support and protection must be afforded to all citizens on a non-discriminatory basis, we decline to take the unprecedented step of implying a general constitutional police *duty* to arrest certain individuals

---

[15] *Id.*
[16] *Id.* at 24.
[17] *Id.* at 29.
[18] *Id.* at 31.
[19] *See, e.g., Lunini v. Grayeb*, 395 F.3d 761, 770 (7th Cir.2005) (finding that an officer's failure to arrest an individual involved "an ordinary exercise of police discretion" and thus it was "not obvious how the police officers' failure to arrest ... implicates [the plaintiff's] rights under the Equal Protection Clause in the first place"); *Ricketts v. City of Columbia*, 36 F.3d 775, 780 (8th Cir.1994) (noting that an "officer's discretion to determine when to arrest" is "a fundamental part of our criminal system"); *see also McCleskey v. Kemp*, 481 U.S. 279, 297, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (noting, as a general matter, that "discretion is essential to the criminal justice process").

during a response to an isolated domestic incident." [20] Ms. Park, like the plaintiff in *Lunini,* received the benefits of police protection. In *Lunini,* the police arrived,[21] took statements,[22] and declined to arrest anyone.[23] Ms. Park has alleged that the police arrived, took statements, and declined to arrest anyone. These facts failed to state a claim for equal protection in *Lunini,* and they likewise fail to state a claim for equal protection here.

## II. Ms. Park's Due Process Claims Are Frivolous

A claim of a procedural due process violation must be based on a "legitimate claim of entitlement to a benefit."[24] But, as this Court previously ruled, "a state law requiring police to take action does not create such an entitlement if it is not mandatory and does not precisely define the means of enforcement."[25]

This Court, in accord with every other court in the land, has determined that in order to state a due process right in a state law there are two requirements: (1) the statute must be mandatory; and (2) it must precisely define the means of enforcement. In spite of this, Ms. Park continues to argue that the CNMI Victim's Bill of Rights and a laundry list of statutes and regulations create a liberty and property interest protected by the Due Process Clause of the Fourteenth Amendment. She makes this argument without once addressing whether any of the statutes or regulations has a precisely defined means of enforcement. This omission, however, is not surprising. From the outset of this case Ms. Park has ignored well established, black letter law in order to pursue her due process claim. Examples of this include: naming the Department

---

[20] *Lunini*, 395 F.3d at 772 (emphasis in original)(citations omitted).
[21] *Id.,* at 764.
[22] *Id.,* at 764-5.
[23] *Id.,* at 765.
[24] *See Bd. of Regents v. Roth*, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
[25] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, p. 5. Civil Action No. 07-0021 *Citing Town of Castle Rock, Colorado v. Gonzales,* 545 U.S. 748 (2005).

LA/576564v1

-5-

of Public Safety as a "person" for purposes of a 1983 action; claiming her right to a fair trial was violated while naming Mr. Babauta as a defendant; bringing a due process action for the failure of a police officer to "take action" when the U.S. Supreme Court forbid such actions; and distinguishing U.S. Supreme Court precedent because it is "controversial."

In fact, the only interesting thing about this argument is the complete "u-turn" in which Ms. Park's attorneys have engaged. In the response to DPS Defendants' Motion to Dismiss the First Amended Complaint, Ms. Park attempted to make a distinction between the CNMI Victim's Bill of Rights and general criminal statutes. The Court noted that this argument was not "well taken." The reason Ms. Park made this argument is that criminal statues are for the public benefit, not individuals. Again to have a liberty or property interest "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[26] No single individual has a claim of entitlement to a general criminal statute. Ms. Park admitted as much in her opposition to the first motion to dismiss. Astoundingly, Ms. Park now argues that she has an individual property interest in general criminal statutes and general employment regulations. Remember, these claims are made in the sheer absence of any attempt at all to support them with case law or even address this Court's dismissal order. To be sure, Ms. Park cites some criminal cases for the obvious proposition that criminal laws dealing with public corruption may be used to bring corrupt officials to justice. She fails, however, to cite a single case that supports a personal claim of entitlement to enforcement.

