F I L E D
Clerk
District Court

APR 2 1 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

AE JA ELLIOT-PARK,

    Plaintiff,

v.

JARROD MANGLONA, MICHAEL LANGDON, ANTHONY MACARANAS, DEPARTMENT OF PUBLIC SAFETY, and JUAN DOES 1-4,

    Defendants.

_____/

Civil Action No. 07-0021

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES

THIS MATTER came before the Court on Thursday, April 10, 2008, for hearing of Defendants' motion to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and motion for attorney's fees pursuant to 42 U.S.C. § 1988. Defendants appeared through their attorney, Commonwealth Assistant Attorney General, Braddock J. Huesman. Plaintiff appeared by and through her attorney, Joseph E. Horey. Having carefully reviewed the parties' briefs and the relevant legal authority, and having had the benefit of oral argument and good cause appearing, the Court hereby GRANTS in part and DENIES in part the motion to dismiss and DENIES the motion for attorney's fees.[1]

---

[1] The Court notes that Plaintiff moved to strike arguments in Defendants' Reply Brief. The Court DENIED the motion at the hearing because the arguments were sufficiently raised in the original briefing, and because the Court does not rely on the Reply in its ruling.

## BACKGROUND

On February 12, 2006, Plaintiff Mrs. Ae Ja Elliot-Park and Defendant Mr. Norbert Duenas Babauta were involved in a head-on traffic collision on 16 Highway Papago. (Second Amended Comp. ¶ 18.) Department of Public Safety ("DPS") officer Jarrod Manglona was the first to arrive at the accident scene and was followed by officers Michael Langdon and Anthony Macaranas. (Id. ¶¶ 22, 31.) Mrs. Elliot-Park and Mr. Babauta were taken to the hospital where they were both examined by Dr. Thomas Austin. (Id. ¶ 33.)

Mrs. Elliot-Park alleges that Mr. Babauta was drunk at the time of the accident. (Id. ¶ 16.) In addition, Mrs. Elliot-Park asserts that the DPS officers knew that he was drunk. (Id. ¶¶ 26–29, 35–37, 42.) The DPS officers never performed any sobriety tests on Mr. Babauta and did not charge him with any crimes. (Id. ¶¶ 30, 32, 38, 43, 49.) DPS later initiated an internal investigation into the accident to determine why the DPS officers did not perform any sobriety tests on Mr. Babauta. Multiple witnesses allegedly informed the investigating officers that Mr. Babauta was drunk at the time of the accident and later at the hospital. (Id. ¶ 57.) Mrs. Elliot-Park contends that the DPS officers conspired to obstruct justice and ensure that Mr. Babauta was not prosecuted for drunk driving, even going so far as to threaten a doctor that insisted that Mr. Babauta was drunk and should not have been let go. (Id. ¶ 58.)

On June 8, 2007, Mrs. Elliot-Park filed suit in this court against the DPS officers, the DPS, and Mr. Babauta, seeking monetary damages. On November 19, 2007, this Court granted Defendants' motion to dismiss the complaint without prejudice. On December 17, 2007, Mrs. Elliot-Park amended her complaint again alleging violations of 42 U.S.C. §§ 1983, 1985 and the Commonwealth of the Northern Mariana Islands ("CNMI") Constitution, as well as claims for assault and battery, intentional and negligent infliction of emotional distress, and negligence. Defendants again move to dismiss the complaint pursuant to Federal Rules of Civil Procedure

12(b)(6) and 12(b)(1)².

The Court will discuss additional specific facts as required in the analysis.

## ANALYSIS

**A.     Rule 12(b)(6) Legal Standard.**

Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits dismissal of a claim either where that claim lacks a cognizable legal theory, or where insufficient facts are alleged to support plaintiff's theory. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In resolving a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, as stated recently by the Supreme Court, to survive a Rule 12(b)(6) motion a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007). Although a complaint need not set forth "detailed factual allegations" it must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1964, 1974. If a complaint is found to fail to state a claim, courts generally grant leave to amend unless the pleading could not possibly be cured by the allegation of other facts. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

**B.     The Complaint States a Section 1983 Claim.**

To establish a valid 1983 claim, a plaintiff must show: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."

