1 | Braddock J. Huesman
T#00047
2 | Assistant Attorney General
Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
3 | Caller Box 10007, Capital Hill
Saipan, MP  96950-8907
4 | Telephone:    (670) 664-2341
Fax:          (670) 664-2349
5 |
6 | Attorney for Defendants Department of Public Safety,
Jarrod Manglona, Michael Langdon, and Anthony
7 | Macaranas.

**FILED**
Clerk
District Court

APR 25 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

8

9

10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

11

12

| | |
|---|---|
| AE JA ELLIOT PARK, | CIVIL ACTION NO. 07-0021 |
| Plaintiff, | |
| vs. | |
| JARROD MANGLONA, MICHAEL LANGDON, ANTHONY MACARANAS, DEPARTMENT OF PUBLIC SAFETY and JUAN DOES 1-4, NORBERT DUENAS BABUTA, | NOTICE OF APPEAL; CERTIFICATE OF SERVICE |
| Defendants. | |

13

14

15

16

17

18

19

20

21

22

23     **Notice is given** that Jarrod Manglona, Michael Langdon, Anthony Macaranas and

24 the Department of Public Safety, who are all defendants named in the above-captioned

25 case, appeal to the United States Court of Appeals for the Ninth Circuit from the partial

26 denial of their Motion to Dismiss.  The Court, on April 21, 2008, entered its Order Granting

27 in Part and Denying in Part Defendants' Motion to Dismiss (attached hereto).  Defendants

28 appeal the Order as it pertains to Qualified Immunity.

LA/576564v1

-1-

1

Respectfully submitted
Friday, April 25, 2008
OFFICE OF THE ATTORNEY GENERAL

2

3

4

5

Braddock Huesman, T#00047

6

### CERTIFICATE OF SERVICE

7

8

Pursuant to Federal Rule of Appellate Procedure 25(d) and Federal Rules of Civil Procedure 4(c)(2) and 5(b) & (d), the undersigned states as follows:

9

10

1.    I am eighteen years of age or older, and I certify that I caused to be served the following documents to the last know address(es) listed below on Friday, April 25, 2008

Notice of Appeal
Civil Appeals Docketing Statement
Order Granting in Part and Denying in Part Defendants' Motion to Dismiss

11

12

13

2.    As set forth below, this service was accomplished by personal delivery on:

14

George Hasselback,
O'Connor Berman Dotts & Baines
PO Box 501969, Saipan, MP 96950
(670) 234-5684

15

16

17

Braddock Huesman

18

19

20

21

22

23

24

25

26

27

28

LA/576564v1

F I L E D
Clerk
District Court

APR 2 ' 2008

IN THE UNITED STATES DISTRICT COURT For The Northern Mariana Islands
FOR THE NORTHERN MARIANA ISLANDS By_____
(Deputy Clerk)

AE JA ELLIOT-PARK,                              Civil Action No. 07-0021

      Plaintiff,

      v.                                       **ORDER GRANTING IN PART**
                                               **AND DENYING IN PART**
                                               **DEFENDANTS' MOTION TO**
                                               **DISMISS AND DENYING**
                                               **DEFENDANTS' MOTION FOR**
                                               **ATTORNEY FEES**

JARROD MANGLONA, MICHAEL
LANGDON, ANTHONY MACARANAS,
DEPARTMENT OF PUBLIC SAFETY,
and JUAN DOES 1-4,

      Defendants.
_____/

    THIS MATTER came before the Court on Thursday, April 10, 2008, for hearing of

Defendants' motion to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1)

and 12(b)(6) and motion for attorney's fees pursuant to 42 U.S.C. § 1988. Defendants appeared

through their attorney, Commonwealth Assistant Attorney General, Braddock J. Huesman.

Plaintiff appeared by and through her attorney, Joseph E. Horey. Having carefully reviewed the

parties' briefs and the relevant legal authority, and having had the benefit of oral argument and

good cause appearing, the Court hereby GRANTS in part and DENIES in part the motion to

dismiss and DENIES the motion for attorney's fees.[1]

_____

[1] The Court notes that Plaintiff moved to strike arguments in Defendants' Reply Brief.
The Court DENIED the motion at the hearing because the arguments were sufficiently raised in
the original briefing, and because the Court does not rely on the Reply in its ruling.

AO 72
(Rev. 08/82)

**BACKGROUND**

On February 12, 2006, Plaintiff Mrs. Ae Ja Elliot-Park and Defendant Mr. Norbert Duenas Babauta were involved in a head-on traffic collision on 16 Highway Papago. (Second Amended Comp. ¶ 18.) Department of Public Safety ("DPS") officer Jarrod Manglona was the first to arrive at the accident scene and was followed by officers Michael Langdon and Anthony Macaranas. (*Id.* ¶¶ 22, 31.) Mrs. Elliot-Park and Mr. Babauta were taken to the hospital where they were both examined by Dr. Thomas Austin. (*Id.* ¶ 33.)