Finally, and most importantly for our purposes, the law of the case doctrine precludes the claim in its current form. Ms. Park's underlying due process theory, that the statutes and

---

[26] *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).

regulations are mandatory, has been reviewed and rejected by this Court.  For these reasons, Ms. Park's due process claims should, again, be dismissed.

### III.  Ms. Park Has No Valid Equal Protection or Due Process Claims

Ms. Park's suit should be dismissed because she has not suffered "an invasion of a concrete and particularized legally protected interest."[27]  All Ms. Park can allege in her suit is a generalized grievance: the DPS Defendants failed to arrest, take action on, or, as she now claims, provide police protection through a sobriety test and arrest of Babauta.   She has only a general interest, just as much as any member of the general public, in seeing Babauta arrested.  The Supreme Court has repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct as sufficient to confer standing.[28]

### IV.  Without an Underlying §1983 Violation, Plaintiff May Not Allege a §1985 Action on the Same Pled Facts.

As demonstrated above, Ms. Park has not demonstrated that she was denied police protection.  She has failed to state an equal protection claim and she has failed to state a due process claim.  The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations.[29]  The Ninth Circuit precludes plaintiffs from bringing conspiracy claims for violating equal protection and due process when there is no underlying violation of equal protection and due process.[30]

The DPS Defendants concede that an unpublished district court opinion has called controlling Ninth Circuit law into question.  The DPS Defendants also recognize that an unpublished district court opinion has no effect on the controlling Ninth Circuit opinion. Ms. Park's claims should be dismissed.

### V.  The DPS Defendants are entitled to Qualified Immunity.

---

[27] *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

[28] *United States v. Hays,* 515 U.S. 737, 743 (1995).

[29] *Cassettari v. Nevada County, Cal.,* 824 F.2d 735, 739 (9th Cir.1987) (citing *Dooley v. Reiss,* 736 F.2d 1392, 1395 (9th Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984)).

[30] *See, e.g., Id.*

The Supreme Court directs courts to apply a two-step process whenever they analyze an entitlement to qualified immunity. First, they are to evaluate whether the officer's conduct violated a constitutional right. Next, they look to whether the constitutional right was clearly established.[31]

As demonstrated frequently in earlier sections of the brief, Ms. Park has failed to allege she was denied equal protection of any right protected by the U.S. Constitution, and the U.S. Supreme Court has precluded Ms. Park's claims. Because no constitutional right can be established in this case, under the first step, the second step need not be reached.[32] In this case, however, even if Ms. Park could demonstrate a constitutional right was violated she has not directed this Court to any case that is similar. Indeed, the only cases on point are squarely against her.

In determining the second test for qualified immunity, whether Ms. Park's right was clearly established, the parties are to refer the court to cases on point.[33] As demonstrated above, Ms. Park has yet to provide this court with a case that is similar to hers. Ms. Park can demonstrate, and DPS Defendants do not dispute, that when the police utterly ignore violent crime due to a person's membership in a class, that person's rights have been violated. What Ms. Park has not and cannot demonstrate is that when police arrive at the scene of an accident, render aide to everyone at the scene, direct traffic and conduct interviews, they still violate a constitutional right if they do not arrest a drunk individual at fault for an accident. The reason she cannot demonstrate this is that courts have consistently expressed an unwillingness to intrude

---

[31] *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

[32] *Id.* at 201, 121 S.Ct. 2151 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

[33] *See generally Brosseau v. Haugen,* 543 U.S. 194, 199-200, 125 S.Ct. 596, 599 - 600 (2004) (The parties point us to only a handful of cases relevant to the "situation [Brosseau] confronted").

upon a police officer's discretion to decide when to effectuate an arrest.[34]

Conversely, the DPS Defendants have provided this court with numerous cases where no liability attached for a police officer's failure to arrest.[35] Moreover, and more interesting is that these cases deal with causation. That is, the drunk driver was intercepted by the police, let go, and the drunk driver then injured the plaintiff. As the case law is legion with examples where police officers were not held responsible for failing to investigate and arrest individuals it is reasonable for the DPS Defendants to operate under the belief they had no duty in this instance either. For this reasons, DPS Defendants are entitled to qualified immunity.