---

² This Court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1367 because the suit is based on alleged violations of federal statutes and other common law claims arising out of the same common nucleus of operative fact. Accordingly, insofar as Defendants assert that this motion is based on Federal Rule of Civil Procedure 12(b)(1), the motion is DENIED.

*Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988); 42 U.S.C. § 1983. Here, there is no dispute as to whether the DPS officers were acting under the color of state law when the alleged conduct at issue was committed. Rather, the parties dispute whether that conduct, even if true, deprived Mrs. Elliot-Park of a cognizable constitutional right. Mrs. Elliot-Park claims that the alleged conduct deprived her of her constitutional rights to equal protection and due process.

### 1. Equal Protection Legal Standard.

Mrs. Elliot-Park asserts two claims for violation of her right to equal protection against Defendants Macaranas, Langdon, Manglona, and Does 1–4, in their individual capacities. The first claim is that the DPS officers deprived Mrs. Elliot-Park of her right to non-discriminatory police protection based on her race and/or national origin. (Second Amended Comp. ¶¶ 69–70.) In addition, Mrs. Elliot-Park asserts a "class of one" equal protection claim. (*Id.* ¶ 71.)

The constitutional right to equal protection includes the right to receive non-discriminatory police protection.[3] *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 197 n.3 (1989) ("The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."); *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000) (valid equal protection claim where police allegedly failed to effectively respond to calls because the complaints were of domestic violence); *Navarro v. Block*, 72 F.3d 712, 717 (9th Cir. 1995) (same); *Balistreri*, 901 F.2d at 701 (same).

This Court previously held that the right to receive non-discriminatory police protection has not been extended to non-protective, discretionary police functions such as investigations. (Order Granting Defendants' Motion to Dismiss, November 16, 2007.) The Court reasoned that in all of the cases cited by Mrs. Elliot-Park, the plaintiffs alleged that the police had failed *to*

---

[3] Defendants correctly argue that Mrs. Elliot-Park does not have a legal interest in the arrest of another. However, the complaint claims the right to non-discriminatory police protection and not the arrest of another. (Second Amended Comp. ¶ 67.)

*protect them* in some way. Whereas, here, Mrs. Elliot-Park alleges that the police failed to investigate a drunk driver, and pursuit of a drunk driver after the accident does not constitute *protection* in any meaningful sense. The conclusion was in error. The Fourteenth Amendment right to receive non-discriminatory police protection extends to investigations of crimes. *Roman v. City of Reading*, 257 F. Supp. 2d 799, 803 (E.D. Pa. 2003) (allegation that police failed to investigate a shooting because the victim was black was a valid equal protection claim); *Hawk v. Perillo*, 642 F. Supp. 380 (N.D. Ill. 1985) (allegation that police failed to investigate a brutal attack because the victim was black was a valid equal protection claim). Here, the allegation is that police failed to act *because of* Mrs. Elliot-Park's race and/or national origin. If failing to respond, follow, or investigate white attackers of a black victim because of the victim's race is an equal protection claim, then it must follow that failing to respond, follow, or investigate a drunk driver because of the victim's race must also be an equal protection claim.

To state a claim for violation of the Equal Protection Clause, a plaintiff must allege that: (1) there was a discriminatory effect on a specific group of people; and (2) the discrimination was intentional or motivated by a discriminatory purpose. *Navarro*, 72 F.3d at 717 ("a long line of Supreme Court cases make clear that the Equal Protection Clause requires proof of discriminatory *intent* or *motive*."); *see Rosenbaum v. San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007) (equal protection claim requires showing of discriminatory intent and effect). "To establish a discriminatory effect . . . the claimant must show that similarly situated individuals . . . were [protected]." *Rosenbaum*, 484 F.3d at 1153. "To show discriminatory purpose, a plaintiff must establish that 'the decision-maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'" *Rosenbaum*, 484 F.3d at 1153. However, discriminatory intent may be inferred from the totality of the circumstances if they "are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

To state a "class of one" equal protection claim, a plaintiff must allege that (1) she has been intentionally treated differently from others similarly situated and (2) "there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (9th Cir. 2004) (citation omitted).