Mrs. Elliot-Park alleges that Mr. Babauta was drunk at the time of the accident. (*Id.* ¶ 16.) In addition, Mrs. Elliot-Park asserts that the DPS officers knew that he was drunk. (*Id.* ¶¶ 26–29, 35–37, 42.) The DPS officers never performed any sobriety tests on Mr. Babauta and did not charge him with any crimes. (*Id.* ¶¶ 30, 32, 38, 43, 49.) DPS later initiated an internal investigation into the accident to determine why the DPS officers did not perform any sobriety tests on Mr. Babauta. Multiple witnesses allegedly informed the investigating officers that Mr. Babauta was drunk at the time of the accident and later at the hospital. (*Id.* ¶ 57.) Mrs. Elliot-Park contends that the DPS officers conspired to obstruct justice and ensure that Mr. Babauta was not prosecuted for drunk driving, even going so far as to threaten a doctor that insisted that Mr. Babauta was drunk and should not have been let go. (*Id.* ¶ 58.)

On June 8, 2007, Mrs. Elliot-Park filed suit in this court against the DPS officers, the DPS, and Mr. Babauta, seeking monetary damages. On November 19, 2007, this Court granted Defendants' motion to dismiss the complaint without prejudice. On December 17, 2007, Mrs. Elliot-Park amended her complaint again alleging violations of 42 U.S.C. §§ 1983, 1985 and the Commonwealth of the Northern Mariana Islands ("CNMI") Constitution, as well as claims for assault and battery, intentional and negligent infliction of emotional distress, and negligence. Defendants again move to dismiss the complaint pursuant to Federal Rules of Civil Procedure

AO 72
(Rev. 08/82)

2

1    12(b)(6) and 12(b)(1)[2].

2         The Court will discuss additional specific facts as required in the analysis.

3                              **ANALYSIS**

4    **A.    Rule 12(b)(6) Legal Standard.**

5         Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal

6    Rules of Civil Procedure.  Rule 12(b)(6) permits dismissal of a claim either where that claim

7    lacks a cognizable legal theory, or where insufficient facts are alleged to support plaintiff's

8    theory.  *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In resolving a

9    Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the

10   plaintiff and accept all well-pleaded factual allegations as true.  *See Cahill v. Liberty Mut. Ins.*

11   *Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  However, as stated recently by the Supreme Court, to

12   survive a Rule 12(b)(6) motion a complaint must contain factual allegations sufficient "to raise a

13   right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.

14   Ct. 1955, 1965 (2007).  Although a complaint need not set forth "detailed factual allegations" it

15   must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1964, 1974.

16   If a complaint is found to fail to state a claim, courts generally grant leave to amend unless the

17   pleading could not possibly be cured by the allegation of other facts.  *See Doe v. United States*,

18   58 F.3d 494, 497 (9th Cir. 1995).

19   **B.    The Complaint States a Section 1983 Claim.**

20        To establish a valid 1983 claim, a plaintiff must show: "(1) that a person acting under

21   color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant

22   of some right, privilege, or immunity protected by the Constitution or laws of the United States."

23

24   _____

         [2] This Court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C.
25   §§ 1331 and 1367 because the suit is based on alleged violations of federal statutes and other
     common law claims arising out of the same common nucleus of operative fact.  Accordingly,
26   insofar as Defendants assert that this motion is based on Federal Rule of Civil Procedure
     12(b)(1), the motion is DENIED.

1   *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988); 42 U.S.C. § 1983. Here, there is no

2   dispute as to whether the DPS officers were acting under the color of state law when the alleged

3   conduct at issue was committed. Rather, the parties dispute whether that conduct, even if true,

4   deprived Mrs. Elliot-Park of a cognizable constitutional right. Mrs. Elliot-Park claims that the

5   alleged conduct deprived her of her constitutional rights to equal protection and due process.

6        1.    **Equal Protection Legal Standard.**

7        Mrs. Elliot-Park asserts two claims for violation of her right to equal protection against

8   Defendants Macaranas, Langdon, Manglona, and Does 1–4, in their individual capacities. The

9   first claim is that the DPS officers deprived Mrs. Elliot-Park of her right to non-discriminatory

10  police protection based on her race and/or national origin. (Second Amended Comp. ¶¶ 69–70.)