**VI.    28 U.S.C. 1347(c) Allows Dismissal of Plaintiff's Remaining State Claims.**

Ms. Park's state law claims should be dismissed outright as they are alleged constitutional violations, which fail to state a claim, or they are negligence actions which are barred by the public duty doctrine or the CNMI Tort Claims Act.

The public duty doctrine originated at common-law and shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large.[36] The doctrine can be traced to the United States Supreme Court's decision

---

[34] *See, e.g., Lunini v. Grayeb*, 395 F.3d 761, 770 (7th Cir.2005) (finding that an officer's failure to arrest an individual involved "an ordinary exercise of police discretion" and thus it was "not obvious how the police officers' failure to arrest ... implicates [the plaintiff's] rights under the Equal Protection Clause in the first place"); *Ricketts v. City of Columbia*, 36 F.3d 775, 780 (8th Cir.1994) (noting that an "officer's discretion to determine when to arrest" is "a fundamental part of our criminal system"); *see also McCleskey v. Kemp*, 481 U.S. 279, 297, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (noting, as a general matter, that "discretion is essential to the criminal justice process").

[35] Although CNMI courts have not ruled on the issue, the weight of US authority is that neither a law enforcement officer nor a governmental entity is liable to an individual injured by a drunk driver whom the government failed to restrain or arrest. The DPS Defendants note, however, that these cases are not quite analogous with Ms. Park's case-- the plaintiffs in these cases had the opportunity to argue causation and still lost. *See, e.g., Lehto v. City of Oxnard* 171 Cal.App.3d 285, 289-291, 217 Cal.Rptr. 450 (1985); *Leake v. Cain,* 720 P.2d 152 (Colo.1986); *Shore v. Town of Stonington,* 187 Conn. 147, 444 A.2d 1379 (1982); *Everton v. Willard,* 468 So.2d 936 (Fla.1985); *Fusilier v. Russell,* 345 So.2d 543 (La.Ct.App.), *cert. denied,* 347 So.2d 261 (La.1977); *Schutte v. Sitton,* 729 S.W.2d 208 (Mo.Ct.App.1987); *Lindquist v. Moran,* 203 Mont. 268, 662 P.2d 281 (1983); *Crosby v. Town of Bethlehem,* 90 A.D.2d 134, 457 N.Y.S.2d 618 (1982); *Barratt v. Burlingham,* 492 A.2d 1219 (R.I.1985); *Bailey v. Forks,* 38 Wash.App. 656, 688 P.2d 526 (1984).

[36] Kelly M. Tullier, *Governmental Liability for Negligent Failure to Detain Drunk Drivers,* 77 Cornell L.Rev. 873, 886 (1992).

in *South v. Maryland,*[37] which held that a sheriff is not liable for failing to protect a kidnap victim because the sheriff's duty to keep the peace was "a public duty, for neglect of which he is amenable to the public, and punishable by indictment only."[38] Thereafter, the public duty doctrine was widely accepted by most state courts.[39] Here, Ms. Park's state law claims are bared by the public duty doctrine and, therefore, should be dismissed.

## CONCLUSION

WHEREFORE, based upon the foregoing, this honorable Court should grant, in whole or in part, DPS Defendants' Motion to Dismiss and tax all costs to Ms. Park.

Respectfully submitted
March 27, 2008
OFFICE OF THE ATTORNEY GENERAL

_____*/S/*_____
Braddock Huesman, T#00047

## CERTIFICATE OF SERVICE

I certify that a copy of Defendants' Reply to the Opposition to the Motion to Dismiss was served on George Hasselback, who is the attorney in charge for plaintiff, Ms. Park, and whose address is PO Box 501969, Saipan, MP 96950, (670) 234-5684, by electronic filing on March 27, 2008.

__*/s/*_____
**Braddock J. Huesman**

---

[37] 59 U.S. (18 How.) 396, 15 L.Ed. 433 (1855).
[38] *Id.* at 403.
[39] *See Leake v. Cain,* 720 P.2d 152, 155 (Colo.1986) (quoting, Thomas M. Cooley, *A Treatise on the Law of Torts,* 379 (1879)); 77 Cornell L.Rev. at 887.

LA/576564v1

-10-