### 2. Mrs. Elliot-Park Has Stated an Equal Protection Claim.

The gravamen of Mrs. Elliot-Park's complaint is that the DPS officers did not investigate a crime committed against Mrs. Elliot-Park because of her race and/or national origin. The complaint alleges that Defendant Babauta was purposefully not investigated or pursued because Mrs. Elliot-Park is Korean or because she is not of NMI descent. (Second Amended Comp. ¶¶ 1–2.) In addition, Mrs. Elliot-Park claims that on the same evening as her accident with Defendant Babauta, the DPS officers properly investigated a drunk driver who was not of NMI descent and who crashed into a victim that was of NMI descent. (*Id.* ¶¶ 51–52.) Accordingly, Mrs. Elliot-Park's allegations sufficiently state that the alleged acts had a discriminatory effect on a specific group of persons.

Further, the complaint alleges that (1) the DPS officer at the accident refused to help Mrs. Elliot-Park call her husband, shoved her arm, and told her to "shut up;" (2) Defendant Babauta was visibly drunk at the scene of the accident and later at the hospital; (3) the DPS officers observed Defendant Babauta's intoxication; (4) witnesses informed the DPS officers that Mr. Babauta was drunk; and (5) the DPS officers ignored Defendant Babauta's intoxication and the witnesses' statements and allowed Defendant Babauta to go free without administering any sobriety tests. (*See* Second Amended Complaint.) Taken as a whole, the allegations "are at least susceptible of an inference of discriminatory intent."

Accordingly, Mrs. Elliot-Park has stated a claim for violation of her right to non-discriminatory administration of police protective services.

In addition, Mrs. Elliot-Park's allegations are sufficient to state an equal protection claim

as a "class of one." As stated above, the complaint alleges that she was intentionally treated differently from others similarly situated, that there was no rational basis for the difference in treatment, and that the cause of the differential treatment was a "totally illegitimate animus" towards Mrs. Elliot-Park by the DPS officers.

In conclusion, the complaint states sufficient facts to state a claim for violation of Mrs. Elliot-Park's right to non-discriminatory police protection and a "class of one" equal protection claim. Accordingly, Defendants' motion is DENIED with respect to the first cause of action.[4]

### 3. Due Process Legal Standard.

Mrs. Elliot-Park asserts that she was deprived of her right to due process based on constitutionally protected property and liberty interests allegedly created by CNMI laws. (Second Amended Comp. ¶ 81.) The Court concludes that none of the laws cited by Mrs. Elliot-Park create a constitutionally protected property or liberty interest.

#### a. State-Created Property Interest.

State law may, in limited circumstances, create an entitlement interest—a property interest—that is protected by the Due Process Clause of the United States Constitution. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005). However, a state law requiring police to take action does not create a legitimate claim of entitlement unless it: (1) is mandatory; and (2) precisely defines the means of enforcement. *Id.* at 762–63. In *Castle Rock*, the plaintiff

---

[4] Although the complaint does not allege that Mrs. Elliot-Park has suffered any damages as a result of Defendants' alleged conduct, violation of a constitutional right, alone, is a sufficient injury to confer standing. *Estate of Macias*, 219 F.3d at 1028 ("A plaintiff may prove a violation of § 1983 without demonstrating that the deprivation of his or her constitutional rights caused any actual harm. . . . 'In this Circuit, nominal damages must be awarded if a plaintiff proves a violation of his [or her] constitutional rights.'") (citations omitted).
   Defendants also ask the Court to dismiss Mrs. Elliot-Park's common law claims if it dismisses the federal causes of action. However, the Court has concluded that Mrs. Elliot-Park has stated a claim for violation of a constitutional right. Accordingly, the Court will retain supplemental jurisdiction over the common law claims pursuant to 28 U.S.C. § 1367.