11  In addition, Mrs. Elliot-Park asserts a "class of one" equal protection claim. (*Id.* ¶ 71.)

12       The constitutional right to equal protection includes the right to receive non-

13  discriminatory police protection.[3] *DeShaney v. Winnebago County Dept. of Social Services*, 489

14  U.S. 189, 197 n.3 (1989) ("The State may not, of course, selectively deny its protective services

15  to certain disfavored minorities without violating the Equal Protection Clause."); *Estate of*

16  *Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000) (valid equal protection claim where police

17  allegedly failed to effectively respond to calls because the complaints were of domestic

18  violence); *Navarro v. Block*, 72 F.3d 712, 717 (9th Cir. 1995) (same); *Balistreri*, 901 F.2d at 701

19  (same).

20       This Court previously held that the right to receive non-discriminatory police protection

21  has not been extended to non-protective, discretionary police functions such as investigations.

22  (Order Granting Defendants' Motion to Dismiss, November 16, 2007.) The Court reasoned that

23  in all of the cases cited by Mrs. Elliot-Park, the plaintiffs alleged that the police had failed *to*

24

25       [3] Defendants correctly argue that Mrs. Elliot-Park does not have a legal interest in the

26  arrest of another. However, the complaint claims the right to non-discriminatory police
    protection and not the arrest of another. (Second Amended Comp. ¶ 67.)

1  *protect them* in some way. Whereas, here, Mrs. Elliot-Park alleges that the police failed to

2  investigate a drunk driver, and pursuit of a drunk driver after the accident does not constitute

3  *protection* in any meaningful sense. The conclusion was in error. The Fourteenth Amendment

4  right to receive non-discriminatory police protection extends to investigations of crimes. *Roman*

5  *v. City of Reading*, 257 F. Supp. 2d 799, 803 (E.D. Pa. 2003) (allegation that police failed to

6  investigate a shooting because the victim was black was a valid equal protection claim); *Hawk v.*

7  *Perillo*, 642 F. Supp. 380 (N.D. Ill. 1985) (allegation that police failed to investigate a brutal

8  attack because the victim was black was a valid equal protection claim). Here, the allegation is

9  that police failed to act *because of* Mrs. Elliot-Park's race and/or national origin. If failing to

10  respond, follow, or investigate white attackers of a black victim because of the victim's race

11  is an equal protection claim, then it must follow that failing to respond, follow, or investigate a

12  drunk driver because of the victim's race must also be an equal protection claim.

13      To state a claim for violation of the Equal Protection Clause, a plaintiff must allege that:

14  (1) there was a discriminatory effect on a specific group of people; and (2) the discrimination

15  was intentional or motivated by a discriminatory purpose. *Navarro*, 72 F.3d at 717 ("a long line

16  of Supreme Court cases make clear that the Equal Protection Clause requires proof of

17  discriminatory *intent* or *motive*."); *see Rosenbaum v. San Francisco*, 484 F.3d 1142, 1152 (9th

18  Cir. 2007) (equal protection claim requires showing of discriminatory intent and effect). "To

19  establish a discriminatory effect . . . the claimant must show that similarly situated individuals

20  . . . were [protected]." *Rosenbaum*, 484 F.3d at 1153. "To show discriminatory purpose, a

21  plaintiff must establish that 'the decision-maker . . . selected or reaffirmed a particular course of

22  action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an

23  identifiable group.'" *Rosenbaum*, 484 F.3d at 1153. However, discriminatory intent may be

24  inferred from the totality of the circumstances if they "are at least susceptible of an inference of

25  discriminatory intent." *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th

26  Cir. 1998).

1    To state a "class of one" equal protection claim, a plaintiff must allege that (1) she has

2    been intentionally treated differently from others similarly situated and (2) "there is no rational

3    basis for the difference in treatment or the cause of the differential treatment is a 'totally

4    illegitimate animus' toward the plaintiff by the defendant." *McDonald v. Village of Winnetka*,

5    371 F.3d 992, 1001 (9th Cir. 2004) (citation omitted).

6        **2.    Mrs. Elliot-Park Has Stated an Equal Protection Claim.**

7    The gravamen of Mrs. Elliot-Park's complaint is that the DPS officers did not investigate

8    a crime committed against Mrs. Elliot-Park because of her race and/or national origin. The

9    complaint alleges that Defendant Babauta was purposefully not investigated or pursued because

10   Mrs. Elliot-Park is Korean or because she is not of NMI descent. (Second Amended Comp.

11   ¶¶ 1–2.) In addition, Mrs. Elliot-Park claims that on the same evening as her accident with

12   Defendant Babauta, the DPS officers properly investigated a drunk driver who was not of NMI

13   descent and who crashed into a victim that was of NMI descent. (*Id.* ¶¶ 51–52.) Accordingly,

14   Mrs. Elliot-Park's allegations sufficiently state that the alleged acts had a discriminatory effect

15   on a specific group of persons.