claimed that she had an entitlement interest in the enforcement of a restraining order. *Id.* at 754. The restraining order stated that an officer "*shall* arrest, or, if an arrest would be impractical under the circumstances, seek a warrant . . . ." *Id.* at 762 (emphasis added). In addition, a state statute mandated that an officer "*shall* use every reasonable means to enforce a restraining order." *Id.* (emphasis added). The Court found that neither the restraining order, nor the statute created a constitutionally protected entitlement interest because neither truly mandated enforcement in spite of the apparently mandatory language. *Id.* The Court reasoned that police officers necessarily retain significant discretion to execute their official duties and mandatory language in a state law, without more, cannot remove this discretion. *Id.* Moreover, the Court held that there was no clear means of enforcement because the alleged "right to enforcement" could mean that the officer must arrest the offender, must seek an arrest warrant, or simply must "[use] every reasonable means, up to and including arrest, to enforce the order's terms." *Id.* ("Such indeterminacy is not the hallmark of a duty that is mandatory.").

      b.      **Mrs. Elliot Park Does Not Have a State-Created Property Interest.**

First, Mrs. Elliot-Park claims that a constitutionally protected entitlement interest is created by the mandatory duties imposed by the CNMI Victims Bill of Rights. (Second Amended Comp. ¶¶ 77–78.) The CNMI Victims Bill of Rights provides that,

> Officers and employees of the . . . departments and agencies of the [CNMI] engaged in the detection, investigation, or prosecution of crime *shall* make their best efforts to see that victims of crime are accorded [the following rights:] (1) the right to be treated with fairness and respect; (2) the right to be reasonably protected from the accused offender; (3) the right to be notified of court proceedings; (4) the right to be present at all public court proceedings related to the offense; (5) the right to confer with the attorney for the government in the case; (6) the right to restitution; and (7) the right to information about the conviction, sentencing, imprisonment, and release of the offender.

6 C.M.C. §§ 9104(a)–(b) (emphasis added).

Mrs. Elliot-Park argues that this CNMI law creates a protected entitlement because it mandates that officers use their *best efforts* to ensure that crime victims are afforded their right to be treated with fairness and respect and their right to restitution. (Second Amended Comp. ¶ 77.) Mrs. Elliot-Park contends that, at a bare minimum, the mandated "best efforts" require that "officers make a good faith preliminary determination that a crime has been committed." (*Id.* ¶ 79.) The argument is unconvincing. As *Castle Rock* illustrates, the DPS officers necessarily retain discretion to execute their duties and the use of the word "shall," without more, does not deprive them of their discretion. In addition, the CNMI law does not provide a "precisely defined means of enforcement" of the listed rights. The law simply states that the officers must use their "best efforts" to afford the victims the listed rights. The mandate is vague and inherently subjective. The means used to achieve an officer's "best efforts" are innumerable. Moreover, the Bill of Rights itself explicitly does *not* create a cause of action. 6 C.M.C. § 9104(c) (no cause of action or defense "arising out of the failure to accord to a victim the rights enumerated in part b."). It is difficult to imagine that a state law that specifically precludes a cause of action can simultaneously create a constitutionally protected entitlement interest.[5]

In addition, Mrs. Elliot-Park contends that eight other CNMI laws and regulations create constitutionally protected property interests. Those laws are as follows: (1) 1 C.M.C. § 2504 which provides that it is the duty of the DPS "[t]o provide effective police protection to

---

[5] The Court rejects Mrs. Elliot-Park's request that the Court certify to the CNMI Supreme Court the question of whether the CNMI Victims Bill of Rights creates mandatory duties. The issue before the Court is whether the state-created interest rises to the level of a constitutional right. "[W]hether what [state] law has given respondent constitutes a property interest for purposes of the Fourteenth Amendment . . . despite its state-law underpinnings, is ultimately [a determination] of federal constitutional law." *Castle Rock*, 545 U.S. at 757 (refusing to defer to the state court interpretation of the right or to certify the question to the state supreme court).