16       Further, the complaint alleges that (1) the DPS officer at the accident refused to help Mrs.

17   Elliot-Park call her husband, shoved her arm, and told her to "shut up;" (2) Defendant Babauta

18   was visibly drunk at the scene of the accident and later at the hospital; (3) the DPS officers

19   observed Defendant Babauta's intoxication; (4) witnesses informed the DPS officers that Mr.

20   Babauta was drunk; and (5) the DPS officers ignored Defendant Babauta's intoxication and the

21   witnesses' statements and allowed Defendant Babauta to go free without administering any

22   sobriety tests. (*See* Second Amended Complaint.) Taken as a whole, the allegations "are at least

23   susceptible of an inference of discriminatory intent."

24       Accordingly, Mrs. Elliot-Park has stated a claim for violation of her right to non-

25   discriminatory administration of police protective services.

26       In addition, Mrs. Elliot-Park's allegations are sufficient to state an equal protection claim

AO 72
(Rev. 08/82)

6

1    as a "class of one." As stated above, the complaint alleges that she was intentionally treated

2    differently from others similarly situated, that there was no rational basis for the difference in

3    treatment, and that the cause of the differential treatment was a "totally illegitimate animus"

4    towards Mrs. Elliot-Park by the DPS officers.

5        In conclusion, the complaint states sufficient facts to state a claim for violation of Mrs.

6    Elliot-Park's right to non-discriminatory police protection and a "class of one" equal protection

7    claim. Accordingly, Defendants' motion is DENIED with respect to the first cause of action.[4]

8        3.    Due Process Legal Standard.

9        Mrs. Elliot-Park asserts that she was deprived of her right to due process based on

10   constitutionally protected property and liberty interests allegedly created by CNMI laws.

11   (Second Amended Comp. ¶ 81.) The Court concludes that none of the laws cited by Mrs. Elliot-

12   Park create a constitutionally protected property or liberty interest.

13       a.    State-Created Property Interest.

14       State law may, in limited circumstances, create an entitlement interest—a property

15   interest—that is protected by the Due Process Clause of the United States Constitution. *See*

16   *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005). However, a state law requiring

17   police to take action does not create a legitimate claim of entitlement unless it: (1) is mandatory;

18   and (2) precisely defines the means of enforcement. *Id.* at 762–63. In *Castle Rock*, the plaintiff

19

20       [4] Although the complaint does not allege that Mrs. Elliot-Park has suffered any
21   damages as a result of Defendants' alleged conduct, violation of a constitutional right, alone, is
     a sufficient injury to confer standing. *Estate of Macias*, 219 F.3d at 1028 ("A plaintiff may
22   prove a violation of § 1983 without demonstrating that the deprivation of his or her
     constitutional rights caused any actual harm. . . . 'In this Circuit, nominal damages must be
23   awarded if a plaintiff proves a violation of his [or her] constitutional rights.'") (citations
     omitted).
24       Defendants also ask the Court to dismiss Mrs. Elliot-Park's common law claims if it
25   dismisses the federal causes of action. However, the Court has concluded that Mrs. Elliot-Park
     has stated a claim for violation of a constitutional right. Accordingly, the Court will retain
26   supplemental jurisdiction over the common law claims pursuant to 28 U.S.C. § 1367.

1   claimed that she had an entitlement interest in the enforcement of a restraining order. *Id.* at 754.

2   The restraining order stated that an officer "*shall* arrest, or, if an arrest would be impractical

3   under the circumstances, seek a warrant . . . ." *Id.* at 762 (emphasis added).  In addition, a state

4   statute mandated that an officer "*shall* use every reasonable means to enforce a restraining

5   order." *Id.* (emphasis added).  The Court found that neither the restraining order, nor the statute

6   created a constitutionally protected entitlement interest because neither truly mandated

7   enforcement in spite of the apparently mandatory language. *Id.*  The Court reasoned that police

8   officers necessarily retain significant discretion to execute their official duties and mandatory

9   language in a state law, without more, cannot remove this discretion. *Id.*  Moreover, the Court

10  held that there was no clear means of enforcement because the alleged "right to enforcement"

11  could mean that the officer must arrest the offender, must seek an arrest warrant, or simply must

12  "[use] every reasonable means, up to and including arrest, to enforce the order's terms." *Id.*

13  ("Such indeterminacy is not the hallmark of a duty that is mandatory.").