inhabitants of the Commonwealth."; (2) 6 C.M.C. § 3202 which provides that "[e]very person who, being a public official does any illegal act under the color of office, or wilfully neglects to perform the duties of his or her office as provided by law, is guilty of misconduct in public office . . . ."; (3) NMIAC § 150-10-710 which governs the responsibilities of assigned sworn personnel at crime scenes; (4) NMIAC § 150-10-745 which mandates that no employee shall knowingly falsify official reports; (5) NMIAC § 150-10-760 which prohibits employees from interfering with the proper administration of criminal justice; (6) NMIAC § 150-10-765 which prohibits employees from assisting criminals; (7) NMIAC § 150-10-845 which mandates that employees are courteous and orderly in their dealings with the public; and (8) NMIAC § 150-10-850 which states that sworn personnel must remain impartial while enforcing the law.

These laws and regulations impose duties upon officials of the CNMI. They do not grant Mrs. Elliot-Park any "rights" that can be construed as conferring upon her a property interest. *See Castle Rock*, 545 U.S. at 765 ("If she was given a statutory entitlement, we would expect to see some indication of that in the [laws themselves].").

While the Court appreciates Mrs. Elliot-Park's objections to the officers' alleged shortcomings, those shortcomings, even if true, do not amount to a property interest under the Due Process Clause.

   c. **State-Created Liberty Interests.**

Mrs. Elliot-Park asserts that the CNMI Victims Bill of Rights as well as the list of other law enforcement mandates also create liberty interests protected by the Due Process Clause. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). The Supreme Court has recognized such state-created liberty interests where state laws or regulations specifically limit an official's discretion with respect to granting, denying, or limiting a person's physical liberty. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 461 (1989) (citing examples such as laws related to administrative segregation and parole requirements in the prison setting); *Bonin*

*v. Calderon*, 59 F.3d 815, 841–42 (9th Cir. 1995).

Here, there is no allegation that any of the laws and regulations listed by Mrs. Elliot-Park relate to her physical liberty. Accordingly, Mrs. Elliot-Park has failed to state a claim for deprivation of a state-created liberty interest protected by the Due Process Clause.

In conclusion, the complaint does not state a claim for deprivation of a constitutionally protected property or liberty interest. Accordingly, the motion is GRANTED with respect to the second cause of action.

C.  **Mrs. Elliot-Park Sufficiently Stated a Section 1985 Claim.**

Defendants argue that Mrs. Elliot-Park's Section 1985 conspiracy and obstruction of justice claims fail because they are insufficiently pled to fulfill the heightened pleading standard applicable to conspiracy claims. (Mot. at 15–16.)

The parties dispute whether the Ninth Circuit recognizes a heightened pleading standard for conspiracy claims. *See Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (concluding that the heightened pleading requirement for improper motive in constitutional tort cases was no longer good law); *but see Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929–30 (9th Cir. 2004) (applying a heightened pleading standard to a conspiracy claim because, among other reasons, the complaint was "devoid of any discussion of an agreement amongst the appellees to violate her constitutional rights").

Under the heightened pleading standard, conspiracy is pled with sufficient particularity where it alleges which officers conspired, what they conspired about and how the conspiracy led to the alleged deprivation of plaintiff's constitutional rights. *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997). In particular, the heightened pleading standard requires that the plaintiff allege enough facts so that government defendants may assert a qualified immunity defense if applicable. *Id.*

Mrs. Elliot-Park alleges that the DPS officers conspired at some time during or after the accident to ensure that Defendant Babauta was not investigated or prosecuted. The conspiracy

allegedly began at the scene of the accident and continued at least throughout the later investigation where an officer allegedly threatened a witness who wanted to cooperate with the investigation. The alleged agreement was made because of Mrs. Elliot-Park's or Defendant Babauta's race and/or national origin. Accordingly, the allegation is that the officers agreed to alter the protective services they gave to Mrs. Elliot-Park because of her race–thus, conspiring to deprive her of her constitutional right to non-discriminatory police protection. The facts are sufficiently detailed to fulfill the heightened pleading standard even if it does apply.