14              b.    **Mrs. Elliot Park Does Not Have a State-Created Property Interest.**

15          First, Mrs. Elliot-Park claims that a constitutionally protected entitlement interest is

16  created by the mandatory duties imposed by the CNMI Victims Bill of Rights. (Second

17  Amended Comp. ¶¶ 77–78.)  The CNMI Victims Bill of Rights provides that,

18          Officers and employees of the . . . departments and agencies of the [CNMI]

19          engaged in the detection, investigation, or prosecution of crime *shall* make their

20          best efforts to see that victims of crime are accorded [the following rights:] (1) the

21          right to be treated with fairness and respect; (2) the right to be reasonably

22          protected from the accused offender; (3) the right to be notified of court

23          proceedings; (4) the right to be present at all public court proceedings related to

24          the offense; (5) the right to confer with the attorney for the government in the

25          case; (6) the right to restitution; and (7) the right to information about the

26          conviction, sentencing, imprisonment, and release of the offender.

AO 72
(Rev. 08/82)                                         8

1    6 C.M.C. §§ 9104(a)–(b) (emphasis added).

2        Mrs. Elliot-Park argues that this CNMI law creates a protected entitlement because it

3    mandates that officers use their *best efforts* to ensure that crime victims are afforded their right to

4    be treated with fairness and respect and their right to restitution. (Second Amended Comp.

5    ¶ 77.) Mrs. Elliot-Park contends that, at a bare minimum, the mandated "best efforts" require

6    that "officers make a good faith preliminary determination that a crime has been committed."

7    (*Id.* ¶ 79.) The argument is unconvincing. As *Castle Rock* illustrates, the DPS officers

8    necessarily retain discretion to execute their duties and the use of the word "shall," without

9    more, does not deprive them of their discretion. In addition, the CNMI law does not provide a

10   "precisely defined means of enforcement" of the listed rights. The law simply states that the

11   officers must use their "best efforts" to afford the victims the listed rights. The mandate is vague

12   and inherently subjective. The means used to achieve an officer's "best efforts" are

13   innumerable. Moreover, the Bill of Rights itself explicitly does *not* create a cause of action. 6

14   C.M.C. § 9104(c) (no cause of action or defense "arising out of the failure to accord to a victim

15   the rights enumerated in part b."). It is difficult to imagine that a state law that specifically

16   precludes a cause of action can simultaneously create a constitutionally protected entitlement

17   interest.[5]

18        In addition, Mrs. Elliot-Park contends that eight other CNMI laws and regulations create

19   constitutionally protected property interests. Those laws are as follows: (1) 1 C.M.C. § 2504

20   which provides that it is the duty of the DPS "[t]o provide effective police protection to

21

22   _____

23        [5] The Court rejects Mrs. Elliot-Park's request that the Court certify to the CNMI
     Supreme Court the question of whether the CNMI Victims Bill of Rights creates mandatory
24   duties. The issue before the Court is whether the state-created interest rises to the level of a
     constitutional right. "[W]hether what [state] law has given respondent constitutes a property
25   interest for purposes of the Fourteenth Amendment . . . despite its state-law underpinnings, is
     ultimately [a determination] of federal constitutional law." *Castle Rock*, 545 U.S. at 757
26   (refusing to defer to the state court interpretation of the right or to certify the question to the
     state supreme court).

1    inhabitants of the Commonwealth."; (2) 6 C.M.C. § 3202 which provides that "[e]very person
2    who, being a public official does any illegal act under the color of office, or wilfully neglects to
3    perform the duties of his or her office as provided by law, is guilty of misconduct in public office
4    . . . ."; (3) NMIAC § 150-10-710 which governs the responsibilities of assigned sworn personnel
5    at crime scenes; (4) NMIAC § 150-10-745 which mandates that no employee shall knowingly
6    falsify official reports; (5) NMIAC § 150-10-760 which prohibits employees from interfering
7    with the proper administration of criminal justice; (6) NMIAC § 150-10-765 which prohibits
8    employees from assisting criminals; (7) NMIAC § 150-10-845 which mandates that employees
9    are courteous and orderly in their dealings with the public; and (8) NMIAC § 150-10-850 which
10   states that sworn personnel must remain impartial while enforcing the law.
11           These laws and regulations impose duties upon officials of the CNMI.  They do not grant
12   Mrs. Elliot-Park any "rights" that can be construed as conferring upon her a property interest.
13   *See Castle Rock*, 545 U.S. at 765 ("If she was given a statutory entitlement, we would expect to
14   see some indication of that in the [laws themselves].").
15           While the Court appreciates Mrs. Elliot-Park's objections to the officers' alleged
16   shortcomings, those shortcomings, even if true, do not amount to a property interest under the
17   Due Process Clause.
18                   c.      **State-Created Liberty Interests.**
19           Mrs. Elliot-Park asserts that the CNMI Victims Bill of Rights as well as the list of other
20   law enforcement mandates also create liberty interests protected by the Due Process Clause.
21   "States may under certain circumstances create liberty interests which are protected by the Due
22   Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995).  The Supreme Court has
23   recognized such state-created liberty interests where state laws or regulations specifically limit
24   an official's discretion with respect to granting, denying, or limiting a person's physical liberty.
25   *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 461 (1989) (citing examples such as
26   laws related to administrative segregation and parole requirements in the prison setting); *Bonin*