Accordingly, the motion is DENIED with respect to the fourth cause of action.

D.    Qualified Immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In ruling on a qualified immunity defense, a court must consider two questions. First, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' . . . Second, if the plaintiff has alleged a deprivation of a constitutional right, a court 'is to ask whether the right was clearly established.' . . . The plaintiff bears the burden of showing that the right at issue was clearly established under this second prong." *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir.1993)).

Here, the Court has concluded that, as re-pleaded in the second amended complaint and taken in the light most favorable to Mrs. Elliot-Park, the complaint has alleged that the officers' conduct violated her constitutional right to non-discriminatory police protection. Second, the Court must determine whether that right was clearly established at the time of the alleged deprivation. As explained above, the constitutional right to equal protection includes the right to receive non-discriminatory police protection. *DeShaney*, 489 U.S. at 197 n.3 ("The State may

not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."); *Estate of Macias*, 219 F.3d at 1028 (valid equal protection claim where police allegedly failed to effectively respond to calls because the complaints were of domestic violence); *Navarro*, 72 F.3d at 717 (same); *Balistreri*, 901 F.2d at 701 (same); *Roman*, 257 F. Supp. 2d at 803 (allegation that police failed to investigate a shooting because the victim was black was a valid equal protection claim); *Hawk*, 642 F. Supp. at 380 (allegation that police failed to investigate a brutal attack because the victim was black was a valid equal protection claim). The inquiry is thus, in light of the foregoing case law, would a reasonable officer have known that it was unlawful to refuse to pursue a perpetrator of a crime *because of* the victim's race? The Court concludes that a reasonable officer would have known that the alleged acts were unlawful because they were on notice of the above-cited case law.

Defendants argue that the DPS officers reasonably believed that they were immune because the law is clear that police officers are not liable for damage caused by drunk drivers or for damage caused because of the officers' failure to arrest. It is important, however, to distinguish this argument from the allegations in the complaint. The complaint does not claim damages arising out of a drunk driver's actions or the officers' failure to arrest a drunk driver. Instead, the claim that the Court has upheld as sufficiently pled for purposes of a motion to dismiss is that the DPS officers provided discriminatory protective services based on the race of the crime victim. The Court cannot conclude, from the allegations before it and in light of the case law, that a reasonable officer could have believed that administering discriminatory police protection on the basis of race and conspiring to do so, was within the limits of the Constitution.

Accordingly, the Defendants' motion is DENIED with respect to Defendants' assertion of qualified immunity.

E.  Motion for Attorneys Fees.

Defendants also seek attorney's fees pursuant to 42 U.S.C. § 1988. Under section 1988, "[i]n any action or proceeding to enforce . . . [42 U.S.C. §§ 1983 or 1985] the court, in its

AO 72
(Rev. 08/82)

13

discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, . . . ." Here, the Court does not find that Mrs. Elliot-Park's claims are frivolous or devoid of merit because it specifically granted Mrs. Elliot-Park leave to amend the dismissed complaint.

Accordingly, the motion is DENIED with respect to Defendants' request for attorney's fees.

Defendants are HEREBY ordered to file their answer to the second amended complaint within FIVE DAYS of the date of this order.

## CONCLUSION

1. The motion to dismiss is DENIED with respect to the first cause of action, Plaintiff's equal protection claims;

2. The motion to dismiss is GRANTED with prejudice with respect to the second cause of action, Plaintiff's due process claims;

3. The motion to dismiss is DENIED with respect to fourth cause of action, Plaintiff's conspiracy and obstruction of justice claims;

4. The motion to dismiss is DENIED with respect to the common law claims;

5. The motion is DENIED with respect to Defendants' assertion of qualified immunity; and

6. The motion for attorney's fees is DENIED.

**IT IS SO ORDERED.**

Dated: 4-21-08

ALEX R. MUNSON
UNITED STATES DISTRICT JUDGE