AO 72
(Rev. 08/82)

1   *v. Calderon*, 59 F.3d 815, 841–42 (9th Cir. 1995).

2      Here, there is no allegation that any of the laws and regulations listed by Mrs. Elliot-Park

3  relate to her physical liberty.  Accordingly, Mrs. Elliot-Park has failed to state a claim for

4  deprivation of a state-created liberty interest protected by the Due Process Clause.

5      In conclusion, the complaint does not state a claim for deprivation of a constitutionally

6  protected property or liberty interest.  Accordingly, the motion is GRANTED with respect to the

7  second cause of action.

8  **C.    Mrs. Elliot-Park Sufficiently Stated a Section 1985 Claim.**

9      Defendants argue that Mrs. Elliot-Park's Section 1985 conspiracy and obstruction of

10  justice claims fail because they are insufficiently pled to fulfill the heightened pleading standard

11  applicable to conspiracy claims.  (Mot. at 15–16.)

12      The parties dispute whether the Ninth Circuit recognizes a heightened pleading standard

13  for conspiracy claims.  *See Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir.

14  2002) (concluding that the heightened pleading requirement for improper motive in

15  constitutional tort cases was no longer good law); *but see Olsen v. Idaho State Bd. of Medicine*,

16  363 F.3d 916, 929–30 (9th Cir. 2004) (applying a heightened pleading standard to a conspiracy

17  claim because, among other reasons, the complaint was "devoid of any discussion of an

18  agreement amongst the appellees to violate her constitutional rights").

19      Under the heightened pleading standard, conspiracy is pled with sufficient particularity

20  where it alleges which officers conspired, what they conspired about and how the conspiracy led

21  to the alleged deprivation of plaintiff's constitutional rights.  *Harris v. Roderick*, 126 F.3d 1189,

22  1196 (9th Cir. 1997).  In particular, the heightened pleading standard requires that the plaintiff

23  allege enough facts so that government defendants may assert a qualified immunity defense if

24  applicable.  *Id.*

25      Mrs. Elliot-Park alleges that the DPS officers conspired at some time during or after the

26  accident to ensure that Defendant Babauta was not investigated or prosecuted.  The conspiracy

AO 72
(Rev. 08/82)                                            11

1  allegedly began at the scene of the accident and continued at least throughout the later

2  investigation where an officer allegedly threatened a witness who wanted to cooperate with the

3  investigation. The alleged agreement was made because of Mrs. Elliot-Park's or Defendant

4  Babauta's race and/or national origin. Accordingly, the allegation is that the officers agreed to

5  alter the protective services they gave to Mrs. Elliot-Park because of her race–thus, conspiring to

6  deprive her of her constitutional right to non-discriminatory police protection. The facts are

7  sufficiently detailed to fulfill the heightened pleading standard even if it does apply.

8      Accordingly, the motion is DENIED with respect to the fourth cause of action.

9  D.    Qualified Immunity.

10     "[G]overnment officials performing discretionary functions generally are shielded from

11  liability for civil damages insofar as their conduct does not violate established statutory or

12  constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

13  457 U.S. 800, 818 (1982). "In ruling on a qualified immunity defense, a court must consider two

14  questions. First, '[t]aken in the light most favorable to the party asserting the injury, do the facts

15  alleged show the officer's conduct violated a constitutional right?' . . . Second, if the plaintiff has

16  alleged a deprivation of a constitutional right, a court 'is to ask whether the right was clearly

17  established.' . . . The plaintiff bears the burden of showing that the right at issue was clearly

18  established under this second prong." *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002)

19  (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Camarillo v. McCarthy*, 998 F.2d 638, 639

20  (9th Cir. 1993)).

21     Here, the Court has concluded that, as re-pleaded in the second amended complaint and

22  taken in the light most favorable to Mrs. Elliot-Park, the complaint has alleged that the officers'

23  conduct violated her constitutional right to non-discriminatory police protection. Second, the

24  Court must determine whether that right was clearly established at the time of the alleged

25  deprivation. As explained above, the constitutional right to equal protection includes the right to

26  receive non-discriminatory police protection. *DeShaney*, 489 U.S. at 197 n.3 ("The State may

AO 72
(Rev. 08/82)

1  not, of course, selectively deny its protective services to certain disfavored minorities without

2  violating the Equal Protection Clause."); *Estate of Macias*, 219 F.3d at 1028 (valid equal

3  protection claim where police allegedly failed to effectively respond to calls because the

4  complaints were of domestic violence); *Navarro*, 72 F.3d at 717 (same); *Balistreri*, 901 F.2d at

5  701 (same); *Roman*, 257 F. Supp. 2d at 803 (allegation that police failed to investigate a shooting

6  because the victim was black was a valid equal protection claim); *Hawk*, 642 F. Supp. at 380

7  (allegation that police failed to investigate a brutal attack because the victim was black was a

8  valid equal protection claim). The inquiry is thus, in light of the foregoing case law, would a

9  reasonable officer have known that it was unlawful to refuse to pursue a perpetrator of a crime

10 *because of* the victim's race? The Court concludes that a reasonable officer would have known

11 that the alleged acts were unlawful because they were on notice of the above-cited case law.

12     Defendants argue that the DPS officers reasonably believed that they were immune

13 because the law is clear that police officers are not liable for damage caused by drunk drivers or

14 for damage caused because of the officers' failure to arrest. It is important, however, to

15 distinguish this argument from the allegations in the complaint. The complaint does not claim

16 damages arising out of a drunk driver's actions or the officers' failure to arrest a drunk driver.

17 Instead, the claim that the Court has upheld as sufficiently pled for purposes of a motion to

18 dismiss is that the DPS officers provided discriminatory protective services based on the race of

19 the crime victim. The Court cannot conclude, from the allegations before it and in light of the

20 case law, that a reasonable officer could have believed that administering discriminatory police

21 protection on the basis of race and conspiring to do so, was within the limits of the Constitution.

22     Accordingly, the Defendants' motion is DENIED with respect to Defendants' assertion

23 of qualified immunity.

24 E.     Motion for Attorneys Fees.

25     Defendants also seek attorney's fees pursuant to 42 U.S.C. § 1988. Under section 1988,

26 "[i]n any action or proceeding to enforce . . . [42 U.S.C. §§ 1983 or 1985] the court, in its

discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, . . . ." Here, the Court does not find that Mrs. Elliot-Park's claims are frivolous or devoid of merit because it specifically granted Mrs. Elliot-Park leave to amend the dismissed complaint.

Accordingly, the motion is DENIED with respect to Defendants' request for attorney's fees.

Defendants are HEREBY ordered to file their answer to the second amended complaint within FIVE DAYS of the date of this order.

## CONCLUSION

1.     The motion to dismiss is DENIED with respect to the first cause of action, Plaintiff's equal protection claims;

2.     The motion to dismiss is GRANTED with prejudice with respect to the second cause of action, Plaintiff's due process claims;

3.     The motion to dismiss is DENIED with respect to fourth cause of action, Plaintiff's conspiracy and obstruction of justice claims;

4.     The motion to dismiss is DENIED with respect to the common law claims;

5.     The motion is DENIED with respect to Defendants' assertion of qualified immunity; and

6.     The motion for attorney's fees is DENIED.

**IT IS SO ORDERED.**

Dated: 4-21-08

ALEX R. MUNSON
UNITED STATES DISTRICT JUDGE



| | USCA DOCKET # (IF KNOWN) |
|---|---|

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
## CIVIL APPEALS DOCKETING STATEMENT

PLEASE ATTACH ADDITIONAL PAGES IF NECESSARY.

| TITLE IN FULL:     AE JA ELLIOT PARK, <br><br> Plaintiff-Appellees, <br><br> vs. <br><br> JARROD MANGLONA, MICHAEL LANGDON, ANTHONY MACRANAS, DEPARTMENT OF PUBLIC SAFETY AND JUAN DOES 1-4, <br> Defendant-Appellants. | DISTRICT: Northern Mariana Islands JUDGE: Hon. Alex R. Munson |
|---|---|
| | DISTRICT COURT NUMBER: Civ. No. 07-0021 |
| | DATE NOTICE OF APPEAL FILED: April 25, 2008    IS THIS A CROSS-APPEAL? ☐ YES |
| | IF THIS MATTER HAS BEEN BEFORE THIS COURT PREVIOUSLY, PLEASE PROVIDE THE DOCKET NUMBER AND CITATION (IF ANY): <br> N/A |

**BRIEF DESCRIPTION OF NATURE OF ACTION AND RESULT BELOW:**

This is a civil action brought under 42 U.S.C. section 1983, among other claims, seeking damages for defendants' alleged failure to perform a sobriety test and arrest a drunk driver. Defendants brought a Motion to Dismiss that was granted in part and denied in part. Defendant-Appellants seek review of the trial court's denial of qualified immunity.

**PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:**

A drunk driver injured Ms. Park Defendant-Appellants arrived on scene, alerted DPS Command to the accident, requested an ambulance, conducted interviews of witnesses, and directed traffic. Defendant-Appellants did not perform a sobriety check or arrest the drunk driver. Under current law, police officers have no general duty to arrest individuals. Did the trial court err when it held that the officers' failure to arrest or perform a sobriety test violated Ms. Park's rights?

**PLEASE IDENTIFY ANY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POSTJUDGMENT MOTIONS):**

N/A

**DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:**

☐ Possibility of settlement

☐ Likelihood that intervening precedent will control outcome of appeal

☐ Likelihood of a motion to expedite or to stay the appeal, or other procedural matters (Specify) _____

_____

☑ Any other information relevant to the inclusion of this case in the Mediation Program _____
    No possibility of inclusion.

☑ No possibility of stipulation. _____ ☐

Possibility parties would stipulate to binding award by Appellate Commissioner in lieu of submission to judges

## LOWER COURT INFORMATION

| JURISDICTION | | DISTRICT COURT DISPOSITION | |
|---|---|---|---|
| FEDERAL | APPELLATE | TYPE OF JUDGMENT/ORDER APPEALED | RELIEF |
| ☑ FEDERAL QUESTION | ☐ FINAL DECISION OF DISTRICT COURT | ☐ DEFAULT JUDGMENT | ☐ DAMAGES: SOUGHT $_____ AWARDED $_____ |
| ☐ DIVERSITY | ☑ INTERLOCUTORY DECISION APPEALABLE AS OF RIGHT | ☐ DISMISSAL/JURISDICTION | |
| | | ☑ DISMISSAL/MERITS | ☐ INJUNCTIONS: |
| ☐ OTHER (SPECIFY): | ☐ INTERLOCUTORY ORDER CERTIFIED BY DISTRICT JUDGE (SPECIFY): | ☐ SUMMARY JUDGMENT | ☐ PRELIMINARY |
| | | ☐ JUDGMENT/COURT DECISION | ☐ PERMANENT |
| | | ☐ JUDGMENT/JURY VERDICT | ☐ GRANTED |
| | | ☐ DECLARATORY JUDGMENT | ☐ DENIED |
| | ☐ OTHER (SPECIFY): | ☐ JUDGMENT AS A MATTER OF LAW | ☐ ATTORNEY FEES: SOUGHT $_____ AWARDED $_____ |
| | | ☐ OTHER (SPECIFY): | ☐ PENDING |
| | | | ☐ COSTS: $_____ |

## CERTIFICATION OF COUNSEL

I CERTIFY THAT:
1. COPIES OF ORDER/JUDGMENT APPEALED FROM ARE ATTACHED.
2. A CURRENT SERVICE LIST OR REPRESENTATION STATEMENT WITH TELEPHONE AND FAX NUMBERS IS ATTACHED (SEE 9TH CIR. RULE 3-2).
3. A COPY OF THIS CIVIL APPEALS DOCKETING STATEMENT WAS SERVED IN COMPLIANCE WITH FRAP 25.
4. I UNDERSTAND THAT FAILURE TO COMPLY WITH THESE FILING REQUIREMENTS MAY RESULT IN SANCTIONS, INCLUDING DISMISSAL OF THIS APPEAL.

_____    April 25, 2008
Signature                    Date

## COUNSEL WHO COMPLETED THIS FORM

| NAME: | Braddock J. Huesman, CNMI Assistant Attorney General |
|---|---|
| FIRM: | CNMI Office of the Attorney General |
| ADDRESS: | Caller Box 10007, Capital Hill Saipan, MP 96950-8907 |
| E-MAIL: | braddock.huesman@gmail.com |
| TELEPHONE: | (670) 664-2341 |
| FAX: | (670) 664-2349 |

**✳THIS DOCUMENT SHOULD BE FILED IN THE DISTRICT COURT WITH THE NOTICE OF APPEAL✳**
**✳IF FILED LATE, IT SHOULD BE FILED DIRECTLY WITH THE U.S. COURT OF APPEALS✳**